1   DAVID H. KRAMER, State Bar No. 168452
    MICHAEL H. RUBIN, State Bar No. 214636
2   BART E. VOLKMER, State Bar No. 223732
    CAROLINE E. WILSON, State Bar No. 241031
3   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
4   650 Page Mill Road
    Palo Alto, CA 94304-1050
5   Telephone: (650) 493-9300
    Facsimile: (650) 565-5100
6   Email: mrubin@wsgr.com

7   *Attorneys for Defendant Google Inc.*

8

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

13  IN RE GOOGLE INC. STREET VIEW          )   CASE NO.: 5:10-md-02184 JW (HRL)
    ELECTRONIC COMMUNICATIONS              )
    LITIGATION                             )   **DEFENDANT GOOGLE INC.'S**
14                                         )   **REPLY IN SUPPORT OF ITS**
                                           )   **MOTION TO DISMISS**
15                                         )   **PLAINTIFFS' CONSOLIDATED**
                                           )   **CLASS ACTION COMPLAINT**
16                                         )
                                           )   Hearing Date: March 21, 2011
17                                         )   Time: 9:00 a.m.
                                           )   Before: Honorable James Ware
18                                         )
                                           )
19  _____)

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.   PLAINTIFFS' WIRETAP ACT CLAIMS SHOULD BE DISMISSED WITH
     PREJUDICE ............................................................................................................. 1

     A.   "Readily Accessible To The General Public" Should Be Given Its Defined
          Meaning Both Times It Appears In The Wiretap Act ................................... 1

     B.   Plaintiffs' Statutory Interpretation Arguments Are Unconvincing ............. 3

     C.   The Rule of Lenity Further Undermines Plaintiffs' Reading .......................... 5

     D.   Plaintiffs Have Failed To Plead Facts Showing That Their Wi-Fi Radio
          Broadcasts Were Not "Readily Accessible" Under Section 2510(16) ............ 6

     E.   Plaintiffs Should Not Be Given Leave To Amend To Add New Use And
          Disclosure Allegations ................................................................................. 7

II.  PLAINTIFFS' STATE WIRETAP CLAIMS SHOULD BE DISMISSED WITH
     PREJUDICE ............................................................................................................. 9

III. PLAINTIFFS' SECTION 17200 CLAIM SHOULD BE DISMISSED WITH
     PREJUDICE ............................................................................................................ 12

CONCLUSION ................................................................................................................. 15

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## CASES

4   *Air Line Pilots Ass'n Int'l v. Transamerica Airlines, Inc.*, 817 F. 2d 510 (9th Cir. 1987) ............ 7

5   *Armstrong v. Sexson*, No. S-06-2200 LKK/EFB,

6       2007 WL 1219297 (E.D. Cal. Apr. 25, 2007) ..................................................... 13

7   *Betancourt v. Nippy, Inc.*, 137 F. Supp. 2d 27 (D. Puerto Rico 2001) ......................................... 8

8   *Buckingham v. Gailor*, No. 00-CV-1568, 2001 WL 34036325 (D. Md. Mar. 27, 2001) .............. 8

9   *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) ................................................ 12

10  *Bunnell v. MPAA*, 567 F. Supp. 2d 1148 (C.D. Cal. 2007) ........................................................ 11

11  *Cafarelli v. Yancy*, 226 F.3d 492 (6th Cir. 2000) ................................................................... 8, 9

12  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ........................................................ 4

13  *Doe 1 v. AOL LLC*, 719 F. Supp.2d 1102 (N.D. Cal. 2010) ........................................................ 15

14  *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780,

15      2010 WL 3291750 (N.D. Cal. July 20, 2010) ..................................................... 6

16  *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........................... 13

17  *Gardner v. Health Net, Inc.*, No. 10-2140 (C.D. Cal. Aug. 12, 2010) ....................................... 14

18  *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621 (7th Cir. 2000) ......................... 8

19  *Kwikset Corp. v. Superior Court*, __ Cal. Rptr. 3d __, 2011 WL 24027 (Jan. 27, 2011) ............ 15

20  *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................. 6

21  *Meese v. Keene*, 481 U.S. 465 (1987) ........................................................................................ 2

22  *Meredith v. Gavin*, 446 F.2d 794 (8th Cir. 1971) ...................................................................... 8

23  *Molinari v. Symantec Corp.*, No. C-97-20021,

24      1998 WL 78120 (N.D. Cal. Feb. 17, 1998) ......................................................... 8

25  *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F. Supp. 2d 887 (N.D. Cal. 2010) ........................... 15

26  *N.L.R.B. v. Okla. Fixture Co.*, 332 F.3d 1284 (10th Cir. 2003) ................................................. 5

27  *Noel v. Hall*, 568 F.3d 743 (9th Cir. 2009) ............................................................................... 8

28

*Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046 (N.D. Cal. 2004)................................... 13

*Quon v. Arch Wireless Operating Co.*, 445 F. Supp. 2d 1116 (C.D. Cal. 2006),
     *rev'd on other grounds*, 529 F.3d 892 (9th Cir. 2008)........................................ 10

*Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976 (N.D. Cal. 2010) ................................ 15

*Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008)................................... 12, 14

*Simmons v. Sw. Bell Tel. Co.*, 452 F. Supp. 392 (W.D. Okla. 1978) ............................... 8

*Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006) ............................................. 6

*Stenberg v. Carhart*, 530 U.S. 914 (2000) ......................................................... 2

*Stikes v. Chevron USA, Inc.*, 914 F.2d 1265 (9th Cir. 1990) ...................................... 13

*United States v. Ahrndt*, No. 08-468, 2010 WL 373994 (D. Or. Jan. 28, 2010) ..................... 13

*United States v. Atl. Research Corp.*, 551 U.S. 128 (2007) ........................................ 9

*United States v. Meriwether*, 917 F.2d 955 (6th Cir. 1990) ....................................... 10

*United States v. Santos*, 553 U.S. 507 (2008) ..................................................... 6

*United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) ...................................... 9

**STATUTES**

18 U.S.C. § 2510 .............................................................................*passim*

18 U.S.C. § 2511 .............................................................................*passim*

18 U.S.C. § 2515 .................................................................................. 11

18 U.S.C. § 2516(2) ............................................................................... 11

18 U.S.C. § 2518(10)(c) ....................................................................... 10, 11

18 U.S.C. § 2520(a) ............................................................................... 6

**MISCELLANEOUS**

S. Rep. No. 90-1097 (1968) ....................................................................... 11

S. Rep. No. 99-541 (1986) ..................................................................... 3, 5, 7

H.R. Rep. No. 99-647 (1986) ...................................................................... 3, 4

Computer Crime and Intellectual Property Section, Criminal Division, Searching and
Seizing Computers and Obtaining Electronic Evidence in Criminal
Investigations (2009) ............................................................................................................5

## RELEVANT FEDERAL WIRETAP ACT PROVISIONS

**18 U.S.C. § 2511(1)**

Except as otherwise specifically provided in this chapter any person who—

    (a)    intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

    * * *

    (c)    intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

    (d)    intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

    * * *

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).


**18 U.S.C. § 2511(2)**

(g)    It shall not be unlawful under this chapter or chapter 121 of this title for any person—

    (i)    to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public;

    (ii)    to intercept any radio communication which is transmitted—

        * * *

        (II)    by any governmental, law enforcement, civil defense, private land mobile, or public safety communications system, including police and fire, readily accessible to the general public;

**18 U.S.C. § 2510(16)**

As used in this chapter—

(16)    "readily accessible to the general public" means, with respect to a radio communication, that such communication is not—

    (A)    scrambled or encrypted;

    (B)    transmitted using modulation techniques whose essential parameters have been withheld from the public with the intention of preserving the privacy of such communication;

    (C)    carried on a subcarrier or other signal subsidiary to a radio transmission;

    (D)    transmitted over a communication system provided by a common carrier, unless the communication is a tone only paging system communication; or

    (E)    transmitted on frequencies allocated under part 25, subpart D, E, or F of part 74, or part 94 of the Rules of the Federal Communications Commission, unless, in the case of a communication transmitted on a frequency allocated under part 74 that is not exclusively allocated to broadcast auxiliary services, the communication is a two-way voice communication by radio;

**INTRODUCTION**

Google's opening brief demonstrated that: (1) it is not unlawful to acquire radio communications that are "readily accessible to the general public"; (2) radio transmissions are by definition readily accessible under the Wiretap Act unless they are scrambled or encrypted by the system that broadcasts them; (3) plaintiffs' claims exclusively concern radio broadcasts; and (4) plaintiffs did not plead that they scrambled or encrypted their Wi-Fi Radio Broadcasts. *Plaintiffs only dispute the second point*, arguing that the express statutory definition of "readily accessible to the general public" should be cast aside with respect to the radio broadcasts at issue here. The Wiretap Act's text, purpose and legislative history refute that position. When the phrase is given its statutorily defined meaning, as it should be, plaintiffs implicitly concede that their Wiretap Act claim fails because their Wi-Fi Radio Broadcasts were "readily accessible to the general public." That is the proper result. Plaintiffs' state wiretap claims fail because they are preempted. And plaintiffs do not state a Section 17200 claim on the merits or allege any economic injury to satisfy Proposition 64. This case should be dismissed with prejudice.

**ARGUMENT**

**I.   PLAINTIFFS' WIRETAP ACT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE**

    **A.   "Readily Accessible To The General Public" Should Be Given Its Defined Meaning Both Times It Appears In The Wiretap Act**

The Wiretap Act says that it is not unlawful "to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is **readily accessible to the general public**." 18 U.S.C. § 2511(2)(g)(i) (emphasis added). Google's opening brief argued that "readily accessible to the general public" should be given its defined meaning, and that plaintiffs' Wiretap Act claim should be dismissed because they had failed to plead, and could not plead, that their Wi-Fi Radio Broadcasts were not readily accessible. In opposition, plaintiffs advance the position that the Court should ignore the statutory definition of "readily accessible to the general public" even though Congress used that phrase verbatim in Section 2511(2)(g)(i). The Wiretap Act's text,

1  purpose and legislative history show that plaintiffs are mistaken.  As in all cases, the Court must

2  use the definition that Congress expressly provided.

3      **Statutory Text:**  The plain text of Section 2510 defines "readily accessible to the general

4  public" and the very first sentence of Section 2510 says that the definition applies "**[a]s used in**

5  **this chapter.**"  18 U.S.C. § 2510 (emphasis added).  Because "readily accessible to the general

6  public" is obviously "used" in Section 2511(2)(g)(i), its defined meaning from Section 2510

7  must be followed.  *See Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) (when a term has "an

8  explicit definition," courts "must follow that definition"); *Meese v. Keene*, 481 U.S. 465, 484

9  (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of

10  that term.").  Indeed, plaintiffs do not cite a *single case* where a court has disregarded a statutory

11  definition in favor of some other.

12      The phrase "readily accessible to the general public" is defined to apply "*with respect to*

13  *a radio communication*."  18 U.S.C. § 2510(16) (emphasis added).  That broad language

14  indicates that the definition applies to *any* "radio communication."  Plaintiffs ignore the plain

15  meaning of this phrase and argue that the defined term should apply only to the radio broadcasts

16  set forth in Section 2511(2)(g)(ii)(II).  But there is no basis for concluding that when Congress

17  used the phrase "with respect to a radio communication," it really meant to say "**only** with

18  respect to a radio communication **referenced in Section 2511(2)(g)(ii)(II)**."  Indeed, elsewhere

19  in the Wiretap Act, Congress demonstrated that it knows how to limit a definition's application

20  to a particular subsection.  The Act defines "foreign intelligence information," but instead of that

21  definition applying throughout the chapter, it applies only "for purposes of section 2517(6)."  18

22  U.S.C. § 2510(19).  Regarding the definition at hand, however, Congress included no such

23  restrictive language.  Instead, it defined "readily accessible to the general public" whenever that

24  term is used "with respect to a radio communication."  Congress's use of that broad language

25  shows that the definition applies to *all radio broadcasts*.

26      **Statutory Purpose:**  Section 2510(16)'s purpose is only effectuated if the definition of

27  "readily accessible to the general public" applies to radio broadcasts generally.  The definition is

28  intended to create a presumption that radio broadcasts may be freely acquired unless some

specific exception applies: "[r]adio communications are considered readily accessible to the general public unless they fit into one of five specified categories." S. Rep. No. 99-541, at 14 (1986). That purpose would be thwarted if the definition only applied to the narrow set of radio systems referenced in Section 2511(2)(g)(ii)(II) as plaintiffs contend.

**Legislative History:** Finally, although there is no ambiguity in the Wiretap Act's plain language, the Act's legislative history unequivocally confirms that the statutory definition of "readily accessible to the general public" applies to Section 2511(2)(g)(i) when electronic communications are broadcast by radio. The Senate Report states that under Section 2511(2)(g)(i) "it is permissible to intercept electronic communications made through an electronic communication system configured so that the communication is 'readily accessible to the general public.' *That term is defined with respect to radio communications in proposed section 210(16) of title 18*." S. Rep. No. 99-541, at 18 (emphasis added). The House Report says the same thing when discussing Section 2511(2)(g)(i)'s "generic exception": "it should be noted that the term 'readily accessible to the general public' is a defined term with respect to radio communications." H.R. Rpt. No. 99-647, at 41 (1986). This history shows that Congress meant exactly what it said: Section 2510(16)'s definition of "readily accessible to the general public" applies "as used" in the Wiretap Act, including when used in Section 2511(2)(g)(i).

**B.      Plaintiffs' Statutory Interpretation Arguments Are Unconvincing**

Plaintiffs make three arguments to support their contrary interpretation. Each is unconvincing. Plaintiffs' first argument—that the defined phrase does not apply to "electronic communications" —might hold water if "electronic" and "radio" communications were mutually exclusive under the statute. But they are not. The Wiretap Act defines "electronic communications" to include those transmitted by radio. 18 U.S.C. § 2510(12). And plaintiffs themselves admit that some "electronic communications" (most importantly the Wi-Fi Radio Broadcasts at issue in this case) are also "radio communications." *See* CCAC ¶ 1; Opp'n at 4. When the "electronic communication" at issue is broadcast by radio (as here), the statutory definition of "readily accessible to the general public" supplies the meaning of that phrase when it appears in Section 2511(2)(g)(i).

1          Plaintiffs next argue that applying the statutory definition of "readily accessible to the

2    general public" when that phrase appears in 2511(2)(g)(i) would render Section 2511(2)(g)(ii)(II)

3    superfluous.  But there is no reason to rely on the secondary interpretive canon of avoiding

4    superfluity when, as here, the plain language is clear and unambiguous.  *See, e.g.*, *Connecticut*

5    *Nat'l Bank v. Germain*, 503 U.S. 249, 253, 253-54 (1992).  That is especially true for a complex

6    statute like the Wiretap Act that teems with overlapping exceptions.  Indeed, Section

7    2511(2)(g)(ii) was not intended to limit Section 2511(2)(g)(i)'s reach, but merely to provide

8    examples "of some of the more common radio services" that are exempt from the Wiretap Act's

9    interception provisions.  H.R. Rpt. No. 99-647, at 42.  Regardless, plaintiffs are wrong that using

10   Section 2510(16)'s definition for "readily accessible to the general public" each time that phrase

11   appears in the Wiretap Act creates superfluity.  For example, a defendant accused of intercepting

12   a broadcast from a government tracking device cannot claim the benefit of Section 2511(2)(g)(i),

13   but can rely on Section 2511(2)(g)(ii)(II).  *Compare* 18 U.S.C. § 2511(2)(g)(i) (exception applies

14   to "electronic communications") *with* 18 U.S.C. § 2510(12)(C) (the definition of "electronic

15   communications" excludes "any communication from a tracking device").  This example alone

16   shows that Section 2511(2)(g)(ii)(II) is not surplusage.[1]

17         Finally, plaintiffs express concern about "readily accessible to the general public"

18   meaning different things under Section 2511(2)(g)(i) depending on whether the communication

19   is sent over a radio or some other system.  They make that argument seemingly oblivious to their

20   own position which would have a phrase that the statute defines for radio communications

21   _____

22        [1] Plaintiffs' own position also refutes their superfluity argument.  They claim that the Section
     2511(2)(g)(i) exception does not apply to "wire communications" because they are not
23   "electronic communications."  Opp'n at 2 n.2; *but see* Opp'n at 4 ("all radio communications are
     electronic communications").  But under that argument, the Section 2511(2)(g)(ii)(II) exception
24   would remain available, eliminating any suggestion of superfluity.  Plaintiffs make this argument
     in the context of VoIP communications, which they attempt to recast as "wire communications"
25   in their opposition after pleading in the CCAC that VoIP communications are "electronic
     communications."  Google disagrees with plaintiffs' new characterization of VoIP
26   communications as "wire communications" (they are not).  But the Court need not resolve that
     issue.  In the CCAC, Plaintiffs correctly classified VoIP communications as "electronic
27   communications" and may not assert otherwise now.  *See* CCAC ¶¶ 1, 2, 4, 119, 122, 129, 130.

28

1   generally, nevertheless mean different things for different types of radio communications.  That

2   aside, it is no surprise that Congress treated radio communications differently than those sent

3   over wires.  Radio waves are broadcast to the world to be acquired by anyone in range with a

4   receiver; public consumption is the point of the medium.  Congress wanted to ensure that

5   acquiring radio signals remained lawful unless one of Section 2510(16)'s five objective

6   exceptions applied.  S. Rep. No. 99-541, at 18.

7       Plaintiffs' three statutory interpretation arguments provide no basis to ignore the statutory

8   definition of the phrase "readily accessible to the general public." [2]

9       **C.     The Rule of Lenity Further Undermines Plaintiffs' Reading**

10      Plaintiffs assert that ECPA's purposes are "furthered only by reading the statutory

11  exceptions narrowly."  Opp'n at 5-6.[3]  They have it backwards: "criminal statutes must be

12  construed narrowly, and that exceptions to those statutes must be construed broadly."  *N.L.R.B.*

13  *v. Okla. Fixture Co.*, 332 F.3d 1284, 1287 n.5 (10th Cir. 2003).  Accordingly, if there were any

14  ambiguity about whether the statutory definition of "readily accessible to the general public"

15  applies when that phrase appears in Section 2511(2)(g)(i)—and there is none—lenity would

16  require the statute to be interpreted in Google's favor.  *See, e.g.*, *United States v. Santos*, 553

17  U.S. 507, 514 (2008).  Under plaintiffs' interpretation of Section 2511(2)(g)(i), criminal liability

18  for acquiring radio broadcasts would not turn on Section 2510(16)'s well-defined technical

19  standards, but rather on ill-defined notions of a broadcaster's subjective intent and the

20

---

21      [2] Plaintiffs cite a Department of Justice manual stating that "[i]n general, [Section 2511(1)]
    bars third parties (including the government) from wiretapping telephones and installing
22  electronic 'sniffers' that read Internet traffic."  Computer Crime and Intellectual Property Section,
    Criminal Division, Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal
23  Investigations at 167 (2009).  Citing the statute's breadth, the manual then concludes that the
    "legality of most surveillance techniques . . . depends upon the applicability of a statutory
24  exception" and references Section 2511(2)(g)(i) as being "especially pertinent."  *Id.*  While it is
    unclear why plaintiffs even think that this manual is relevant to statutory interpretation, it does
25  not support their reading.

26      [3] Plaintiffs oversimplify ECPA's purpose.  ECPA was intended to protect privacy, but it was
    also meant to provide certainty.  *See* S. Rep. No. 99-541, at 18 (ECPA was a response to "legal
27  uncertainty" regarding electronic communications and "lack of clear standards" for law
    enforcement).

28

1    sophistication and ubiquity of receiving equipment.  *See* Opp'n at 8-9.  Those elastic concepts

2    deprive citizens of the ability to determine *ex ante* which conduct is proscribed.  In contrast,

3    Google's interpretation provides objective standards for determining ready accessibility.

4    Between the two, Google's interpretation should control.  *See Facebook, Inc. v. Power Ventures,*

5    *Inc.*, No. C 08-05780, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010).

6          **D.     Plaintiffs Have Failed To Plead Facts Showing That Their Wi-Fi Radio
              Broadcasts Were Not "Readily Accessible" Under Section 2510(16)**
7

8          A plaintiff bringing a Wiretap Act claim must plead facts demonstrating that their

9    broadcasts were not "readily accessible to the general public."  *See Snow v. DirecTV, Inc.*, 450

10   F.3d 1314, 1321 (11th Cir. 2006).  In this case, plaintiffs must *affirmatively plead* that they

11   configured their networks to encrypt their Wi-Fi broadcasts or that some other Section 2510(16)

12   exception applies.  Plaintiffs have failed to do that.  Rather than actually pleading encryption,

13   plaintiffs opaquely assert in their opposition that they do not "limit the Class or its allegations to

14   unencrypted networks."  *See* Opp'n at 9 (citing CCAC ¶¶ 1, 60-66, 119).  Perhaps they are trying

15   to say that although the named plaintiffs did not encrypt their networks, unidentified non-parties

16   might have.  If so, that would not save their claims.  A plaintiff broadcasting through an

17   unencrypted network cannot state a claim for relief by alleging that the defendant intercepted

18   communications from someone else's encrypted network.  Such a claim would fail on the merits

19   and violate Article III's and the Wiretap Act's standing requirements.  *See Lujan v. Defenders of*

20   *Wildlife*, 504 U.S. 555, 560 (1992); 18 U.S.C. § 2520(a).

21         To the extent that plaintiffs are asking to amend their complaint to add a new allegation

22   about encrypting their networks, that request should be denied.  First, it is highly doubtful that

23   any of the named plaintiffs could claim in good faith that they used encrypted Wi-Fi networks

24   given what they previously said:  that their networks were "open" or "open and unencrypted."

25   *See* Google's Mot. to Dismiss at Appendix A, 8.  Second, amendment would be futile.

26   Plaintiffs' new claim would apparently be that Google violated the Wiretap Act by acquiring

27   information from encrypted networks just long enough to determine its encrypted status and then

28   discarding the information.  Opp'n at 9.  That does not violate the Wiretap Act.  The encryption

1  exception to ready accessibility creates "an objective standard of design configuration for

2  determining whether a system receives privacy protection."  S. Rep. No. 99-541, at 18.  The act

3  of recognizing that objective standard and honoring it is what the Wiretap Act encourages, not

4  what it prohibits.  *See* 18 U.S.C. §§ 2510(4), 2510(8), 2511(1) (the Wiretap Act prohibits the

5  "interception" of the "contents" of communications, *i.e.*, the "substance, purport, or meaning" of

6  those communications).

7       Given the applicable statutory definition of "readily accessible to the general public,"

8  plaintiffs have not pled and could not plead facts showing that Google violated Section 2511(1).

9  Accordingly, their Wiretap Act claim fails as a matter of law.

10      **E.       Plaintiffs Should Not Be Given Leave To Amend To Add New Use And
                   Disclosure Allegations**

11

12      Plaintiffs contend in their opposition brief that Google violated Sections 2511(c) and (d)

13  of the Wiretap Act by "using" and "disclosing" the payload data that it acquired.  Opp'n at 10-

14  13.  These allegations are nowhere to be found in the CCAC.  CCAC ¶¶ 129-130.[4]  Google

15  therefore had no reason to address them in its opening brief, especially given the Court's

16  directive that the CCAC "include[] all claims against Defendant Google, both Federal and State."

17  Docket No. 47.  This is not a case where "the plaintiff's lawyer has misconceived the proper

18  legal theory of [a] claim."  *Air Line Pilots Ass'n Int'l v. Transamerica Airlines, Inc.*, 817 F.2d

19  510, 516 (9th Cir. 1987) (citation and quotation marks omitted).  Appointed lead counsel decided

20  which claims to include and which to omit.  *See* Rubin Reply Decl., Ex. 1 at 6-7 & fn. 3.

21  Against this backdrop, the Court may dismiss the CCAC without regard to plaintiffs' attempt to

22  introduce new claims for the first time in their opposition.  *See Molinari v. Symantec Corp.*, No.

23  C-97-20021, 1998 WL 78120, at *11 n.6 (N.D. Cal. Feb. 17, 1998) (Ware, J.).

24      But if the Court were presented with new claims based on some alleged use and

25  disclosure of plaintiffs Wi-Fi Radio Broadcasts, it would find that they too are meritless.  The

26

27      [4] And with good reason: Google has made clear that it does not want the payload data it

28  collected, will not and did not use the payload data in any product or service, and has taken steps
    to ensure that payload data will never be collected again.

Ninth Circuit has ruled that *unlawful* acquisition is a required element for a use or disclosure

claim under the Wiretap Act. *See Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009). In *Noel*, a

party recorded a telephone conversation and then alleged that the use and disclosure of that

recording violated Section 2511(c) and (d). The Ninth Circuit disagreed because, among other

reasons, the Wiretap Act's consent provision (§ 2511(2)(d)) allows a party to a conversation to

record it. *Id.* Because there was no underlying violation of the Wiretap Act's interception

provision, the panel ruled that there could be no liability for use or disclosure of the

communication. *Id. Noel*'s logic applies directly to this case. Google's acquisition of plaintiffs'

Wi-Fi Radio Broadcasts was not unlawful based on Section 2511(2)(g)(i) and Google therefore

cannot be liable under Section 2511(c) or (d). *See Noel*, 568 F.3d at 751; 18 U.S.C.

§ 2511(1)(c)-(d) (creating liability for using and disclosing information "obtained in violation of

this subsection"); *see also In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 625

(7th Cir. 2000); *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971); *Buckingham v. Gailor*,

No. 00-CV-1568, 2001 WL 34036325, at *6 (D. Md. Mar. 27, 2001); *Betancourt v. Nippy, Inc.*,

137 F. Supp. 2d 27, 31-32 (D. Puerto Rico 2001); *Simmons v. Sw. Bell Tel. Co.*, 452 F. Supp.

392, 396-97 (W.D. Okla. 1978).

Plaintiffs disregard binding Ninth Circuit authority and this long line of cases, and rely

instead on dicta from an outlier Sixth Circuit case. *See Cafarelli v. Yancy*, 226 F.3d 492 (6th Cir.

2000). That case is not well reasoned and should not be followed.

**First**, *Cafarelli*'s statutory interpretation is unsound. The court examined the "obtained

in violation of this subsection" language in Section 2511(c) and (d) and concluded that an

interception made lawful by Section 2511(2) nonetheless "violates" Section 2511(1). That

conclusion contradicts the statute's text. Interception is unlawful under Section 2511(1)(a)

"[e]xcept as otherwise specifically provided in this chapter." 18 U.S.C. § 2511(1). If any

provision of Title 18, Chapter 119 authorizes an interception, there is no "violation" of Section

2511(1).  *Cafarelli* went astray by decoupling Section 2511(1) and 2511(2) when analyzing whether a Section 2511(1) violation had occurred.[5]

**Second**, the *Cafarelli* court failed to consider the utterly absurd results that could flow from its interpretation.  A person who receives a funny email and forwards it to a friend would be a criminal under the court's logic.  The person would have "intercepted" an electronic communication under Section 2511(1)(a) and then disclosed it in derogation of Section 2511(1)(c).  And because the party-consent exception is found in Section 2511(2)(d), and contains no safe harbor for use or disclosure, the fact that the email forwarder lawfully received the email would be of no moment.  The same would be true for someone who listened to a segment on talk radio and then told a family member about it, or someone who heard a ship's distress signal over the radio and then called for help.  These unsettling results powerfully show why plaintiffs' reading cannot be the law.  *See, e.g.*, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) (rejecting interpretation that would create "positively absurd" results).

A faithful reading of the statute confirms that Section 2511(1)(c) and (d) require unlawful interception as a prerequisite to liability for use or disclosure of communications.  Since there was no unlawful interception here, plaintiffs should not be given leave to add futile allegations about use and disclosure.

## II.   PLAINTIFFS' STATE WIRETAP CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs' state wiretap claims should be dismissed with prejudice.  As noted in Google's opening brief, these claims fail for the same reason as their federal Wiretap Act claim: the Wi-Fi Radio Broadcasts here were readily accessible to the general public.  Plaintiffs do not argue that

---

[5] The *Cafarelli* court read too much into Section 2511(2)(b), which states that it is not unlawful for certain FCC employees to intercept or disclose certain communications.  18 U.S.C. § 2511(2)(b).  The court reasoned that the disclosure language would be surplusage unless use and disclosure of *lawfully* obtained communications violated Sections 2511(c) and (d).  That is the tail wagging the dog.  It is much more plausible that Congress was emphasizing forcefully the FCC employees' immunity rather than creating a vast source of criminal liability by negative implication in a rarely invoked exception.  *See, e.g.*, *United States v. Atl. Research Corp.*, 551 U.S. 128, 136-37 (2007) ("It is appropriate to tolerate a degree of surplusage rather than adopt a textually dubious construction . . . .").

1  their state wiretap claims have a life of their own if their federal Wiretap Act claim is dismissed.

2  The analysis need go no further.  In any event, federal law preempts the state wiretap claims.

3  **Express Preemption**:  Plaintiffs invoke state wiretap laws because they allegedly

4  "provide a remedy in addition to the Federal Wiretap Statute."  CCAC ¶ 144.  The language of

5  the Wiretap Act expressly precludes those "additional" state-law remedies.  *See* 18 U.S.C.

6  § 2518(10)(c) (Wiretap Act remedies "are the only judicial remedies" available for non-

7  constitutional interceptions of electronic communications).  Plaintiffs read Section 2518(10)(c)

8  to mean that "only the civil and criminal remedies provided in Section 2520 are available to

9  redress violations of the Wiretap Act.  It does not indicate intent to preempt state civil remedies

10  or other federal remedies."  Opp'n at 14.  But plaintiffs' second sentence does not follow from

11  their first.  If the acquisition of electronic communications is alleged to violate the Wiretap Act

12  (as here), then plaintiffs' sole avenue for redress is Section 2520; they cannot rely on state-law

13  remedies or other sources of federal law.  *See Quon v. Arch Wireless Operating Co.*, 445 F.

14  Supp. 2d 1116, 1138 (C.D. Cal. 2006), *rev'd on other grounds*, 529 F.3d 892 (9th Cir. 2008).

15  Plaintiffs' apparent argument is that Section 2518(10)(c) merely defines the remedies

16  available in actions brought *directly* under the Wiretap Act.  But that conflicts with plaintiffs'

17  own explanation of this subsection.  They must concede that Section 2518(10)(c) bars defendants

18  in all criminal cases (not just those brought under the Wiretap Act) from seeking to suppress

19  electronic communications on the ground that they were obtained in violation of the Wiretap

20  Act.  *See, e.g.*, *United States v. Meriwether*, 917 F.2d 955, 961 (6th Cir. 1990) (Section

21  2518(10)(c) invoked in a narcotics case suppression hearing).  Thus plaintiffs themselves show

22  that the preemptive reach of Section 2518(10)(c) extends beyond Wiretap Act civil actions and

23  prosecutions.  Indeed, the preemption clause by its terms makes Section 2520 the exclusive

24  vehicle for obtaining redress "with respect to the interception of electronic communications."  18

25  U.S.C. § 2518(10)(c).  There is no textual or logical reason for that preemption to apply to state-

26  law suppression hearings, but not to state-law civil claims.

27  **Field Preemption**:  Plaintiffs do not dispute that the Wiretap Act provides sweeping

28  rules regarding electronic-communications acquisition.  Instead, they cite the Wiretap Act's

detailed regulation of wiretapping by state law enforcement as proof that Congress has "allowed" states to "adopt more restrictive wiretapping laws." Opp'n at 17. But those provisions do not negate a finding of field preemption, they support it. Congress has told the states that:

- Their courts must suppress intercepted wire and oral communications obtained in violation of the federal Wiretap Act (18 U.S.C. § 2515).

- Only certain state executive officers may apply for wiretapping orders (§ 2516(2)).

- State court wiretapping orders must comply with Section 2518 of the Wiretap Act (*id.*).

- Wiretapping orders may be issued only to investigate certain enumerated offenses (*id.*).

- Their courts are barred from issuing wiretapping orders altogether "unless a specific State statute permits it," and those statutes must meet the Wiretap Act's "minimum standards" (S. Rep. No. 90-1097, at 98 (1968)).

Congress did not give states a blank check to regulate electronic communications. Instead, it dictated the *precise terms* on which state courts may issue wiretapping orders. Those orders may be more—but not less—restrictive than the Wiretap Act's provisions. That hardly means that states are free to criminalize and create civil liability for actions that the Wiretap Act expressly permits. On the contrary, states may require heightened-showings for wiretap orders because Congress said they may, not because of the states' alleged plenary power. Even this single aspect of the Wiretap Act reveals that the Act does not allow for unfettered state-law regulation of electronic communications. *See, e.g.*, *Bunnell v. MPAA*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007).

**Conflict Preemption:** Plaintiffs claim there is no "actual conflict" between federal law and state law. But there is a conflict if plaintiffs contend that acquiring radio broadcasts can simultaneously be legal under federal law, but violate state law. A state may not prohibit a person from acquiring AM and FM radio broadcasts, distress calls from ships at sea, CB radio transmissions, or public police and fire communications. That is because federal law makes the acquisition of those broadcasts lawful. *Cf. Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001). The same is true for all radio broadcasts that are "readily accessible to the general public" under Section 2511(2)(g)(i). The federal policy of allowing citizens to freely

1   acquire those radio broadcasts would be decimated if states could make doing so illegal.  That is

2   especially true for broadcasts made on unlicensed spectrum that the FCC opened up expressly to

3   foster innovation free from government intrusion.  *See* Rubin Opening Decl., Ex. 16 at 11.

4   **III.   PLAINTIFFS' SECTION 17200 CLAIM SHOULD BE DISMISSED WITH
         PREJUDICE**

5

6          Plaintiffs' Section 17200 claim should be dismissed with prejudice because: (1) it is

7   preempted; (2) plaintiffs have not adequately pled a violation of the statute; and (3) plaintiffs

8   have not properly alleged Proposition 64 standing.

9          **Preemption**:  Plaintiffs' Section 17200 claim is preempted for all of the reasons

10  explained above and in Google's opening motion.  Plaintiffs respond that their Section 17200

11  claim is "qualitatively different" than their Wiretap Act claim.  Opp'n at 18.  But they fail to

12  support that conclusion.  Instead, they merely parrot the words of the "unfair" prong test under

13  the UCL (CCAC ¶ 136), point to the non-qualitatively different "right to privacy" (CCAC ¶

14  137), and recite rhetoric about Google's alleged "misdeeds" (Opp'n at 18).  That falls far short of

15  the mark.  To avoid preemption, plaintiffs must articulate a theory under Section 17200 that

16  would *independently* survive if the acquisition of Wi-Fi Radio Broadcasts is lawful under federal

17  law.  They have not done that.  Their Section 17200 claim is preempted.

18         **Unlawful Prong of the UCL**:  Plaintiffs purport to have stated a claim under the UCL's

19  unlawful prong by referencing the California Constitution's right to privacy and invoking the

20  torts of invasion of privacy and conversion.  Google did not violate these laws by lawfully

21  acquiring unencrypted Wi-Fi Radio Broadcasts.  *See, e.g., Ruiz v. Gap, Inc.*, 540 F. Supp. 2d

22  1121 (N.D. Cal. 2008) (there must be an "egregious breach" of privacy to state a privacy claim

23  under the California constitution); *United States v. Ahrndt*, No. 08-468, 2010 WL 373994 (D. Or.

24  Jan. 28, 2010) (denying motion to suppress because unencrypted Wi-Fi broadcasts are readily

25  accessible to the general public); *Armstrong v. Sexson*, No. S-06-2200 LKK/EFB, 2007 WL

26  1219297, at *7 (E.D. Cal. Apr. 25, 2007) (tort of conversion requires the "wrongful exercise of

27  dominion over the personal property of another"); *Four Navy Seals v. Associated Press*, 413 F.

28  Supp. 2d 1136, 1143 (S.D. Cal. 2005) (dismissing privacy claims based on, among other things,

1    defendant's "act of downloading photos from a publicly-accessible website").  Regardless, these

2    predicate claims cannot survive because they too are preempted.  *See, e.g.*, *Stikes v. Chevron*

3    *USA, Inc.*, 914 F.2d 1265 (9th Cir. 1990)).[6]

4         **Unfair Prong of the UCL**:  The basis for plaintiffs' claim under the UCL's "unfair"

5    prong is not clear.  *See* CCAC ¶ 136 (boilerplate).  The Court may dismiss the claim for that

6    reason alone.  *See Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1053 (N.D. Cal.

7    2004).  For the first time in opposition, plaintiffs identify the following theory under the UCL's

8    "unfair" prong:  Google allegedly (1) acquired the Wi-Fi Radio Broadcasts; (2) without

9    permission; and (3) "in secret."  Even if events happened that way, those actions cannot be unfair

10   if the underlying information was "readily accessible to the general public" and lawfully

11   acquired under federal law.  Citizens may freely acquire "readily accessible" information without

12   seeking express consent of the broadcaster or announcing their intentions.

13        Plaintiffs also claim that Google issued "misleading and untruthful statements about its

14   activities."  Opp'n at 21.  Plaintiffs do not allege that they heard these statements, relied upon

15   them, or suffered any harm because of them.  Regardless, the only thing misleading about

16   Google's statements is plaintiffs' characterizations of them.  One statement is from a blog post in

17   which Google announced the launch of Street View in *Canada*, stating that it had "gone to great

18   lengths to ensure Canadians' privacy" by blurring identifiable faces and license plate numbers

19   and installing a flagging feature to allow users to have objectionable images removed.  Rubin

20   Reply Decl., Ex. 2.  Those true statements have nothing to do with the collection of publicly

21   accessible Wi-Fi broadcasts, or even anything to do with activity in the United States.  Plaintiffs

22   also point to a Google privacy policy governing its websites and services stating that Google will

23   not collect or use sensitive information "for purposes other than those described in this Privacy

---

24

25        [6] Some of plaintiffs' initial complaints brought invasion of privacy and conversion claims.
     *See, e.g.*, Rubin Opening Decl., Ex. 6 at ¶¶ 36-44, Ex. 10 at ¶¶ 37-42; Benitti Compl. ¶¶ 45-48,

26   Docket No. 1, Case No. 10-cv-03297-JW (N.D. Cal.); Reyas Compl. ¶¶ 36-42, 53-56, Docket
     No. 1, Case No. 10-cv-03886-JFW-AJW (C.D. Cal.).  However, plaintiffs exercised their

27   judgment in omitting those claims from the CCAC.  *See* Rubin Reply Decl., Ex. 1 at 6.  They
     cannot resurrect them in an opposition brief by claiming that they form the unpled predicate of a

28   Section 17200 claim.

1   Policy . . . unless we have obtained your prior consent."  Rubin Reply Decl., Ex. 3.  Plaintiffs do

2   not allege that they were parties to this contract, do not allege that Google breached it, and do not

3   explain how acquiring readily accessible information could implicate it.  Plaintiffs have not

4   stated a Section 17200 claim under the unfair prong.

5          **Proposition 64 Standing**:  Plaintiffs also fail to demonstrate the requisite economic

6   injury to meet Section 17200's standing requirement.  In *Ruiz v. Gap*, 540 F. Supp. 2d 1121,

7   which was affirmed by the Ninth Circuit, plaintiff Ruiz asserted that he had lost property under

8   Section 17200 because unencrypted laptops containing his personal information were stolen

9   from the Gap.  The court disagreed: Ruiz's "attempt to allege that the theft of the laptops

10  somehow constitutes a loss of property because his personal information was contained on the

11  laptop is unavailing.  Nor has Ruiz presented any authority to support the contention that

12  unauthorized release of personal information constitutes a loss of property."  *Id*. at 1127.

13  Plaintiffs try to distinguish *Ruiz* by claiming that the Gap lawfully obtained the information in

14  the first instance.  Even if that fact actually distinguished Ruiz from this case (it does not), it

15  would make no difference.  Ruiz's claim was that the Gap failed to safeguard personal

16  information in its custody and disclosed it against his wishes.  The Court nonetheless ruled that

17  the plaintiff had not lost any "property" for purposes of the UCL.  *See also Gardner v. Health

18  Net, Inc.*, Case No. 10-2140, slip op. at 15 (C.D. Cal. Aug. 12, 2010) ("Plaintiffs here have failed

19  to present any authority indicating that the loss of their sensitive information . . . constitute[s] the

20  type of loss that is sufficient to support a UCL claim.").

21          *Ruiz* and *Gardner* are in accord with the California Supreme Court's recent clarification

22  of the Section 17200 standing requirement: "a plaintiff now must demonstrate some form of

23  economic injury."  *Kwikset Corp. v. Superior Court*, ___ Cal. Rptr. 3d ___, 2011 WL 240278, at

24  *6 (Jan. 27, 2011).  Applying that test, the acquisition, disclosure or use of intangible personal

25  data could only be remediable under Section 17200 if there is a corresponding economic injury.

26  There was none in *Ruiz* and *Gardner*.  In contrast, economic injuries were present in the UCL

27  standing cases that plaintiffs cite.  *See Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 897

28  (N.D. Cal. 2010) ($14,000 in illegal downloads and $75,000 in network security costs); *Doe 1 v.*

1  *AOL LLC*, 719 F. Supp. 2d 1102, 1112 (N.D. Cal. 2010) (members paid fees for AOL's service

2  but did not receive service on bargained-for terms).  But not here.  The CCAC does not allege

3  that plaintiffs lost a single penny or were deprived of any property.  Plaintiffs instead claim that

4  they "lost" property when they broadcast information out to the world over public, unencrypted

5  radio waves.  To accept that formulation, however, would deprive the word "lost" of any

6  meaning and run afoul of *Kwikset*'s "economic injury" requirement.

7      Finally, although not alleged in the CCAC, plaintiffs claim in opposition that they lost

8  "money" in the form of "time and energy investigating claims" and attorney's fees.  Opp'n at 25.

9  That is a request for Proposition 64's judicial repeal.  As Judge Illston held:  "Plaintiffs cannot

10  establish standing to pursue a UCL claim based on expenses incurred in order to bring their UCL

11  claim.  If they could, the requirement that individuals show they lost money or property 'as a

12  result' of the challenged practice in order to have standing to sue under the UCL would be

13  meaningless."  *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 989 (N.D. Cal. 2010).  That

14  reasoning is unassailable and should be followed.

15                          <u>**CONCLUSION**</u>

16      For the foregoing reasons, Google respectfully requests that the Court dismiss with

17  prejudice the CCAC and enter judgment in Google's favor.

18  Dated:  February 22, 2011                    Attorneys for Defendant Google Inc.

19

20                                              By:  ___/s/  Michael Rubin_____

21                                                  David H. Kramer
                                                    Michael H. Rubin

22                                                  Bart E. Volkmer
                                                    Caroline E. Wilson

23                                                  Wilson Sonsini Goodrich & Rosati
                                                    650 Page Mill Road

24                                                  Palo Alto, CA 94304-1050
                                                    Telephone:  (650) 493-9300

25                                                  Facsimile:   (650) 565-5100
                                                    Email:  mrubin@wsgr.com

26

27

28