DAVID H. KRAMER, State Bar No. 168452
MICHAEL H. RUBIN, State Bar No. 214636
BART E. VOLKMER, State Bar No. 223732
CAROLINE E. WILSON, State Bar No. 241031
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 565-5100
Email: mrubin@wsgr.com

*Attorneys for Defendant Google Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE INC. STREET VIEW ELECTRONIC COMMUNICATIONS LITIGATION | CASE NO.:  5:10-md-02184 JW (HRL) |
| | **DEFENDANT GOOGLE INC.'S MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)** |
| | Hearing Date:    October 3, 2011 |
| | Time:                  9:00 a.m. |
| | Before:               Honorable James Ware |

## NOTICE OF MOTION & MOTION FOR CERTIFICATION

Please take notice that on October 3, 2011, at 9:00 a.m., before the Honorable James Ware, Defendant Google Inc. ("Google") will and hereby does move the Court to certify its June 29, 2011 Order concerning Google's motion to dismiss for an immediate appeal under 28 U.S.C. § 1292(b) and stay this action during that appeal.  Google's motion is based on this notice, the accompanying memorandum of points and authorities, the pleadings on file in these actions, arguments of counsel and any other matters that the Court deems appropriate.  Google also requests that to the extent the Court believes a hearing on this motion is appropriate, that it schedule the hearing for a date sooner than October 3, 2011 that is convenient for the Court if such a date is available.

## STATEMENT OF ISSUE TO BE DECIDED

Should the Court certify its June 29, 2011 Order concerning Google's motion to dismiss for an immediate appeal under 28 U.S.C. § 1292(b)?

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

Google Inc. ("Google") respectfully asks the Court to certify its June 29, 2011 Order concerning Google's motion to dismiss for an immediate appeal under 28 U.S.C. § 1292(b). Certification is proper for three reasons.  First, the Court's ruling on Google's motion to dismiss plaintiffs' claim under the federal Wiretap Act involves a controlling question of law:  the proper interpretation of the term "radio communication."  Second, the Court's Wiretap Act ruling concerns a matter of first impression about which reasonable jurists could disagree.  Third, immediate appeal would materially advance the ultimate termination of the case if the Ninth Circuit agrees with Google's interpretation of the term "radio communication."[1]

---

[1] Section 1292(b) states that if a district judge believes that certification is appropriate, "he shall so state in writing in such order."  28 U.S.C. § 1292(b).  Accordingly, if the Court grants this motion for certification, we respectfully request that the Court amend its June 29, 2011 Order to reflect that certification.

## II.      FACTUAL BACKGROUND

On November 8, 2010, plaintiffs filed a consolidated class action complaint against Google (the "CCAC").  Docket No. 54.  The CCAC contains claims for relief under:  (1) the federal Wiretap Act; (2) state law wiretap statutes; and (3) California's Business and Professions Code Section 17200.  Google filed a motion to dismiss all three claims on December 17, 2010. Docket No. 60.  The Court issued an order on June 29, 2011 dismissing plaintiffs' state law claims, but allowing their federal Wiretap Act claim to proceed ("June 29, 2011 Order").  Docket No. 82.

Google's motion to dismiss argued that plaintiffs were required to plead that the transmissions from the open, unsecured Wi-Fi networks at issue in this case were *not* "readily accessible to the general public."  Docket No. 82 at 6.  Specifically, Google argued that because Wi-Fi transmissions are "radio communications," plaintiffs were required—and had failed—to plead that one of Section 2510(16)'s exceptions to the presumption of ready accessibility for radio transmissions applies.  The Court disagreed.  It ruled that Wi-Fi transmissions are not "radio communications," and that plaintiffs did not need to demonstrate the applicability of a Section 2510(16) exception to state a claim under the Wiretap Act.  June 29, 2011 Order at 18-19.  The Court reached that conclusion by defining the term "radio communication" to mean only "traditional radio services."  *Id*. at 16.  It noted that this case "presents a case of first impression as to whether the Wiretap Act imposes liability upon a defendant who allegedly intentionally intercepts data packets from a wireless home network."  *Id*. at 7-8.  And that it "presents a novel question of statutory interpretation."  *Id*. at 8.

## III.      ARGUMENT

### A.      The Court's Wiretap Act Ruling Involves a Controlling Question of Law.

When deciding whether to certify an order for interlocutory review, the Court first examines whether the order "involves a controlling question of law."  28 U.S.C. § 1292(b).  Here, the Court resolved a pure question of law that will be subject to *de novo* review on appeal: the proper interpretation of a term in the Wiretap Act.  *See Lively v. Wild Oats Markets, Inc.*,

1   456 F. 3d 933, 938 (9th Cir. 2006) ("We . . . review *de novo* a district court's interpretation and

2   construction of a federal statute.").

3          The statutory interpretation question at issue here is controlling.  The Court's definition of

4   the term "radio communication" creates a fork in the road for this case's administration.  The

5   pleadings, the focus of fact and expert discovery, many class certification questions, the

6   composition of summary judgment briefs, and the proof adduced at any trial all depend upon the

7   threshold question of whether the Wi-Fi transmissions at issue here constitute "radio

8   communications" under the Wiretap Act.  *See, e.g.,* June 29, 2011 Order at 18-19 (finding that

9   plaintiffs did not need to plead the applicability of Section 2510(16)'s exception to presumption of

10  ready accessibility of radio transmissions because Wi-Fi transmissions are not "radio

11  communications").  Where, as here, the statutory interpretation question impacts whether the

12  complaint states a claim, it makes sense to permit a defendant appellate review of an adverse

13  decision before forcing it to proceed with protracted litigation at the district court.  *See Helman v.*

14  *Alcoa Global Fasteners Inc.*, Case No. 09-cv-1353 SVW (FFMx), 2009 WL 2058541, at *5-7

15  (C.D. Cal. June 16, 2009), *aff'd*, 637 F.3d 986 (9th Cir. 2011) (certifying an order granting a

16  motion to dismiss that turned on the interpretation of a single phrase in a federal statute that was

17  an issue "of first impression in the Ninth Circuit," noting that "[i]t would be preferable . . . to

18  address the issue now, rather than to require the parties . . . to expend significant time and

19  resources, which might ultimately be wasted" if the statutory interpretation was not adopted by the

20  Court of Appeals); *cf. Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1996) ("an order denying

21  qualified immunity, to the extent it turns on an 'issue of law,' . . . is immediately appealable.").

22          While plaintiffs may argue that a successful appeal does not guarantee victory for Google,

23  it is well settled that a question of law may be "controlling" even though it does not entirely

24  determine "who will win on the merits."  *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir.

25  1996).  A ruling in Google's favor from the Ninth Circuit concerning the definition of "radio

26  communication" would go a long way to resolving (and defining the scope of) this matter even if

27  it does not end the case entirely.  And regardless of the outcome on appeal, appellate guidance on

28  the central legal question at issue will allow the parties to litigate this matter without having to

1    worry that a subsequent ruling from the Ninth Circuit might put them back at square one.   *Cf.*

2    *Kuehner*, 84 F.3d at 319 ("an order may involve a controlling question of law if it could cause the

3    needless expense and delay of litigating an entire case in a forum that has no power to decide the

4    matter").

5            The Court's interpretation of "radio communication" concerns a legal issue that pervades

6    the case and thus should be considered controlling under 28 U.S.C. § 1292(b).  *See, e.g., E. & J.*

7    *Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1032 (9th Cir. 2007) (certifying as a controlling

8    question of law the applicability of the filed rate doctrine to plaintiff's claims); *Steering Comm. v.*

9    *United States*, 6 F. 3d 572, 575 (9th Cir. 1993) ("standard of conduct for pilots under the federal

10   aviation regulations is a question of law appropriate for interlocutory appeal"); *Helman*, 2009 WL

11   2058541, at *7.

12       **B.      There Is a Substantial Ground for Difference of Opinion Concerning the
                Court's Federal Wiretap Act Ruling.**
13

14           A non-final order can be certified for immediate appeal if "there is substantial ground for

15   difference of opinion" concerning the controlling legal question at issue.  28 U.S.C. § 1292(b).

16   The Ninth Circuit recently interpreted this element and made clear that "when novel legal issues

17   are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue

18   may be certified for interlocutory appeal without first awaiting development of contradictory

19   precedent."  *See Reese v. BP Exploration (Alaska) Inc.*, __ F.3d __, Case 10-35128, 2011 WL

20   2557238, *5 (9th Cir. June 29, 2011).

21           Here, the Court itself noted that the action "presents a case of first impression as to

22   whether the Wiretap Act imposes liability upon a defendant who allegedly intentionally intercepts

23   data packets from a wireless home network." June 29, 2011 Order at 7-8.   This conclusion is

24   undoubtedly correct:  we are aware of no other cases analyzing whether communications sent over

25   open, unencrypted Wi-Fi networks constitute "radio communications" under the Wiretap Act.

26           The only remaining question concerning this element is whether fair-minded judges might

27   reach a different conclusion than the Court concerning the proper definition of "radio

28   communication."  Google respectfully submits that they could.  Google defined "radio

1  communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of

2  any nature transmitted over the radio spectrum." Docket No. 80 at 3.  A reviewing court could

3  conclude that Google's definition comports with the plain, ordinary meaning of the term.  *See,*

4  *e.g.,* June 29, 2011 Order at 11 ("Congress could have intended 'radio communication' to simply

5  combine the definition of 'radio' with the definition of 'communication,' thereby creating a

6  compound that incorporates all communications transmitted using radio waves"), 13 (based on a

7  plain-meaning analysis, "'radio communication' remains open to multiple interpretations").

8      In addition, the Ninth Circuit could disagree with this Court's conclusion that the term

9  "radio communication" relates to "traditional radio services."  June 29, 2011 Order at 16.  In

10  particular, the Court is of the view that the Wiretap Act's prohibition on the interception of

11  cellular telephone calls means that those calls, and by extension Wi-Fi transmissions, cannot

12  constitute "radio communications."  Google takes a different view.  The legislative history of

13  ECPA's amendments to the Wiretap Act specifically refers to the "radio portion of [] cellular

14  telephone" calls as "radio communications."  S. Rep. No. 99-508, at 21.  Google believes that this

15  portion of the Senate Report demonstrates that the Wiretap Act's use of the term "radio

16  communication" cannot be limited to "traditional radio services."

17      Finally, the Court ruled that the term "radio communication" is ambiguous.  *See* June 29,

18  2011 Order at 13 ("Thus, the Court finds that a plain reading of 'radio communication' from the

19  statutory text, as well as reading the text in the context of the structure and purpose of the Act,

20  fails to yield a definitive and unambiguous result.").  Assuming that to be the case, a reviewing

21  Court could conclude that Google's definition should control based on Due Process and the rule of

22  lenity.  *See United States v. Santos*, 553 U.S. 507, 519 (2008) ("Essentially, the Government asks

23  us to resolve the statutory ambiguity in light of Congress's presumptive intent to facilitate money-

24  laundering prosecutions.  That position turns the rule of lenity upside-down.  We interpret

25  ambiguous criminal statutes in favor of defendants, not prosecutors.").

26      The Court's Order addresses novel questions of law and applies them to new technologies

27  in ways which reasonable judges could disagree.  The second element for certification is satisfied.

28   *See Reese*, 2011 WL 2557238, at *5; *Driscoll v. Gebert*, 458 F.2d 421, 424 (9th Cir. 1972)

1  (reviewing a decision that certified an order construing a California statute "[b]ecause of the . . .

2  absence of case guidance"); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1190,

3  1243 (E.D. Pa. 1980) (certifying an order that interpreted a complex statute on a matter of first

4  impression); *Cisco Sys., Inc. v. Cal. Workers' Comp. Appeals Bd.*, Case No. 00-cv-21092 JW,

5  2001 WL 34780587, at *7 (N.D. Cal. Mar. 20, 2001) (Ware, J.) (certifying an order granting in

6  part and denying in part defendant's motion to dismiss, noting that the issue certified "appears to

7  be one of first impression in this Circuit.").[2]

8      **C.**    **An Immediate Appeal of the Court's Federal Wiretap Act Ruling Would Materially Advance the Ultimate Termination of this Case.**

9

10      Finally, immediate appeal of the Court's Order "may materially advance the ultimate

11  termination of the litigation."  28 U.S.C. § 1292(b).  This factor does not "require[] that the

12  interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially

13  advance' the litigation."  *See Reese*, 2011 WL 2557238, at *5.  Here, the Ninth Circuit could agree

14  with Google's statutory interpretation and conclude that plaintiffs' Wiretap Act claim should have

15  been dismissed, resulting in the dismissal of plaintiffs' entire case (subject to possible

16  amendment).  That amply satisfies the third prong of the test for interlocutory certification.  *See id.*

17  (certification proper where reversal of the district court order "may" remove a defendant and

18  certain claims against other defendants from a case).  Moreover, the parties and the judiciary

19  would benefit from the Ninth Circuit interpreting the term "radio communication" before they

20  embark on a complex, resource-intensive litigation at the district court using a definition that

21  might later be abrogated.  *Id.* at *5 n.5. (Section 1292(b) should be interpreted to avoid

22  "unnecessary, protracted litigation and a considerable waste of judicial resources."); *Helman*, 2009

23  WL 2058541, at *7.

24

25  _____

26      [2]  District courts frequently certify for immediate appeal orders on motions to dismiss. *See, e.g.*, *Sofferin v. Am. Airlines, Inc.*, 788 F. Supp. 1010, 1011 (N.D. Ill. 1992) (resolution by the

27  appellate court of a legal issue controlling disposition of a motion to dismiss "would materially advance the ultimate termination of this case by allowing this major controversy to be resolved

28  promptly"); *Cisco*, 2001 WL 34780587, at *7.

1
      **D.**    **The Court Should Stay This Action During the Pendency of the Appeal.**

2
      If the Court grants Google's request for certification, it should stay this action during the

3
pendency of any subsequent appeal.  Courts routinely stay actions while an interlocutory appeal is

4
pending pursuant to 28 U.S.C. § 1292.  *See, e.g., Lakeland Village Homeowners Ass'n v. Great*

5
*Am. Ins. Grp.*, 727 F. Supp. 2d 887, 897 (E.D. Cal. 2010) (certifying appeal pursuant to Section

6
1292 and staying case pending resolution of appeal); *Deming v. First Franklin*, No. 09-5418, 2010

7
WL 2326170, *1 (W.D. Wash. June 7, 2010) (same); *In re Cal. Title Ins. Antitrust Litig.*, No. 08-

8
01341, 2010 WL 785798, *2 (N.D. Cal. Mar. 3, 2010) (same); *Asis Internet Servs. v. Active*

9
*Response Grp.*, No. C07 6211, 2008 WL 4279695, *4 (N.D. Cal. Sept. 16, 2008) (same); *Ass'n of*

10
*Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093-94 (E.D. Cal. 2008)

11
(same); *Watson v. Yolo Cnty. Flood Control and Water Conservation Dist.*, No. 2:06-cv-1549,

12
2007 WL 4107539, *4 (E.D. Cal. Nov. 16, 2007) (same); *Eaton v. Siemens*, No. 2:07-cv-315,

13
2007 WL 2318538, *4 (E.D. Cal. Aug. 10. 2007) (same).

14
      A stay pending appeal would not prejudice or otherwise harm plaintiffs.  The activity

15
about which they complain ceased in May 2010, once Google learned of it.  *See* Docket No. 61

16
(Declaration of Michael H. Rubin in Support of Google Inc.'s Motion to Dismiss, Ex. 2).  And

17
all parties have represented that they have undertaken steps to preserve relevant evidence.

18
Docket No. 18 at 2.  As a result, this case would be able to proceed just as smoothly after an

19
appeal has been resolved as it would be able to today.  But if this action were to proceed while an

20
interlocutory appeal is pending, the parties and this Court would be put to the burden of pursuing

21
a case that may fundamentally change when the Ninth Circuit issues a ruling.  As noted above,

22
the pleadings, discovery, class certification, summary judgment, and any trial depend upon the

23
threshold question—which will be presented to the Ninth Circuit if certification is granted—of

24
whether the Wi-Fi transmissions at issue here constitute "radio communications" under the

25
Wiretap Act.  If the case were to go forward during appeal, the resources expended on those

26
efforts could be wasted.  *See, e.g., Asis Internet Servs.*, 2008 WL 4279695, *4 (staying action

27
pending appeal to "promote economy of time and effort for the Court, counsel, and litigants");

28
*Ass'n of Irritated Residents*, 634 F. Supp. 2d at 1093-94 (acknowledging that an appeal of a

1  denial of a motion to dismiss may result in the filing of an amended complaint and holding that

2  "[i]t would be a waste of judicial and party resources to proceed with the other claims while the

3  appeal is pending"); *Watson*, 2007 WL 4107539, *4 (E.D. Cal. Nov. 16, 2007) (holding stay

4  pending appeal "promotes economy of time and effort both for the court and the parties"); *Eaton*,

5  2007 WL 2318538, *4 (same).

6      Accordingly, a stay during appeal is warranted.

7  **IV.    CONCLUSION**

8      Because all three elements of Section 1292(b) are satisfied with respect to the Court's

9  June 29, 2011 Order, Google respectfully requests that the Court certify it for immediate appeal

10  and stay the action during any subsequent appeal.  In addition, Google also requests that to the

11  extent the Court believes a hearing on this motion is appropriate, that it schedule the hearing for a

12  date sooner than October 3, 2011 that is convenient for the Court if such a date is available.

13

14  Dated:  July 8, 2011                    Attorneys for Defendant Google Inc.

15

16                                By:     /s/ *Michael H. Rubin*
                                         David H. Kramer
17                                       Michael H. Rubin
                                         Bart E. Volkmer
18                                       Caroline E. Wilson
                                         Wilson Sonsini Goodrich & Rosati
19                                       650 Page Mill Road
                                         Palo Alto, CA 94304-1050
20                                       Telephone:  (650) 493-9300
                                         Facsimile:    (650) 565-5100
21                                       Email:  mrubin@wsgr.com

22

23

24

25

26

27

28