MICHAEL H. RUBIN, SBN 214636
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile:  (415) 947-2099
Email:    mrubin@wsgr.com

DAVID H. KRAMER, SBN 168452
DYLAN J. LIDDIARD, SBN 203055
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 565-5100
Email:    dkramer@wsgr.com
           dliddiard@wsgr.com

Attorneys for Defendant Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE INC. STREET VIEW ELECTRONIC COMMUNICATIONS LITIGATION | CASE NO.: 3:10-md-02184-CRB<br><br>MOTION FOR ADMINISTRATIVE RELIEF TO ENFORCE THE COURT'S FEBRUARY 7, 2014 ORDER |

Defendant Google Inc. ("Google") respectfully moves for administrative relief to enforce the Court's February 7, 2014 Order (Dkt. No. 108). Rather than comply with this Order—which explicitly limits discovery to the issue of standing—Plaintiffs have ignored it: they have made wide-ranging, overly burdensome demands for information on matters that go far beyond the threshold standing issue. Judicial intervention is needed to prevent wasteful, protracted litigation of an issue that has already been ruled upon.[1]

## BACKGROUND

Between 2008 and May 2010, Google Street View cars passively collected network-identifying information broadcast by Wi-Fi networks as the cars traveled along public roadways. Google sought this information because knowing the location of Wi-Fi networks helps Google provide "location aware" services, such as directions. In May 2010, Google discovered that its Street View cars had also acquired data sent over some unencrypted Wi-Fi networks ("payload data").[2] The cars only acquired payload data if it was being transmitted to the street at the particular moment a Street View car happened to drive by. Further, because the software in the Street View cars cycled through Wi-Fi channels at a rate of five times per second, any single data collection lasted only two-tenths of a second. *See* Joint Case Management Statement at 2-3 (Dkt. No. 107).

Given all that, the chance that any part of a given individual's communications was acquired is remote. Plaintiffs—apparently realizing this—danced around the question of standing in their Complaint, alleging only that "*On information and belief*, Defendant surreptitiously collected, decoded, and stored data *from Plaintiff's WiFi connection*, including payload data, on at least one occasion." Compl. ¶¶ 18-38 (emphasis added). But Plaintiffs do not plead any facts that

---

[1] A stipulation resolving this issue could not be obtained for the reasons explained below. *See infra* p. 3 & Declaration of Michael H. Rubin ("Rubin Decl.") ¶¶ 4-5.

[2] Upon learning of the unwanted collection, Google promptly grounded its Street View cars, removed their Wi-Fi software and hardware, segregated and rendered inaccessible the payload data that had been acquired, hired a third party to review what had happened, publicly apologized for collecting payload data, and committed to never again collect any Wi-Fi data whatsoever with its Street View vehicles.

1 plausibly suggest that Google actually did collect any payload data from Plaintiffs' Wi-Fi networks.

2

3 The parties presented their differing views on this issue to the Court in the Joint Case Management Statement submitted on January 31, 2014, and it was addressed at the February 7, 2014 Case Management Conference. Plaintiffs insisted that notwithstanding the serious questions about their standing, merits-based discovery should begin unfettered. Rubin Decl. ¶ 2. Google said that the question of standing needed to be resolved first, and that discovery should be limited to that issue alone. *Id*. The Court agreed with Google and issued an order that permitted only "limited discovery on the issue of standing," and directed the parties to advise the Court if a further conference needed to be scheduled. Dkt. No. 108.

Just days later, Plaintiffs made clear that they did not intend to abide by the Court's explicit limitation. They demanded all sorts of information from Google—information that cannot help resolve the question of their individual standing to pursue the case. *See* Pls.' Notice Pursuant to Fed. R. Civ. P. 30(B)(2) & 30(B)(6) & First Set of Reqs. for Produc. of Docs. Pursuant to Rule 34 ("Production Requests," "Deposition Topics," or collectively "Requests") (Rubin Decl. ¶ 3 & Ex. A).

In particular, Plaintiffs request that Google deliver to their counsel's office "*[a]ll software and hardware* used to collect and record Street View Data" from January 1, 2007 through November 8, 2010. *See* Production Request No. 2. Under any reading, that demand is irrelevant to the standing question—and taken literally, would require delivering a fleet of Street View cars to Plaintiffs' counsel.

Plaintiffs also insist they receive *all* data collected by Google Street View cars—when given Plaintiffs' own allegations, the only data relevant to "limited discovery on the issue of standing" would be data broadcast by the *named Plaintiffs* over their *own* unencrypted Wi-Fi networks. *See* Production Request No. 1; Compl. ¶¶ 18-38. Plaintiffs could not possibly need *all* Wi-Fi network information and *all* payload data from *other* networks to answer the simple question of whether any data from *their* network was acquired by a passing car. And the notion that all this information should be turned over to counsel for a handful of individuals who have not

yet established their standing is in serious tension with their allegations that at least some of this information is private (Compl. ¶ 4).[3]

In short, Plaintiffs have proceeded as though the Court never issued its Order limiting proceedings to the standing question.

Google, by contrast, has proposed a fair and structured means to efficiently address the standing inquiry, and to do so without venturing into the merits before Plaintiffs' standing and this Court's jurisdiction are established. *See* Google's February 21, 2014 Letter (Rubin Decl. ¶ 4 & Ex. B); *see also* Proposed Order Granting Motion for Administrative Relief to Enforce the Court's February 7, 2014 Order ("Proposal " or "Proposed Order"). Under this Proposal, the parties would agree on a neutral third party ("Neutral") (Proposal ¶ 1), who would develop and execute a protocol for determining whether any payload data was acquired from a named Plaintiff's Wi-Fi network (*id.* ¶ 2), as Plaintiffs allege occurred on "information and belief." Compl. ¶¶ 18-38. In particular, Google would deposit all payload and other Wi-Fi network data with the Neutral, and Plaintiffs would deposit the wireless routers that Plaintiffs used to maintain unencrypted Wi-Fi networks during the relevant time period. *Id.* ¶ 3. The Neutral would use this information to determine whether any payload data broadcast over the networks of the named Plaintiffs was actually acquired by a Street View car as it drove down the street. The Neutral would then issue a report detailing its findings. *Id.* ¶ 4.

On March 3, the parties conferred about the Proposal. Rubin Decl. ¶ 5. Plaintiffs' counsel flatly rejected it and stated that they would not offer an alternative. *Id.*

## ARGUMENT

The court has allowed only limited jurisdictional discovery directed to resolving the question of standing. Dkt. No. 108. "To establish Article III standing, an injury must be concrete, par-

---

[3] Plaintiffs also demand "all documents explaining how the software and hardware *collects, parses, and stores* Street View Data," and "[a]ll data and documents *correlating or associating* Street View Data with the name of a Person, with geographic coordinates or with physical addresses or locations." Production Requests Nos. 3-4 (emphasis added). But those wide-ranging Production Requests are off base, as is Plaintiffs' Deposition Notice. *See, e.g.*, Deposition Topic No. 3 ("The function and operation of the software and hardware used to collect and record Street View Data.").

ticularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quotations omitted). When plaintiffs' claims are based on the alleged unlawful interception of their communications, to establish standing, plaintiffs must—at a minimum—show that the defendant acquired the contents of *their* communications, or that such acquisition is imminent. *See id.* at 1147-50; *ACLU v. NSA*, 493 F.3d 644, 655-56, 673-74 (6th Cir. 2007). In *Clapper*, the Court concluded that plaintiffs lacked standing to challenge alleged surveillance by the Government where they "fail[ed] to offer any evidence that their communications have been monitored." 133 S. Ct. at 1148; *see also ACLU*, 493 F.3d at 655-56, 673-74 (holding that plaintiffs who lacked evidence that their communications had been intercepted did not have standing to challenge alleged NSA surveillance). Moreover, in *Clapper*, the plaintiffs were denied even the very limited discovery on the standing question. 133 S. Ct. at 1149 n.4. They certainly were not given what Plaintiffs are demanding here—free rein to peruse all of the information that was acquired (along with all information regarding the methods and equipment used for doing so).

The *only* relevant question here is whether Google acquired payload data transmitted from a Wi-Fi network belonging to one or more of the named Plaintiffs. That is the only basis that Plaintiffs allege for standing—*albeit* in a conclusory fashion. *See* Compl. ¶¶ 18-38 ("On information and belief, Defendant surreptitiously collected, decoded, and stored data *from Plaintiff's WiFi connection*, including payload data, on at least one occasion." (emphasis added)). Rather than focusing their efforts on this specific question, Plaintiffs seek not to undertake a mere fishing expedition, but to drain the entire lake in the hopes of finding a specific fish. Plaintiffs' broad, unduly burdensome demands clearly contravene the Court's Order. And Plaintiffs make these demands without having made any showing that they have the right to pursue this action in the first place.

For these reasons, Google respectfully requests that the Court enter an order adopting Google's Proposal, as reflected in the attached Proposed Order. Google's Proposal is narrowly tailored to address the threshold jurisdictional issue before this Court without venturing improperly into collateral matters. *See supra* p. 3. Moreover, Google's Proposal would eliminate the

prospect of either party—or untold numbers of lawyers—combing through what Plaintiffs allege is the private payload data of others. *Id.*

## CONCLUSION

For the foregoing reasons, Google's motion should be granted.

Dated:  March 7, 2014                               WILSON SONSINI GOODRICH & ROSATI
                                                    Professional Corporation


                                                    By:   */s/ Michael H. Rubin*
                                                          Michael H. Rubin
                                                          Email:  mrubin@wsgr.com

                                                    *Attorney for Defendant Google Inc.*