UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN JOFFE, et al., <br>     Plaintiffs, <br>   v. <br> GOOGLE, INC., <br>     Defendant. | Case No. 10-md-02184-CRB (MEJ) <br><br> **REPORT & RECOMMENDATION RE: JOINT DISCOVERY LETTER** <br><br> Re: Dkt. No. 117 |

## INTRODUCTION

Plaintiffs[1] bring this putative class action against Google, Inc., alleging that Google intentionally intercepted, recorded, and stored their Wi-Fi communications in violation of the federal Wiretap Act, 18 U.S.C. §§ 2511, *et seq.* Pending before the Court is the parties' Joint Discovery Dispute Letter, filed August 8, 2014, in which Plaintiffs seek "All Street View Data" from Google, so that Plaintiffs can analyze such data for information relevant to their standing. Jt. Ltr. at 1, Dkt. No. 117. Having reviewed the parties' positions, the undersigned RECOMMENDS that the District Court appoint a special master to conduct a search of Google's Street View Data.

## BACKGROUND

Plaintiffs allege that Google programmed its fleet of "Street View" vehicles to automatically connect to every wireless network in range as they traveled streets throughout the United States and the rest of the world. *Id.* For over three years, Google recorded communications transmitted over unencrypted networks, and then transferred them to its own

---

[1] Plaintiffs are Patrick Keyes, Matthew Berlage, Aaron Linsky, James Fairbanks, Jeffrey Colman, John Redstone, Karl Schulz, Dean Bastilla, Vicki Van Valin, Stephanie and Russell Carter, Danielle Reyas, Bertha Davis, Jason Taylor, Jennifer Locsin, James Blackwell, Rich Benitti, Benjamin Joffe, Lilla Marigza, Wesley Hartline, David Binkley and Eric Myhre.

computers. *Id.* On February 7, 2014, the District Court authorized "limited discovery on the issue of standing." Dkt. No. 108. Plaintiffs subsequently served requests for production and a Federal Rule of Civil Procedure ("Rule") 30(b)(6) deposition. Jt. Ltr., Ex. 1. After meet and confer discussions with Google, Plaintiffs agreed to limit their requests to: (1) the Street View Data; and (2) two documents, which Google has agreed to produce, to help Plaintiffs understand the data and any changes to it. Jt. Ltr. at 1.

Plaintiffs and Google agree that the Street View Data is the dataset that must be searched for the named Plaintiffs' communications. *Id.* However, Google argues that only a tiny fraction of the Street View Data could possibly relate to Plaintiffs, and that their request that all of the Street View data be produced is overbroad and ignores the District Court's order limiting discovery to assessing whether the named Plaintiffs have standing. *Id.* at 4. Google requests that the Court either: (1) order Plaintiffs to provide information, including search terms, which would allow for a determination of whether their individual Wi-Fi communications are in the payload data, after which Google would engage a third party to conduct the actual search; or (2) appoint a special master to conduct the search. *Id.* at 4-5.

In response, Plaintiffs maintain that the Street View Data is not susceptible to a keyword search that can be agreed to by the parties in advance, as searching for their communications will likely require Plaintiffs to study the data, review search results, and develop new strategies based on what they find or what they learn about the data. *Id.* at 1-2. Plaintiffs also argue that Google's method is highly inefficient. *Id.* at 2. Plaintiffs note that the parties have negotiated for months over Plaintiffs' discovery requests, suggesting it could take at least several more to negotiate the selection of the third party and the search protocols and present any disagreements to the Court. *Id.* Plaintiffs "already know such disagreements will exist," as "Google has made it clear that it will object to searches for communications intercepted from networks other than those of the named Plaintiffs." *Id.* at 3.

## DISCUSSION

Rule 34 permits a party to seek "to inspect, copy, test, or sample," among other things, "data or data compilations ... stored in any medium...." Fed. R. Civ. P. 34(a)(1)(A). However,

1  "[a] court can limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit." *Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 558 (D. Conn. 2006) (internal citations and quotation marks omitted). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Id.* (internal citations and quotation marks omitted).

Here, it does not appear that Plaintiffs' request for "All Street View Data" complies with the spirit of the District Court's order limiting discovery to the issue of Plaintiffs' standing. There is no dispute that Google Street View vehicles drove along public roads, collecting network identifying information openly broadcast by Wi-Fi networks. Jt. Ltr. at 3. There is also no dispute that the Street View Data is the dataset that must be searched for the named Plaintiffs' communications. *Id.* at 1. However, while Plaintiffs argue that they are entitled to search all of the intercepted data "to ascertain whether Google intercepted Plaintiffs' communication, because any Plaintiff whose communications were intercepted while being transmitted over someone else's unencrypted Wi-Fi network has standing and is within the proposed class," *Id.* at 2, the need for *all* of the data is speculative. *Advante Int'l Corp. v. Mintel Learning Tech.*, 2006 WL 1806151, at *1 (N.D. Cal. June 29, 2006) (a party does not have an "unfettered right to conduct its *own* examination") (emphasis in original). It is unlikely that Plaintiffs need to inspect all of the Street View Data to assess the preliminary issue of the named Plaintiffs' standing. Thus, the Court must determine the most efficient method by which Plaintiffs may obtain the requested information.

Google first suggests that Plaintiffs provide information, including search terms, which would allow for a determination of whether their individual Wi-Fi communications are in the payload data, after which Google would engage a third party to conduct the actual search. Jt. Ltr. at 4. However, given the likelihood of disagreements if one party or the other conducts the search, the Court agrees with Plaintiffs that this is likely to lead to further disputes. Instead, the Court

finds Google's second suggestion, the appointment of a special master, appropriate in this case. Such an appointment would permit a technical expert to review all the data in a timely and effective manner, and would limit collateral attacks and claims of bias that are likely to result if either party conducts the search. Further, given that Plaintiffs allege the data contains private information, a special master would protect any interests that parties not before the Court might have. Accordingly, appointment of a special master is likely to provide an amicable resolution of the parties' dispute and ensure that discovery remains limited to standing.

## CONCLUSION

Based on the analysis above, the undersigned RECOMMENDS that the District Court appoint a special master to conduct a search of Google's Street View Data. If the Court agrees with the undersigned's recommendation, the parties shall use Google's Jurisdiction Discovery Proposal for selection of the special master, development of protocol and depositing of information, and all related matters. Jt. Ltr., Ex. 2.A.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation 14 days after being served.

**IT IS SO ORDERED.**

Dated: August 13, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge