**SPECTOR ROSEMAN KODROFF & WILLS, PC**
Jeffrey L. Kodroff, Esq.
jkodroff@srkw-law.com
John A. Macoretta, Esq.
jmacoretta@srkw-law.com
Mary Ann Geppert, Esq.
mgeppert@srkw-law.com
1818 Market St., Ste. 2500
Philadelphia, PA  19103
Tel. 215-496-0300
Fax. 215-496-6611

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Daniel A. Small, Esq.
dsmall@cohenmilstein.com
David A. Young, Esq.
dyoung@cohenmilstein.com
1100 New York Avenue, NW, Suite 500W
Washington, DC 20005
Tel. 202-408-4600
Fax. 202-408-4699

*Plaintiffs' Co-Lead Counsel*

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Elizabeth J. Cabraser, Esq. (SBN: 083151)
ecabraser@lchb.com
Michael W. Sobol (SBN: 194857)
msobol@lchb.com
Nicole D. Sugnet (SBN: 246255)
nsugnet@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel. 415-956-1000
Fax. 415-956-1008

*Plaintiffs' Liaison Counsel*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: GOOGLE INC. STREET VIEW ELECTRONIC COMMUNICATIONS LITIGATION | Case No.  3:10-md-02184-CRB<br><br>**PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |

## I. INTRODUCTION

To perform the jurisdictional discovery the Court authorized to determine Plaintiffs' Article III standing, the "Street View Data" that Google intercepted and recorded must be searched to determine whether they contain Plaintiffs' Wi-Fi communications. Plaintiffs do *not* object to the Magistrate Judge's recommendation that the searches be conducted by an independent, court-appointed Special Master. Plaintiffs do, however, object to the Magistrate Judge's recommendation to adopt wholesale Google's Jurisdiction Discovery Proposal (the "R&R Proposal," Dkt. 117-2 at 21-27) on the below three grounds.

First, the R&R Proposal would improperly limit the Special Master's searches of the Street View Data to find only interceptions of Plaintiffs' Wi-Fi communications made at the point of transmission, thereby excluding the possibility of finding interceptions at the point of reception. Many of the Wi-Fi communications that Plaintiffs sent went through two wireless routers—his or her home router and the router at the receiving end—creating two separate points where it could have been intercepted by Google. Plaintiffs allege Google violated the Wiretap Act by intercepting their Wi-Fi communications and that such interception could have occurred at the point of transmission *or* the point of reception (or both). The named Plaintiffs can establish their Article III standing if Google intercepted their Wi-Fi communications at either point, yet the Magistrate Judge limited the permissible searches to communications intercepted from the Plaintiffs' home routers, and thus from only the point of transmission. That was error.

Second, Plaintiffs will need the Special Master to provide them with each search result to determine whether any of their communications are among those returned by the search; gain a better understanding of the data; and be better able to formulate follow-up searches. The R&R Proposal would leave Plaintiffs without the ability to determine whether a search result contains one of their communications and would require them to formulate further searches blindly, particularly given that they have never seen the data and therefore have no understanding of how the captured data was stored.

Third, the R&R Proposal would improvidently allow Google to participate in the formulation of the searches. This aspect of the R&R Proposal improperly provides Google with

the ability to influence the nature and character of the Special Master's searches of the Street View Data. However, the Special Master is well positioned to ensure that Plaintiffs' proposed searches are proper and directed solely at the jurisdictional issues. Allowing Google to argue and object on the construction of the searches, or insist on different searches from those Plaintiffs prefer, would likely increase cost and delay and allow Google to frustrate Plaintiffs' ability to identify their communications from within the set of intercepted data.

Plaintiffs therefore propose an alternative Proposed Order, which like Google's proposal would provide for the Street View Data to be produced to a Special Master, and would have the Special Master conduct the searches of the data, but would give Plaintiffs a full and fair opportunity to find their communications within the dataset. Plaintiffs' proposed order is attached as <u>Exhibit 1</u>.

## II.   ARGUMENT

The Magistrate Judge's wholesale adoption of Google's Jurisdiction Discovery Proposal was clearly erroneous and contrary to applicable law. *See* Fed. R. Civ. Proc. 72(a); 28 U.S.C. § 636(b)(1)(A) (setting forth the standard of review).

### A.   **The Magistrate Judge Erred in Prohibiting Searches of the Street View Data For Communications Intercepted from any Wi-Fi Network other than Plaintiffs' Networks.**

The Magistrate Judge erred in concluding that it was "unlikely" and "speculative" that Plaintiffs will need to inspect all of the Street View Data[1] to assess their standing. *See* Report and Recommendation Re: Joint Discovery Letter ("R&R"), Dkt. 119, at 3. Based on this erroneous premise, the R&R Proposal improperly limits the Special Master's searches of the Street View Data to find only interceptions of Plaintiffs' Wi-Fi communications made at the point

---

[1] To determine whether Plaintiffs' Wi-Fi communications are among those that Google intercepted, Plaintiffs have agreed, after conferring with Google, to defer the majority of their jurisdictional discovery requests and accept a very limited amount of information: (1) the Street View Data, and (2) two documents, which Google has agreed to produce, to help Plaintiffs understand the data and any changes to it. "Street View Data" includes only (i) network traffic from unencrypted wireless networks and (ii) associated GPS information, that were recorded by Google Street View vehicles operating in the United States from January 1, 2007 through May 15, 2010. The intercepted network traffic includes both the content of Internet communications ("payload data")—the subject of this litigation—and basic network information.

transmission, thereby excluding the possibility of finding interceptions at the point of reception. However, in addition to searching communications intercepted from their own network, each Plaintiff will need to search to see whether their communications were intercepted at the receiving end, while traveling over the recipient's wireless network.  Because no Plaintiff will recall every person and website to whom he or she sent an email or other message as long ago as 2007, Plaintiffs will need to search all of the Street View Data to see whether their communications were intercepted from a recipient's network.  Google almost certainly intercepted communications on the receiving end as well as the sending end.  Restricting searches to the sending end will accordingly not identify any of Plaintiffs' Wi-Fi communications that were intercepted at the receiving end.[2]

The Wiretap Act makes it unlawful to "intentionally intercept[] … any … electronic communication," 18 U.S.C. § 2511(1)(a), and grants a cause of action to "any person whose … electronic communication is intercepted … in violation of [the Act]," § 2520(a).  By its plain language, the Act applies to all such interceptions, regardless of where in the transmission the interception occurs.  Indeed, the Ninth Circuit in this very case concluded that the Wiretap Act protects communications intercepted from the recipient's unencrypted Wi-Fi network, not just from the sender's network.  *Joffe v. Google, Inc.*, 746 F.3d 920, 930-31 (9th Cir. 2013).

This case was brought on behalf of "[a]ll persons in the United States whose electronic communications sent *or received* on wireless internet connections were intercepted by Defendant's Google Street View vehicles." Consol. Class Action Compl. ¶ 119 (Dkt. No. 54)) (emphasis added).  Thus, any Plaintiff whose communications were intercepted has standing and is within the proposed class, regardless of whether her communications were intercepted while being transmitted over her own or someone else's unencrypted Wi-Fi network.  Yet the R&R Proposal does not even permit the Special Master to locate communications captured from any network other than ones belonging to Plaintiffs.  *See* R&R Proposal ¶ 4(a)(iii)( (limiting report to "whether Basic Network Information was collected from each Plaintiff's router and, if so,

---

[2] If, as is common, a Plaintiff sends a single message to multiple recipients, it is statistically more likely that Google intercepted the message from one of the multiple recipients rather than from the sender.

PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 3:10-md-02184-CRB
3
1192999.3

1  whether any Payload Data was also collected *from that network*" (emphasis added)).  This is
2  error.

### B. Plaintiffs should be Permitted to See Each Search Result.

Plaintiffs need to see the results of each search conducted by the Special Master.  That will enable them to determine whether any of their communications are among those returned by the search and to learn from the search results in order to intelligently construct follow-up searches.

Plaintiffs are best positioned to determine whether a search result contains one of their communications.  They alone know identifying information—such as names of acquaintances or references to events they attended—that may allow them to determine that a communication belongs to one of them.  Further, they and their counsel have the obligation (as class representatives and class counsel, respectively) and the incentive to make a full and vigorous effort to identify their communications.

Moreover, as the Magistrate Judge suggests, *see* R&R at 3, and Google's own proposal implicitly acknowledges, the Street View Data are not susceptible to a simple "keyword" search that can be agreed to by the parties in advance.  Searching for their communications effectively will require Plaintiffs to review search results and develop new strategies based on what they learn.  For example, searching for the data intercepted in the immediate vicinity of the Plaintiffs' residences may return a fragment of a communication that references an event a Plaintiff attended.  That communication would then inform follow-up searches for other fragments referencing the same event.  Other message fragments may contain additional identifying information tying the communication to the Plaintiff.  Through such an iterative process, Plaintiffs may be able to locate one or more of their communications in the dataset.  The Magistrate Judge therefore erred in not giving Plaintiffs access to search results.

### C. The Special Master Will Safeguard the Search Process, Obviating the Need for Google's Involvement.

With the Special Master in control of the search process, all searches of the Street View Data will be directed solely at finding Plaintiffs' communications.  The R&R Proposal, however, goes too far by requiring Google to agree to the search protocol in advance.  *See* R&R Proposal

¶ 2(f) ("The Neutral shall begin to execute the Protocol once both Parties have agreed to the Protocol"). This requirement will only lead to delay, burden and interference with Plaintiffs' ability to find their intercepted communications.

Plaintiffs and Interim Class Counsel have the obligation and incentive to use their best efforts to find Plaintiffs' communications. In stark contrast, Google has the *opposite* incentive. Any involvement by Google would only give it multiple opportunities to slow down and derail the search for Plaintiffs' communications in hopes of achieving its ultimate goal: escape from liability for the interception of thousands or even millions of Americans' Wi-Fi communications.

Google has already indicated that it objects to searches for communications intercepted from networks other than those belonging to the named Plaintiffs. Google's proposal requires each search to be negotiated and resolved, likely by the Court, before even knowing whether the disputed search will locate any of Plaintiffs' communications. This process would play out over and over for every disputed search, wasting the parties' and the Court's resources negotiating and deciding issues that, if the search at issue does not locate Plaintiffs' communications, are moot.

Requiring Plaintiffs to use a special master rather than running their own searches on data produced in discovery is a departure from the norm. *See* Fed. R. Civ. Proc. 53 (limiting appointment of special masters to narrow circumstances, such as where the parties consent or some "exceptional condition" exists); *AdvantaCare Health Partners, LP v. Access IV*, No. 03-04496, 2004 U.S. Dist. LEXIS 16835, at *27 (N.D. Cal. 2004) ("special masters are to be used sparingly"). While Plaintiffs recognize the Court's desire to ensure that discovery remains narrowly focused on the issue of standing, the Special Master can ensure the integrity of the process, and Google has nothing constructive to add. The Magistrate Judge erred in allowing Google to participate in the formulation of searches.

### III.  CONCLUSION

Plaintiffs respectfully request that the Court adopt their attached proposal regarding jurisdictional discovery.

| | |
|---|---|
| Dated: August 27, 2014 | Respectfully submitted, |
| | By: */s/   Daniel A. Small*<br>COHEN MILSTEIN SELLERS & TOLL PLLC<br>Daniel A. Small, Esq.<br>dsmall@cohenmilstein.com<br>David A. Young, Esq.<br>dyoung@cohenmilstein.com<br>1100 New York Avenue, NW, Suite 500W<br>Washington, DC 20005<br>Tel. 202-408-4600<br>Fax. 202-408-4699<br><br>SPECTOR ROSEMAN KODROFF & WILLS, PC<br>Jeffrey L. Kodroff, Esq.<br>jkodroff@srkw-law.com<br>John A. Macoretta, Esq.<br>jmacoretta@srkw-law.com<br>Mary Ann Geppert, Esq.<br>mgeppert@srkw-law.com<br>1818 Market St., Ste. 2500<br>Philadelphia, PA  19103<br>Tel. 215-496-0300<br>Fax. 215-496-6611<br><br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>Elizabeth J. Cabraser, Esq. (SBN: 083151)<br>ecabraser@lchb.com<br>Michael W. Sobol (SBN: 194857)<br>msobol@lchb.com<br>Nicole D. Sugnet (SBN: 246255)<br>nsugnet@lchb.com<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Tel. 415-956-1000<br>Fax. 415-956-1008<br><br>*Plaintiffs' Counsel* |

## ATTESTATION

I, Nicole D. Sugnet, am the ECF user whose identification and password are being used to file this Motion.  I hereby attest that Daniel A. Small has concurred in this filing.

*/s/ Nicole D. Sugnet*
Nicole D. Sugnet

PLTFS.' MOT. FOR RELIEF FROM NONDISPOSITIVE
PRETRIAL ORDER OF MAGISTRATE JUDGE
Case No. 3:10-md-02184-CRB

6

1192999.3