Jeffrey L. Kodroff (*pro hac vice*)
John A. Macoretta (*pro hac vice*)
Mary Ann Geppert (*pro hac vice*)
SPECTOR ROSEMAN & KODROFF PC
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile:  (215) 496-6611

Daniel A. Small (*pro hac vice*)
Robert W. Cobbs (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL
1100 New York Avenue NW
Suite 500 West
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

*Class and Co-Lead Counsel*

Elizabeth J. Cabraser (SBN 083151)
Michael W. Sobol (SBN 194857)
Melissa Gardner (SBN 289096)
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1100
Facsimile:  (415) 956-1008

*Class and Liaison Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE LLC STREET VIEW ELECTRONIC COMMUNICATIONS LITIGATION | Case No.  3:10-md-02184-CRB <br><br> **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARDS** <br><br> Date:        February 28, 2020 <br> Time:        10:00 a.m. <br> Judge:       Hon. Charles R. Breyer <br> Courtroom: 6, 17th Floor |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II.  BACKGROUND .................................................................................................... 2

    A.  The Conduct and the Legal Claim at Issue ................................................ 2

    B.  The Relief Obtained for the Class .............................................................. 3

    C.  Class Counsel Undertook Considerable Risk in Prosecuting this Action ......................................................................................................... 5

III.  ARGUMENT .......................................................................................................... 7

    A.  The Requested Fee is Reasonable and Appropriate ................................... 7

        1.  Class Counsel's Fee Request is Warranted Under the Percentage-of-the Fund Method............................................................ 9

            a.  Class Counsel Achieved a Commendable Result ............... 9

            b.  Compensation was 100% Contingent on the Outcome ............................................................................ 12

            c.  The Skill and Quality of Work Performed Support the Requested Fee. ........................................................... 13

            d.  A Comparison to Fee Awards in Other Cases Supports Class Counsel's Requested Fee ........................ 14

        2.  Class Counsel's Fee Request is Warranted Under the Lodestar-Multiplier Method.......................................................... 14

            a.  The Lodestar Reflects Efficient Prosecution of This Action ...................................................................... 15

            b.  Class Counsel's Lodestar is Reasonable ........................... 15

            c.  The Negative Lodestar Multiplier Underscores the Reasonableness of Class Counsel's Fee Request.............. 17

    B.  Class Counsel's Request for Reimbursement of Expenses is Reasonable and Appropriate .................................................................... 18

    C.  The Requested Service Awards are Reasonable and Appropriate ........... 18

IV.  CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Barrios v. California Interscholastic Fed'n*,
277 F.3d 1128 (9th Cir. 2002)................................................................................................. 8

*Blum v. Stenson*,
465 U.S. 895 (1984).............................................................................................................. 16

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).............................................................................................................. 8

*Campbell v. Facebook Inc.*,
No. 13-05996, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) .............................................. 11

*Campbell v. Facebook, Inc.*,
315 F.R.D. 250 (N.D. Cal. 2016)........................................................................................... 7

*Campbell*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .................................................................................... 6

*City of Riverside v. Rivera*,
477 U.S. 561 (1986).............................................................................................................. 8

*Congdon v. Uber Techs., Inc.*,
No. 16-02499, 2019 WL 2327922 (N.D. Cal. May 31, 2019)................................................ 19

*Cruz v. Sky Chefs, Inc.*,
No. 12-270, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014).................................................... 15

*Cunningham v. Cty. of Los Angeles*,
879 F.2d 481 (9th Cir. 1988)................................................................................................. 17

*de Mira v. Heartland Emp't Serv.*,
LLC, No. 12 -4092, 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) ....................................... 14

*DirecTV, Inc. v. Huynh*,
No. 04-3496, 2005 WL 5864467 (N.D. Cal. May 31, 2005),
*aff'd* 503 F.3d 847 (9th Cir. 2007)........................................................................................ 3, 7

*Fowler v. Wells Fargo Bank*,
No. 17-02092, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019).................................................. 19

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (N.D. Cal. 2013) .................................................................................. 11

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. 8-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).................................................... 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)...................................................................................................... 1, 9, 15

*Holman v. Experian Info. Sols.*, Inc.,
No. 11-0180, 2014 WL 7186207 (N.D. Cal. Dec. 12, 2014).................................................. 8

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-md-02617, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018).......................................... 20

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)............................................................................................. 9, 14

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
No. 12-md-02330, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) .......................................... 11

*In re Doubleclick Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ...................................................................................... 6

*In re Google Buzz Privacy Litig.*,
No. 10-672, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ................................................. 11, 17

*In re Google Inc.*,
No. 13-md-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........................................... 6

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ............................................................................................. 1, 17

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-02420, 2019 WL 3856413 (N.D. Cal. Aug. 16, 2019) ...................................... 8, 14

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ...................................................................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ............................................................................................. 14, 20

*In re Netflix Privacy Litig.*,
No. 11-379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................... 11, 17

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................... 1, 9, 13, 14

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ................................................................................................. 9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .......................................................................................... 8, 12, 15

*In re: High-tech Employee Antitrust Litig.*,
No. 11-2509, 2014 WL 10520478 (N.D. Cal. May 16, 2014) ................................................ 20

*Knight v. Red Door Salons, Inc.*,
No. 8-1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................................................... 9, 14

*Lane v. Facebook, Inc.*,
No. 8-3845, 2010 WL 2076916 (N.D. Cal. May 24, 2010) ................................................... 17

*Linney v. Cellular Alaska P'ship*,
No. 96-3008, 1997 WL 450064 (N.D. Cal. July 18, 1997),
*aff'd*, 151 F.3d 1234 (9th Cir. 1998) .................................................................................... 10

*Lusby v. GameStop Inc.*,
No. 12-3783, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ................................................. 14

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
No. 17-02911, 2019 WL 343472 (N.D. Cal. Jan. 28, 2019) .................................................. 11

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ........................................................................................... 15, 18

*Rhom v. Thumbtack, Inc.*,
No. 16-02008, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) ................................................ 20

# TABLE OF AUTHORITIES
## (continued)

Page

*Rieckborn v. Velti PLC,* No. 13-3889,
2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ............................................................. 14

*Rodriguez v. Disner,*
688 F.3d 645 (9th Cir. 2012) ........................................................................... 8, 17

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ............................................................................... 19

*Rosado v. Ebay Inc.,*
No. 12-04005, 2016 WL 3401987 (N.D. Cal. June 21, 2016) .................................. 17

*Sullivan v. DB Invs., Inc.,*
667 F.3d 273 (3d Cir. 2011) (en banc), *cert. denied,* 132 S. Ct. 1876 (2012) .......... 19

*Van Vranken v. Atl. Richfield Co.,*
901 F. Supp. 294 (N.D. Cal. 1995) ........................................................................ 19

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043 (9th Cir. 2002) ........................................................................ passim

*Walsh v. Kindred Healthcare,*
No. 11-50, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013) ...................................... 10

*Winterrowd v. Am. Gen. Annuity Ins. Co.,*
556 F.3d 815 (9th Cir. 2009) ............................................................................... 15

**Statutes**

18 U.S.C. § 2520 ...................................................................................... 3, 8, 18

18 U.S.C. §§ 2510, *et seq.* ............................................................................ 3

18 U.S.C. § 2511 ....................................................................................... 6

California Business and Professions Code
§§ 17200 *et seq.* .......................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ................................................................................. 7, 9, 18

**Treatises**

Federal Judicial Center, *Manual for Complex Litigation,*
§ 21.71 (4th ed. 2004) ................................................................................... 9

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** on February 28, 2020 at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Charles R. Breyer, United States District Court for the Northern District of California, located in Courtroom 6, on the 17th Floor of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, Class Counsel Spector, Roseman & Kodroff, PC ("SRK"), Cohen Milstein Sellers & Toll PLLC ("CMST") and Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23(h) for an order awarding: (1) attorneys' fees to Class Counsel in the amount of $3,250,000; (2) reimbursement of litigation expenses of $750,000; and (3) Service Awards of $5,000 for each of the eighteen Plaintiffs named in the Consolidated Class Action Complaint (CCAC) who participated in jurisdictional discovery, and $500 for each of the three Plaintiffs named in the CCAC who did not participate in jurisdictional discovery, for a total of $91,500. As discussed in the supporting memorandum, the requested awards are fair, reasonable and justified under applicable law.

This motion is based on this Notice of Motion and the supporting Memorandum of Points and Authorities; the Joint Declaration of Jeffrey L. Kodroff, Daniel A. Small, and Michael W. Sobol in Support of this motion (the "Joint Declaration"); papers filed in support of preliminary approval; papers filed in support of final approval; any oral argument by counsel at the hearing before this Court; any papers filed in reply; and all other papers and records in this matter. [1]

---

[1] Capitalized terms in the supporting memorandum shall have the same meaning and use as specified in the Class Action Settlement Agreement (the "Settlement") (Dkt. No. 166-1, Ex. A). In accordance with the Court's Order Granting Preliminary Approval of Class Action Settlement, (the "Preliminary Approval Order"), (Dkt. No. 178), ¶22, a copy of this motion and supporting memorandum will be uploaded within 24 hours of this filing to the settlement website, http://www.streetviewsettlement.com.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Class Counsel respectfully move the Court for an award of $3,250,000 in attorneys' fees, which represents 25% of the $13,000,000 Settlement Fund created for benefit of the Class and a *negative* multiplier of 0.59 on Class Counsel's lodestar in this action.  Class Counsel also respectfully move the Court to award reimbursement of $750,000 in litigation expenses, and Service Awards totaling $91,500 for the twenty-one Class Representatives, out of the Settlement Fund.

In common fund cases such as this one, the Court has discretion to award attorneys' fees either as a percentage of the common fund, or based upon Class Counsel's lodestar in the action.  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019).  The Ninth Circuit's benchmark for attorneys' fees is 25% of the fund created for the benefit of the Class, plus recovery of costs.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002).  Here, Class Counsel seek fees equal to the benchmark, and respectfully submit that—particularly taking into account the novel and challenging nature of this litigation and Class Counsel's successful work in the District Court and on appeal, on a pure contingency basis—there is no reason to deviate downward from the benchmark. Class Counsel's fee request is also justified under a lodestar-multiplier analysis, as it represents a lodestar multiplier of 0.59 applying Class Counsel's customary hourly rates, which is well below the range for such multipliers established by the Ninth Circuit.  *Id.* at 1051 and n.6.

Moreover, the strong results achieved for the Class, the "most critical factor" in the Court's analysis, strongly support the reasonableness of Class Counsel's requested fee here.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (Conti, J.).  The Settlement provides for Google to pay $13,000,000 into a non-reversionary Settlement Fund, from which payments are requested to non-profit organizations ("*Cy Pres* Recipients") who will use the funds to promote and protect Class members' privacy interests, providing education, advocacy, and security against future privacy violations. Class Counsel have also secured important injunctive relief for the Class: The Settlement requires Google to destroy the data collected by Street View vehicles during the class period, and prohibits Google from collecting and storing such data for use in any product or service going forward, except with notice and

1  consent.  It also extends Google's obligations in the Assurance of Voluntary Compliance that it

2  entered through a settlement with 39 Attorneys General in 2013 concerning the same conduct

3  involving Street View vehicles; and requires Google to host and maintain educational webpages

4  about configuring wireless networks securely, and removing wireless networks from inclusion in

5  Google's location services.  These prospective practice changes will help Class Members prevent a

6  recurrence of the type of conduct at issue in this litigation, and will ensure that Google does not

7  again use Street View vehicles to collect data from wireless networks without notice and consent,

8  subject to this Court's jurisdiction in case of violation. The Ninth Circuit has held that the value of a

9  settlement should be enhanced for purposes of fee analyses where there are significant "non-

10  monetary benefits conferred by the litigation."  *See Vizcaino*, 290 F.3d at 1049.  The Settlement

11  represents an excellent result.

12      In light of this strong result, and for the reasons discussed below, Class Counsel respectfully

13  request that the Court grant their fee and expense request in full, and approve the Plaintiff Service

14  Awards.

15  **II.    BACKGROUND**

16      **A.    The Conduct and the Legal Claim at Issue**

17      The conduct at issue in this action is that Google used "Street View" vehicles, which capture

18  panoramic photographs from roadways for Google Maps, to also capture information being

19  transmitted over unencrypted wireless networks from homes and businesses within range of the

20  vehicles' antennas. The equipment attached to Google's Street View cars recorded basic information

21  about these wireless networks, including the network's name (SSID), the unique number assigned to

22  the router transmitting the wireless signal (MAC address), the signal strength, and whether the

23  network was encrypted.  They also gathered "payload data" that was sent and received over a

24  wireless network at the moment that a Street View car was driving by. Payload data can include

25  personal emails, usernames, passwords, videos, and documents.

26      In 2010, the Named Plaintiffs sued Google for these privacy invasions under California's

27  Unfair Competition law (California Business and Professions Code §§ 17200 *et seq.*), numerous

28  state wiretapping statutes, and Title III of the Federal Omnibus Crime Control and Safe Streets Act

of 1968 as amended by the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510, *et seq.* (together, the "ECPA"). When the Settlement was achieved, after more than nine years of litigation, the state-law claims had been dismissed and this action concerned a single claim brought on behalf of a nationwide class: that Google's conduct violated the ECPA.

The ECPA provides that, subject to exceptions for "radio communication[s]" and other communications that are "readily accessible to the general public" (among other exceptions), it is unlawful to intentionally acquire "the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* §§ 2510 , 2511. The ECPA authorizes a court to award equitable or declaratory relief, as well as statutory damages of $10,000 for each violation of the statute. This Court has held that the ECPA does not *require* that statutory damages be awarded if a violation is shown, and further that the ECPA does not authorize damages amounts tailored to the specific conduct at issue. Instead, if an ECPA claim succeeds at trial, the Court has discretion only to make a binary choice: "to either award the statutory sum or nothing at all." *DirecTV, Inc. v. Huynh*, No. 04-3496, 2005 WL 5864467, at *6 (N.D. Cal. May 31, 2005) (Breyer, J.), *aff'd* 503 F.3d 847 (9th Cir. 2007); 18 U.S.C. § 2520. Thus under the ECPA, the relief that could have been achieved for the Class had the Named Plaintiffs prevailed at each stage of this litigation and appeals, included declaratory and injunctive relief, and *may* have included monetary relief, subject to the Court's exercise of discretion.

### B.    The Relief Obtained for the Class

As a result of this Settlement, Google has agreed to injunctive relief, and to pay $13,000,000 into a non-reversionary Settlement Fund.[2]

The injunctive relief provisions of the Settlement require Google to destroy the data collected by Street View vehicles during the class period of January 1, 2007 through May 15, 2010 within 45 days of Final Approval of the Settlement, and to report the fact of that destruction to Class Counsel.[3] The Settlement also prohibits Google from using Street View vehicles to collect and store such data

---

[2] Settlement, ¶¶ 21, 23-37.
[3] Settlement ¶ 33.

1    for use in any product or service without providing notice and obtaining consent.[4]  These

2    commitments provide this Court with jurisdiction to enforce the terms of the Settlement.  Google has

3    also agreed in the Settlement to this Court's jurisdiction over Google's pre-existing obligations in the

4    Assurance of Voluntary Compliance ("Assurance") that it entered through a settlement with 39

5    Attorneys General in 2013 concerning the same conduct involving Street View vehicles, which

6    include the establishment of a Privacy Program that provides regular training to new Google

7    employees about the importance of, and the employee's role in maintaining, user privacy, as well as

8    further privacy education, training, and certification programs designed to prevent a recurrence of

9    the type of conduct at issue here.[5]  In addition, the Settlement requires Google to host and maintain

10   educational webpages for consumers about how to configure wireless networks securely and how to

11   remove wireless networks from inclusion in Google's location services, including a video

12   demonstrating how to encrypt wireless networks.[6]  Google's injunctive relief obligations under the

13   Settlement will persist for five years after the date of Final Approval.[7]

14          Google has also agreed to provide monetary relief for benefit of the Class, which will be

15   distributed, after the deduction of approved settlement administration and litigation expenses,

16   Service Awards, and attorneys' fees, to independent non-profit organizations selected by the Court.[8]

17   As required by the Settlement, each organization eligible to receive funding has a track record of

18   addressing consumer privacy concerns on the internet and/or in connection with the transmission of

19   information via wireless networks.[9]  Class Counsel estimate that approximately $8,750,500 in *cy*

20   *pres* funding would be made available to support the work of these organizations—work specifically

21   targeted to promote the protection of internet privacy—if the requested attorneys' fees and other

22   expenses are approved in full.  The Settlement prohibits Google from exercising any control or

23

24   [4] *Id.* ¶ 34.

25   [5] *Id.* ¶ 35; Assurance § I, ¶ 16,  § II, ¶¶ 1-5.  A copy of the Assurance of Voluntary Compliance is
     posted to the Settlement Website, at

26   https://www.streetviewsettlement.com/docs/Assurance%20of%20Voluntary%20Compliance.pdf.
     [6] Settlement, ¶ 36.

27   [7] Settlement, ¶ 37.
     [8] *Id.,* ¶¶ 29-30.

28   [9] *Id.,* ¶ 30.

influence over any *Cy Pres* Recipient's expenditures from the Settlement funds.[10]  Each potential *Cy Pres* Recipient has submitted a detailed proposal describing their past and current work and the specific objectives they would seek to achieve with an award from this Settlement.  By way of example, the American Civil Liberties Union proposes to use funding for litigation, education and advocacy to protect the interests of consumers in issues ranging from cybersecurity to surveillance to the privacy of electronic communications, and the World Privacy Forum proposes to fund a data privacy education campaign to reduce consumers' risks arising from the theft of their personal information.[11]  These distributions, guided by the objectives of the ECPA, will meaningfully benefit Class members by funding activities that are in their interest and that serve the goals of this litigation. The Settlement achieved by Class Counsel therefore also provides strong and valuable monetary relief.

### C.   Class Counsel Undertook Considerable Risk in Prosecuting this Action

From 2010 to the present, this matter has required a significant expenditure of time and resources by Class Counsel that might have been spent on other fee-generating matters.[12]  Because Class Counsel undertook representation of this matter on a pure contingency-fee basis, they bore the risk of litigating this action, which involved complex questions of first impression in the Federal Courts, without any monetary gain in the event of an adverse judgment.[13]

Success was never guaranteed.  Throughout the litigation, Google vigorously contested its liability and whether the Named Plaintiffs stated a cause of action under the ECPA, which was the sole claim at issue after the Court's June 29, 2011 Order on Google's Motion to Dismiss.[14]  Indeed,

---

[10] *Id.*, ¶¶ 29-31.

[11] *See e.g.* Proposal by ACLU for *cy pres* funding (Dkt. No. 166-1 at 87); Proposal by World Privacy Forum for *cy pres* funding (Dkt. No. 166-1 at 57).  These are only two examples of the numerous important privacy-enhancing programs that funding from this settlement would enable by the *Cy Pres* Recipients.  Detailed proposals from each proposed *Cy Pres* Recipient were filed as Exhibits B through I to the Declaration of Jeffrey L. Kodroff in support of Plaintiffs' Motion for Preliminary Approval of the Settlement (Dkt. No. 166).  Each organization's proposal has been posted to the Settlement Website. *See* Declaration of Linda V. Young re Notice Compliance, ¶ 6.

[12] Plaintiffs' Motion for Final Approval of the Settlement and the supporting Joint Declaration provide a detailed history of this action, the Settlement, and Class Counsel's efforts on behalf of the Class.

[13] Joint Declaration, ¶¶ 12, 15, 40, 42.

[14] *See* Dkt. No. 82 (June 29, 2011 Order Granting in Part and Denying in Part Motion to Dismiss).

1    as discussed further in Plaintiffs' Motion for Final Approval of Settlement, any one of numerous

2    unsettled, and developing, issues at play in claims brought under the ECPA—such as issues

3    involving the type of information captured from each Class member by Street View vehicles,[15] and

4    the Court's ultimate determination of whether unencrypted wireless network communications are

5    "readily accessible to the general public"[16] or fall within other statutory exceptions that would

6    absolve Google of liability[17] —could serve as a complete defense for Google.  Had Class Counsel

7    failed to prevail on even one of these disputed issues, there would likely be no recovery, and no

8    justice, for the Class.  The difficult and novel issues implicated by the Named Plaintiffs' ECPA

9    claim required Class Counsel to research and devise litigation strategies to move this important but

10   challenging case towards trial, through an appeal to the Ninth Circuit, and through a petition for

11   certiorari to the United States Supreme Court, without the certainty of ever receiving compensation.

12   Joint Declaration, ¶¶ 7-19.

13          Further, as noted above, a financial recovery for the Class was not certain even if the Named

14   Plaintiffs prevailed at each stage of the litigation, at trial, and on any further appeals.  This Court and

15   others in this District have interpreted the ECPA as limiting the Court's discretion to a choice

16   between awarding damages in the full statutory amount of $10,000 per Class member, or awarding

17   no statutory damages at all. *See Campbell v. Facebook, Inc.*, 315 F.R.D. 250, 268 (N.D. Cal. 2016)

---

18

19   [15] As discussed in Plaintiffs' Motion for Final Approval of Settlement (Section III-A), the ECPA
     prohibits interception of the "contents" of electronic "communications." 18 U.S.C. § 2511(d).

20   [16] On December 27, 2013, a panel for the Ninth Circuit Court of Appeals rejected Google's
     argument that unencrypted wireless network transmissions are "radio communications" that are

21   defined by the ECPA to be "readily accessible to the general public."  However, the Ninth Circuit
     did not rule on whether such transmissions can be considered "readily accessible to the general

22   public" under other statutory exceptions, an issue that remained to be resolved when the Settlement
     was reached.   *See generally* Ninth Circuit Dkt. No. 68 (December 27, 2013 Amended Opinion).

23   [17] For example, the ECPA does not prohibit interception of communications by anyone who is "a
     party to the communication or where one of the parties to the communication has given prior consent

24   to such interception[.]" 18 U.S.C. § 2511(2)(d).  Plaintiffs are confident in their allegations that no
     Class member consented to Google using Street View vehicles to capture the contents of any

25   communications sent on their wireless networks.  Google, however, was likely to argue that it was a
     "party" to some of the communications, such as communications sent using Google's "Gmail"

26   messaging service.  Courts have reached inconsistent conclusions on the validity of arguments that a
     communications service provider, such as an email service provider, is a "party" under the ECPA to

27   communications sent over its service.  *Compare In re Google Inc.*, No. 13-md-02430, 2013 WL
     5423918, at *13 (N.D. Cal. Sept. 26, 2013) (Koh, J.); *Campbell*, 77 F. Supp. 3d 836, 848 (N.D. Cal.

28   2014) (rejecting similar argument); *with In re Doubleclick Privacy Litig.*, 154 F. Supp. 2d 497, 510-
     11, 514 (S.D.N.Y. 2001) (accepting similar argument).

1   (Hamilton, J.), quoting *DirecTV*, 2005 WL 5864467, at *6. This binary all-or-nothing choice,

2   committed to the Court's discretion, dramatically scales up the risk to the Class of litigating a class

3   action ECPA claim through a jury trial and appeals. The Court could view the potential statutory

4   damages in this case, likely involving millions of affected Class members seeking damages of

5   $10,000 each,  as excessive in comparison to the nature of the intrusion into their privacy, but courts

6   have found they lack discretion to tailor a statutory damages award based on the specific conduct

7   and injury at issue.  A decision by the District Court to award **no** damages following more than a

8   decade of litigation and success at trial would have left the Class empty-handed, in spite of the

9   public importance of this litigation in establishing and defending privacy rights against

10  encroachments by technology corporations, and without regard to the skill and quality representation

11  demonstrated by Class Counsel.[18]

12      The risks of proving each element of the ECPA claim, thus, were compounded by the

13  possibility that success at trial could nevertheless result in no monetary relief.  Even if all of these

14  hurdles were overcome, Class members faced the additional risk that any financial remedy would be

15  significantly delayed by further costly appeals.  Class Counsel vigorously represented the Class in

16  the face of all of these risks, and achieved a fair, reasonable, and adequate Settlement, which

17  provides substantial injunctive relief and a distribution of monetary relief that will benefit the Class

18  in the near term, and eliminates the risks of unfavorable and, in some cases, dispositive, rulings on

19  these and other issues.

20  **III.    ARGUMENT**

21      **A.    The Requested Fee is Reasonable and Appropriate**

22      Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees

23  and costs in class action settlements as authorized by law or by the parties' agreement. Fed. R. Civ.

24  P. 23(h).  Class Counsel seek a total award of attorneys' fees of $3,250,000, or 25% of the

25  $13,000,000 Settlement Fund (without accounting for the value of the Settlement's injunctive relief),

26  and reimbursement of $750,00 in expenses.

27

28  [18] The Court conceivably could decide to award statutory damages only to Class members
    experiencing the most egregious intrusions, but that could leave much of the Class empty-handed.

Class Counsel litigated this challenging and important case for more than nine years. Their work on this case nine years ago remains uncompensated. After surviving Google's motion to dismiss and prevailing on appeal, Class Counsel obtained a strong settlement that provides for important commitments by Google, and for *cy pres* distributions that will help protect the privacy rights of millions of Class members—and others—going forward. Under these circumstances, it is appropriate for the Court to award the 25% "benchmark" applied in the Ninth Circuit, which represents a 0.59 negative multiplier on Class Counsel's lodestar. *See Vizcaino*, 290 F.3d at 1047. This request is reasonable, particularly in light of Ninth Circuit law regarding attorneys' fees in class cases that are designed to ensure that counsel have proper incentives to take on difficult cases and pursue class members' best interests. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Class Counsel assumed substantial risks and have devoted considerable resources to protecting the interests of the Class, and Class Counsel litigated this case efficiently.

Class Counsel base their fee request on the Federal common fund doctrine, which provides that "a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole" (*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (same)), and alternatively on the statutory fee-shifting provision of the ECPA, which provides for an award of reasonable attorneys' fees and costs to the prevailing party. *See* 18 U.S.C. § 2520(b)(3).[19] Like all fee-shifting statutes, the ECPA entitles the prevailing litigant to a reasonable attorney's fee in order to "encourage private litigants to enforce the laws that protect the public in areas like civil rights, consumer protection and the environment." *Holman v. Experian Info. Sols.*, Inc., No. 11-0180, 2014 WL 7186207, at *3 (N.D. Cal. Dec. 12, 2014), citing *City of Riverside v. Rivera*, 477 U.S. 561, 574-575 (1986). In these circumstances, this Court has discretion to choose either the "percentage-of-the-fund" or the "lodestar" method in calculating fees. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2019 WL 3856413, at *7 (N.D. Cal. Aug. 16, 2019) (Gonzalez Rogers, J.), quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,

---

[19] *See Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) ([A] plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement against the defendant . . . [such that] "the plaintiff can force the defendant to do something he otherwise would not have to do.").

949 (9th Cir. 2015).  Class Counsel's fee request is reasonable and justified under either approach.

**1.**   **Class Counsel's Fee Request is Warranted Under the Percentage-of-the Fund Method**

In the Ninth Circuit, the "benchmark" fee in a common fund case is 25% of the fund created. *Vizcaino*, 290 F.3d at 1047.  A court should depart from the benchmark only if there are "special circumstances" justifying the departure.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citations omitted).  Courts in the Ninth Circuit often award fees that are in excess of the 25% benchmark.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 (affirming 28% award); *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds that [25%] benchmark."); *Garner v. State Farm Mut. Auto. Ins. Co.,* No. 8-1365, 2010 WL 1687832, at *18 (N.D. Cal. Apr. 22, 2010) (Wilken, J.) (granting 30% award); *Knight v. Red Door Salons, Inc.*, No. 8-1520, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (Conti, J.) (same).  Based on this authority, and particularly given the quality of Class Counsel's representation over many years for the Class in this precedent-setting litigation, Class Counsel's request for the benchmark award is reasonable.

Courts in the Ninth Circuit consider a number of factors in determining whether there is any basis to deviate from the benchmark, including: (a) the results achieved; (b) the risks of contingency representation and whether counsel was required to forgo other work; (c) the complexities of the case and skill and effort required of counsel; and (d) awards in similar cases.  *See Vizcaino*, 290 F.3d at 1048-50.  Consideration of these factors here confirms that there is no basis for any downward departure from the benchmark.

**a.**   **Class Counsel Achieved a Commendable Result**

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award.  *See Hensley*, 461 U.S. at 435; *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual for Complex Litigation*, §21.71, p. 336 (4th ed. 2004) (the "fundamental focus is the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).

**Prospective Relief**:  Ninth Circuit courts consistently have held that where class counsel achieves significant benefits that are not accounted for in the dollar value of the common settlement

1   fund, the court "should consider the value of [such] relief obtained as a 'relevant circumstance' in

2   determining what percentage of the common fund class counsel should receive as attorneys' fees."

3   *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *see also Vizcaino*, 290 F.3d at 1049

4   (affirming enhanced fee award where "the court found that counsel's performance generated benefits

5   beyond the cash settlement fund."); *Linney v. Cellular Alaska P'ship*, No. 96-3008, 1997 WL

6   450064, at *7 (N.D. Cal. July 18, 1997) (Jensen, J.) *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (granting

7   fee award of one-third common fund where settlement provided additional non-monetary relief).

8       The actions that Google must take under the Settlement to prevent future privacy violations,

9   and the introduction of this Court's oversight over those actions, mark a valuable contribution to the

10  protection of Class members' privacy rights, and a positive step for consumer protection in a

11  developing area of law.  As the Court observed at the hearing on preliminary approval of the

12  Settlement, "We are now into a whole unexplored, but sensitive, area dealing with privacy in the

13  cyberworld; where I would say ten years ago, it was: Oh, well, this is a technical issue or who

14  cares? . . . Who cares? Well, I think, basically, people care; individuals care; companies care;

15  governments care. And so this is an area that will foment practices, litigation, jurisprudence, and I

16  think it's worthwhile."[20]  Class Counsel's work in holding Google accountable to the Class here not

17  only makes it less likely that Google will ever repeat this type of conduct, it sends a message to **all**

18  technology companies that there are consequences for violating privacy rights, and there are lawyers

19  who will dedicate the resources to fight, for as long as it takes, to ensure those consequences are

20  realized.  If the value of these benefits were considered, it would "reduce[] the overall percentage of

21  fees that counsel" is requesting.  *See Walsh v. Kindred Healthcare*, No. 11-50, 2013 WL 6623224, at

22  *3 (N.D. Cal. Dec. 16, 2013) (White, J.) (approving fee request of 30% of the common fund, finding

23  that the request was effectively reduced by the "substantial injunctive relief" obtained through the

24  settlement). Class Counsel respectfully submit that the Settlement's injunctive relief supports their

25  fee request.

26      **Monetary Relief**:  The Settlement requires Google to pay $13,000,000 into a non-

27  reversionary Settlement Fund.  This cash fund is substantial, and is well within—if not well above—

28  _____

[20] Dkt. No. 181 (Transcript of September 6, 2019 proceedings), at 7-8.

MOT. FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES AND SERVICE AWARDS
CASE NO. 3:10-MD-02184-CRB

the range in which comparable settlements in ECPA and other privacy cases have been finally approved. *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-md-02330, 2016 WL 4474366, at *2 (N.D. Cal. Aug. 25, 2016) (Chen, J.) (granting final approval of settlement providing for $9 million cash fund in case with estimated 30 million class members); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 949 (N.D. Cal. 2013) (Seeborg, J.), appeal dismissed (Dec. 3, 2013) (granting final approval of settlement providing for $20 million cash fund for class of up to 150 million Facebook members); *In re Netflix Privacy Litig.*, No. 11-379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) (Davila, J.) (granting final approval to $9 million settlement in case with estimated 62 million class members); *In re Google Buzz Privacy Litig.*, No. 10-672, 2011 WL 7460099 (N.D. Cal. June 2, 2011) (Ware, J.) (granting final approval to $8.5 million settlement in case with estimated 37 million class members); *see also Campbell v. Facebook Inc.*, No. 13-05996, 2017 WL 3581179, at *7 (N.D. Cal. Aug. 18, 2017) (Hamilton, J.) (granting final approval to injunctive-relief only settlement in case with estimated tens of millions of class members); *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-02911, 2019 WL 343472, at *2 (N.D. Cal. Jan. 28, 2019) (Corley, J.) (same, estimated thousands of class members). As described further in Plaintiffs' Motion for Preliminary Approval of Settlement (Dkt. No. 161) and Plaintiffs' Motion for Final Approval of Settlement, the proposed *cy pres* distribution is the most effective means to ensure that all Class members receive meaningful benefits from the Settlement's monetary relief, to achieve the objectives of Federal Rule of Civil Procedure 23 in providing access to justice for diffuse but important civil claims, and, together with an award of reasonable attorneys' fees provided for by the fee-shifting provision of the ECPA, to achieve the deterrence objectives codified by Congress.

Furthermore, the Settlement was the product of arm's length, protracted and vigorous negotiations reached after nine years of litigation concerning uncharted and developing areas of law in the trial and appellate courts, diligent but unfruitful efforts at reaching a resolution through the Ninth Circuit mediation program, a full-day mediation session before an experienced mediator, and further negotiations thereafter.[21] The requested 25% award is reasonable.

---

[21] Joint Declaration, ¶¶ 20-21.

**b.** **Compensation was 100% Contingent on the Outcome**

Courts recognize that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work.  *See Wash. Pub. Power Supply*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051.  Class Counsel prosecuted this case on a purely contingent basis, and agreed to advance all necessary expenses knowing that they would only receive a fee and be reimbursed their expenses if they prevailed on behalf of the Class.

Class Counsel have devoted more than nine years of work by skilled lawyers to this case, to the exclusion of other fee-generating work, and have invested considerable resources on behalf of the Class.  Class Counsel's work involved, among other things: (1) investigating the claims of the Plaintiffs and drafting the Master Complaint; (2) conducting legal research regarding and opposing Google's motion to dismiss; (3) drafting and serving discovery, meeting and conferring with Google, and litigating disputed discovery requests before Magistrate and District Court Judges; (4) defending the Court's order denying in part Google's motion to dismiss on appeal; (5) opposing a petition by Google for Writ of Certiorari to the United States Supreme Court; (6) working with consulting experts, the Named Plaintiffs, and the Special Master in the conduct of jurisdictional discovery; (7) negotiating the Settlement over many months, including by participating in a full-day mediation session and further negotiations; and (8) fulfilling Class Counsel's responsibilities under the Settlement, including to identify and propose appropriate *Cy Pres* Recipients, to seek preliminary and final approval of the Settlement, and to oversee Notice administration and respond to Class member inquiries.[22]  These resources were expended notwithstanding the risk that Class Counsel would not be compensated.  This factor supports Class Counsel's 25% fee request.

---

[22] Joint Declaration, ¶¶ 6-25; 28-38.

1
2

          **c.**      **The Skill and Quality of Work Performed Support the Requested Fee.**

3

      The effort and skill displayed by Class Counsel and the complexity of the issues involved are

4

additional factors used in determining a proper fee. *Vizcaino*, 290 F.3d at 1048; *Omnivision*, 559 F.

5

Supp. 2d at 1046-47. Class Counsel here are a team of three law firms that were appointed to lead

6

this litigation specifically because of their comprehensive and diligent early work on the case, their

7

resources and access to relevant expertise, and their ability to effectively litigate these claims.[23]

8

      This was no cookie-cutter case by any means. Rather, the factual circumstances, and the

9

legal issues involved, were truly novel issues that had never been litigated before—including, but not

10

limited to, determining when and whether the ECPA applies to wireless networks that the owners

11

had failed to encrypt. From the very start, bringing and pursuing this action required Class Counsel

12

to think outside of any existing precedential box, adopting new strategies to frame the allegations in

13

the CCAC, defending those allegations against Google's motion to dismiss and on appeal, and

14

negotiating a resolution to this action that provides for meaningful relief to members of the Class and

15

a significant monetary payment by Google, in the face of significant risks.

16

      The issues in this case, involving the right of privacy in one's home or business, as against a

17

multinational corporation with the technical ability to invade that privacy on a daily basis, were

18

tremendously important to the development of privacy rights law both in this District and throughout

19

the United States. At stake was the right of consumers to expect privacy in their own wireless

20

network communications whether or not they encrypt those communications. Class Counsel's skill

21

and expertise were pitted against a heavily-resourced defendant that had powerful incentives to

22

obtain rulings favorable to the technology industry and unfavorable to the privacy rights of

23

consumers.

24

      Prosecuting and ultimately favorably resolving this case required creativity and very hard

25

work on the part of Class Counsel. Class Counsel devoted substantial time and effort to this

26

action—over 8,083 hours so far—on a purely contingent basis.[24] Class Counsel provided top-tier

27

[23] Joint Declaration, ¶¶ 1-2, 8; Dkt. No. 47 (October 8, 2010 Order Appointing Co-Lead and Liaison Class Counsel).

28

[24] Joint Declaration, ¶¶ 3, 40.

MOT. FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES AND SERVICE AWARDS
CASE NO. 3:10-MD-02184-CRB

1   service to the Class and for the benefit of all consumers, and vigorously and successfully negotiated

2   a $13,000,000 Settlement and important prospective practice changes.  Class Counsel respectfully

3   submit that the skill and expertise reflected in this outcome support their fee request.

          **d.      A Comparison to Fee Awards in Other Cases Supports Class
                    Counsel's Requested Fee**

6         A review of fee awards in other common fund cases underscores the reasonableness of the

7   fee requested here.  Class Counsel's requested fee is less than the fee frequently awarded in class

8   actions.  *See, e.g. Omnivision*, 559 F. Supp. 2d at 1047 ("in most common fund cases, the award

9   exceeds that [25%] benchmark."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.

10  2000), as amended (June 19, 2000) (affirming fee award of one third of common fund); *Lusby v.*

11  *GameStop Inc.*, No. 12-3783, 2015 WL 1501095, at *9 (N.D. Cal. Mar. 31, 2015) (Lloyd, J.)

12  (awarding fee of one-third of common fund); *de Mira v. Heartland Emp't Serv., LLC*, No. 12 -4092,

13  2014 WL 1026282, at *4 (N.D. Cal. Mar. 13, 2014) (Koh, J.) (awarding fee of 28% of common

14  fund); *Knight*, 2009 WL 248367, at *7-*8 (awarding 30% of common fund).

15        In light of the foregoing, Class Counsel respectfully submit that their fee request is

16  reasonable and fair under the "percentage of the fund" method.

          **2.      Class Counsel's Fee Request is Warranted Under the Lodestar-Multiplier
                    Method**

19        As noted above, the Court has discretion to award a fee to Class Counsel calculated using

20  either the common fund or lodestar-multiplier method.  "Because the benefit to the class is easily

21  quantified in common-fund settlements," the Ninth Circuit permits district courts "to award

22  attorneys a percentage of the common fund in lieu of the often more time-consuming task of

23  calculating the lodestar." *Bluetooth*, 654 F.3d at 942.  Thus, "the primary basis of the fee award

24  remains the percentage method," with the lodestar used "as a cross-check on the reasonableness of a

25  percentage figure." *Lithium Ion Batteries*, 2019 WL 3856413, at *7 quoting *Vizcaino*, 290 F.3d at

26  1050 & n.5. As "merely a cross-check on the reasonableness of a percentage figure," *id.* at 1050 n.5,

27  "[t]he lodestar crosscheck need not entail either mathematical precision or bean counting."

28  *Rieckborn v. Velti PLC,* No. 13-3889, 2015 WL 468329, at *21 (N.D. Cal. Feb. 3, 2015) (Orrick, J.)

1  (citation and internal quotation and editing marks omitted); *see also Cruz v. Sky Chefs, Inc.,* No. 12-

2  270, 2014 WL 7247065, at *6 (N.D. Cal. Dec. 19, 2014) (Ryu, J.) (same).  Here, even rigorous

3  application of the lodestar-multiplier method fully confirms the reasonableness of Class Counsel's

4  requested fee.

### a.    The Lodestar Reflects Efficient Prosecution of This Action

6         The cumulative lodestar to date of the three Class Counsel firms—Spector Roseman &

7  Kodroff, PC ("SRK"), Cohen Milstein Sellers & Toll PLLC ("CMST"), and Lieff Cabraser Heimann

8  & Bernstein, LLP ("LCHB")—is $5,469,030.20 using current billing rates.[25]  *See Wash. Pub. Power*

9  *Supply*, 19 F.3d at 1305 (courts apply each biller's current rates for all hours of work performed,

10  regardless of when the work was performed, as a means of compensating for the "delay in

11  payment."); *Vizcaino*, 290 F.3d at 1051 (affirming lodestar crosscheck using current billing rates).

### b.    Class Counsel's Lodestar is Reasonable

13        As this Court is aware, lodestar is calculated by multiplying the number of hours reasonably

14  expended on the litigation by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433; *Paul, Johnson,*

15  *Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The supporting Joint Declaration sets

16  out the hours of work and billing rates used to calculate the lodestar here, including a chronological

17  summary of the work performed (Joint Decl., ¶¶ 6-25) and a tabulation of the hours spent on various

18  categories of activities related to this action (*id.* at ¶¶ 28-39, Exs. A-C).[26]  As described therein,

19  Class Counsel and their colleagues, including staff, have devoted a total of approximately 8,083

20  hours to this litigation and have a total lodestar to date of approximately $5,469,030.20.  These

21  submitted hours do not include every firm that conducted work on behalf of the Class,[27] nor do they

---

[25] Joint Declaration, ¶¶ 3-4, 51, 63, 75; Exhibits A-C.

[26] *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.") (internal quotations omitted); *see also* Northern District of California Procedural Guidance for Class Action Settlements ("Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed.").

[27] These amounts also do not include over 3,500 hours of time reported by other counsel who represent individual Named Plaintiffs in this MDL.  Co-Lead Class Counsel will allocate appropriate compensation to the other law firms that spent time on behalf of the Class out of any fee that is awarded to Class Counsel.

1   include every hour reported even by Class Counsel.  Collectively, after the exercise of billing

2   discretion, Class Counsel have removed more than 450 hours, and more than $170,000 of lodestar

3   from the figures submitted to the Court.[28]  These amounts also do not include the additional time that

4   Class Counsel will spend going forward in seeking approval of, and implementing, the Settlement,

5   including responding to inquiries from Class Members and overseeing distribution of the *cy pres*

6   relief.  Based on prior experience, these responsibilities may require a significant further time

7   commitment from Class Counsel.  If there are objections to the Settlement and subsequent appeals,

8   those commitments and responsibilities may extend for several more years.

9       The time that Class Counsel dedicated to prosecuting this action is reasonable.  Class

10  Counsel prosecuted the claims at issue efficiently and effectively, actively seeking not to duplicate

11  effort or assignments.  Tasks were reasonably divided among law firms and were delegated

12  appropriately among partners, associates, paralegals and other staff according to relevant criteria,

13  including the complexity of the project.

14      Furthermore, Class Counsel's hourly rates are reasonable. Class Counsel are experienced,

15  highly regarded members of the bar.  Joint Declaration, ¶¶ 44-50, 52-62, 64-74.  They have brought

16  to this case extensive experience in consumer class actions and complex litigation, including specific

17  experience litigating and settling cases regarding data privacy.  *Id.*   In assessing the reasonableness

18  of an attorney's hourly rate, courts consider such qualifications, as well as whether the claimed rate

19  is "in line with those prevailing in the community for similar services by lawyers of reasonably

20  comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 895 n.11 (1984).  This

21  Court, and others within this District (and elsewhere), have approved Class Counsel's customary

22  rates used in calculating the lodestar here.  *See* Joint Declaration, ¶¶ 50, 63, 75; *In re Transpacific*

23  *Passenger Air Trans. Antitrust Litig.*, No. C 07-05634 (granting fees to SRK), *In Re: Capacitors*

24  *Antitrust Litig.*, No. 3:14-cv-03264 (N.D. Cal. Sept. 9, 2018) (same), and *In Re: TFT-LCD (Flat*

25  *Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal. Dec. 27, 2011) (same); *In re Lidoderm*

26  *Antitrust Litig.*, 14-md-02521 (N.D. Cal.) (Orrick, J.), Order [as Modified] Granting End-Payor

27  Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Service Awards, Dkt. No.

28  [28] Joint Declaration, ¶¶ 45, 53, 65.

1055 at 3 (Sept. 20, 2018) (noting CMST's rates "are consistent with rates approved in recent

antitrust class actions in this district); *Nitsch v. Dreamworks Animation SKG Inc.*, No. 14-4062, 2017

WL 2423161, at *9 (N.D. Cal. June 5, 2017) (Koh, J.) (finding CMST's rates "fair and reasonable");

*Perkins v. LinkedIn Corp.*, No. 13-cv-04303, 2016 WL 613255, at *15 (N.D. Cal. Feb. 16, 2016)

(Koh, J.) (approving LCHB rates and granting motion for attorneys' fees); *Campbell v. Facebook*

*Inc.,* No. 13-05996, 2017 WL 3581179, at *7 (N.D. Cal. Aug. 18, 2017) (Hamilton, J.) (granting

motion for attorneys' fees to LCHB in ECPA privacy litigation).

c. <u>The Negative Lodestar Multiplier Underscores the Reasonableness of Class Counsel's Fee Request</u>

The Ninth Circuit repeatedly has confirmed that "[t]here is a strong presumption that the

lodestar figure represents a reasonable fee." *Rodriguez v. W. Publ'g Corp.*, 602 F. App'x 385, 387

(9th Cir. 2015); *Hyundai*, 926 F.3d at 571 (citations and quotation marks omitted) ("[T]he lodestar

method yields a fee that is presumptively reasonable"). "Only in rare or exceptional cases will an

attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he

is entitled." *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (emphasis

omitted).

Here, the benchmark 25% fee requested by Class Counsel reflects a negative multiplier of

0.59 of Class Counsel's lodestar. Courts have approved fee awards resulting in multipliers which

are considerably higher than that requested here. *See Hyundai*, 926 F.3d at 572 (describing positive

multipliers of 1.2 and 1.5 as "modest or in-line with others we have affirmed"); *Lane v. Facebook,*

*Inc.*, No. 8-3845, 2010 WL 2076916, at *2 (N.D. Cal. May 24, 2010) (Seeborg, J.) (applying

lodestar multiplier of 2); *Netflix Privacy*, 2013 WL 1120801, at *10 (approving class counsel's

suggested lodestar multiplier of 1.66); *Google Buzz*, 2011 WL 7460099, at *4, and *id.*, Dkt. 65 (Fee

Application) (approving fee award that equated to lodestar multiplier of approximately 1.67). Courts

in this Circuit widely recognize that the existence of a negative lodestar multiplier "strongly suggests

the reasonableness" of the requested fee. *Rosado v. Ebay Inc.*, No. 12-04005, 2016 WL 3401987, at

*8 (N.D. Cal. June 21, 2016) (Davila, J.) (collecting cases). Application of the lodestar plus

multiplier cross-check thus further supports the reasonableness of Class Counsel's requested fee.

1
2

**B.    Class Counsel's Request for Reimbursement of Expenses is Reasonable and Appropriate**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

It is well established that class counsel are entitled to reimbursement of reasonable out-of-pocket costs advanced for the Class. *See* Fed. R. Civ. P. 23(h); 18 U.S.C. § 2520(b)(3); *Paul, Johnson*, 886 F.2d at 271.  In prosecuting this action over nine years, Class Counsel have incurred total out-of-pocket expenses of $723,717.23.  Joint Declaration, ¶¶ 76-77, Exs. A-C.  Significant costs included, *inter alia*, expert fees, travel for status conferences, hearings, and appellate oral argument, mediation fees, legal research, postage, and other customary litigation expenses. *Id.* ¶ 77.  By far the most substantial expense incurred, totaling $487,476.05, was the cost to retain and employ the Special Master to search the Street View data and prepare a formal Report for purposes of jurisdictional discovery.  *Id.*  Payment of these expenses was necessary to advance, and ultimately, to resolve this litigation.  *Id.*; *see also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996) (Lynch, J.) (costs related to retention of experts, photocopy costs, travel expenses, postage, telephone costs, computerized legal research fees, and filing fees are appropriate to reimburse).  Additional law firms representing plaintiffs in this MDL have also submitted reports to Co-Lead Class Counsel stating, collectively, that they have incurred almost $80,000 in expenses in connection with this litigation, for filing fees, case-related travel, legal research, expert consultations, postage, and other customary litigation expenses.  Joint Declaration, ¶ 78.  The amounts reported by these other plaintiffs' counsel, together with Class Counsel's expenses, total more than $750,000.  Class Counsel limit their expense reimbursement request to $750,000, however, to comply with the representation in the Class Notice that Class Counsel would seek expense reimbursement up to that amount.  Co-Lead Class Counsel will allocate appropriate compensation among the plaintiff law firms that incurred expenses that inured to the benefit of the Class from the $750,000 requested by Class Counsel.

25

**C.    The Requested Service Awards are Reasonable and Appropriate**

26
27
28

Class Counsel seek Service Awards of $5,000 for each of the eighteen Plaintiffs named in the CCAC who participated in jurisdictional discovery, and $500 for each of the three Plaintiffs named in the CCAC who did not participate in jurisdictional discovery, for a total of $91,500.  "[N]amed

1   plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for

2   reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez v. W. Publ'g Corp.,* 563 F.3d

3   948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases").  Such awards are

4   "intended to compensate class representatives for work done on behalf of the class [and] make up for

5   financial or reputational risk undertaken in bringing the action." *Id.*; *Van Vranken v. Atl. Richfield*

6   *Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (Williams, J.); *Sullivan v. DB Invs., Inc.*, 667 F.3d

7   273, 333 n.65 (3d Cir. 2011) (en banc), *cert. denied,* 132 S. Ct. 1876 (2012).  "The Ninth Circuit has

8   repeatedly held that $5,000 is a reasonable amount for an incentive award." *Congdon v. Uber Techs.,*

9   *Inc.*, No. 16-02499, 2019 WL 2327922, at *9 (N.D. Cal. May 31, 2019) (Gonzalez Rogers, J.)

10  (collecting cases); *Fowler v. Wells Fargo Bank*, No. 17-02092, 2019 WL 330910, at *8 (N.D. Cal.

11  Jan. 25, 2019) (Gilliam, J.) (same).

12      The requested service awards of $5,000 for each of 18 Class Representative and $500 for

13  three who did not participate in jurisdictional discovery are reasonable and appropriate here.  First,

14  the Class Representatives have expended substantial time and effort in assisting Class Counsel with

15  the prosecution of the Class's claims, including by relating the details of their use of wireless

16  networks, residential information, and concern over possibly having their personal information

17  captured by Street View vehicles; by preserving relevant documentation and evidence for discovery;

18  by staying abreast of events in the litigation and providing their opinions on the proposed settlement;

19  and, in the case of the 18 Class Representatives for whom the "presumptively reasonable" $5,000

20  service award is requested, by providing evidence and personal information to the Special Master for

21  the jurisdictional discovery in this action.[29]  *See Uber Techs*, 2019 WL 2327922, at *9.

22      Second, the Class Representatives should be rewarded for their "public service of

23  contributing to the enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333 n.65 (citation and

24  quotation omitted).  Without the Class Representatives' willingness to take on the burdens associated

25  with filing and prosecuting this action, no recovery would have been possible.  Solely because the

26  Class Representatives came forward here to assert rights that are common to all Class members,

27  Google has committed to injunctive relief tailored to reduce the chance of recurrence of similar

28  _____
[29] Joint Declaration, ¶ 79.

1    privacy intrusions, to provide educational materials to help Class Members and others protect against

2    future privacy violations, and to pay a total of $13,000,000 that will be used to enhance the privacy

3    protections available to every member of the Class and to Internet users generally.

4            Third, the requested service awards are appropriate when compared to the recovery achieved.

5    Courts assessing the reasonableness of requests for service awards may compare the request against

6    the size of the settlement fund. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457 (9th

7    Cir. 2000) (approving incentive awards of $5,000 each to two class representatives in $1.725 million

8    settlement, which collectively comprised 0.56% of total settlement); *In re: High-tech Employee*

9    *Antitrust Litig.*, No. 11-2509, 2014 WL 10520478, at *3 (N.D. Cal. May 16, 2014) (Koh, J.)

10   (approving "modest" service awards that represented 0.4% of recovery); *In re Anthem, Inc. Data*

11   *Breach Litig.*, No. 15-md-02617, 2018 WL 3960068, at *31 (N.D. Cal. Aug. 17, 2018) (Koh, J.)

12   (0.52% of recovery); *see also Rhom v. Thumbtack, Inc.*, No. 16-02008, 2017 WL 4642409, at *8

13   (N.D. Cal. Oct. 17, 2017) (Gilliam, J.) ("A $5,000 award also equals approximately 1-2% of the total

14   settlement fund, which is consistent with other court-approved enhancements.")  Plaintiffs'

15   requested service awards totaling $91,500 here collectively represent 0.7% of the $13,000,000

16   common fund.  Thus, plaintiffs' request for a $5,000 incentive award for 18 of the Named Plaintiffs,

17   and $500 for three of the Named Plaintiffs, is reasonable and appropriate.

18   **IV.    CONCLUSION**

19           For the reasons set forth above, Class Counsel respectfully request that the Court grant this

20   motion in its entirety, and award (1) attorneys' fees to Class Counsel in the amount of $3,250,000;

21   (2) reimbursement of litigation expenses of $750,000; and (3) Service Awards of $5,000 for each of

22   the eighteen Plaintiffs named in the CCAC who participated in jurisdictional discovery, and $500 for

23   each of the three Plaintiffs named in the CCAC who did not participate in jurisdictional discovery,

24   for a total of $91,500.

25

26

27

28

1  Dated:  November 25, 2019          Respectfully submitted,

2

3                                     By: _____ /s/ Jeffrey L. Kodroff _____
                                               Jeffrey L. Kodroff

4                                     SPECTOR ROSEMAN & KODROFF PC
                                      Jeffrey L. Kodroff
5                                     John A. Macoretta
                                      Mary Ann Geppert
6                                     2001 Market Street
                                      Suite 3420
7                                     Philadelphia, PA 19103
                                      Telephone:  (215) 496-0300
8                                     Facsimile:  (215) 496-6611
                                      Email:  jkodroff@srkattorneys.com
9                                     jmacoretta@skrattorneys.com
                                      mgeppert@skrattorneys.com
10

11                                    COHEN MILSTEIN SELLERS & TOLL
                                      Daniel A. Small
12                                    Robert W. Cobbs
                                      1100 New York Avenue NW
13                                    Suite 500 West
                                      Washington, DC 20005
14                                    Telephone:  (202) 408-4600
                                      Facsimile:  (202) 408-4699
15                                    Email:  dsmall@cohenmilstein.com
                                      rcobbs@cohenmilstein.com

16                                    *Class and Co-Lead Counsel*

17

18                                    Elizabeth J. Cabraser (State Bar No. 083151)
                                      Michael W. Sobol (State Bar No. 194857)
19                                    Melissa Gardner (State Bar No. 289096)
                                      LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
20                                    275 Battery Street, 29th Floor
                                      San Francisco, CA  94111-3339
21                                    Telephone:  415.956.1000
                                      Facsimile:  415.956.1008
22                                    Email: ecabraser@lchb.com
                                      msobol@lchb.com
23                                    mgardner@lchb.com

24                                    *Class and Liaison Counsel*

25

26

27

28

1

<u>**CERTIFICATE OF SERVICE**</u>

2

      I hereby certify that on November 25, 2019, I electronically filed the foregoing document

3

with the Clerk of the Court using the CM/ECF system, which will automatically send notification

4

of the filing to all counsel of record.

5

Dated: November 25, 2019          Respectfully submitted,

6

7

          By:        *Michael W. Sobol*
                    Michael W. Sobol

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28