1  Jeffrey L. Kodroff
   SPECTOR ROSEMAN & KODROFF PC
2  2001 Market Street, Suite 3420
   Philadelphia, PA 19103
3  Telephone: (215) 496-0300
   Facsimile:  (215) 496-6611
4
   Daniel A. Small
5  COHEN MILSTEIN SELLERS & TOLL
   1100 New York Avenue NW
6  Suite 500 West
   Washington, DC 20005
7  Telephone:  (202) 408-4600
   Facsimile:  (202) 408-4699
8
   *Class and Co-Lead Counsel*
9
   Michael W. Sobol
10 LIEFF CABRASER HEIMANN & BERNSTEIN LLP
   275 Battery Street, 29th Floor
11 San Francisco, CA 94111
   Telephone: (415) 956-1100
12 Facsimile:  (415) 956-1008
13 *Class and Liaison Counsel*
14
15               **UNITED STATES DISTRICT COURT**
16              **NORTHERN DISTRICT OF CALIFORNIA**
17                 **SAN FRANCISCO DIVISION**
18 IN RE GOOGLE LLC STREET VIEW      Case No.  3:10-md-02184-CRB
   ELECTRONIC COMMUNICATIONS
19 LITIGATION                        **DECLARATION OF JEFFREY L. KODROFF,**
                                     **DANIEL A. SMALL, AND MICHAEL W.**
20                                   **SOBOL IN SUPPORT OF PLAINTIFFS'**
                                     **MOTION FOR FINAL APPROVAL OF**
21                                   **CLASS ACTION SETTLEMENT; MOTION**
                                     **FOR FEES, EXPENSES, AND SERVICE**
22                                   **AWARDS**
23                                   Date:      February 28, 2020
                                     Time:      10:00 a.m.
24                                   Judge:     Hon. Charles R. Breyer
                                     Courtroom: 6, 17th Floor
25
26
27
28
                                                    JOINT DECL. OF CLASS COUNSEL ISO MOTION FOR
                                                       ATTORNEYS' FEES AND FINAL APPROVAL
   1857073.7                                              CASE NO.  3:10-MD-02184-CRB

We, JEFFREY KODROFF, DANIEL SMALL, and MICHAEL SOBOL declare:

1.     Jeffrey Kodroff is a member in good standing of the Pennsylvania State Bar and a partner in the law firm Spector, Roseman & Kodroff, PC ("SRK").  Daniel Small is a member in good standing of the Maryland State Bar and the Washington, D.C. Bar and a partner in the law firm Cohen Milstein Sellers & Toll PLLC ("CMST").  Michael Sobol is a member in good standing of the California State Bar and a partner in the law firm Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB").  We submit this declaration jointly in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees and Expenses and Service Awards for Named Plaintiffs.  Except as otherwise noted, we have personal knowledge of the facts set forth herein, and if called to testify thereto, could and would do so competently.

2.     SRK and CMST served as Co-Lead Interim Class Counsel, and LCHB served as Interim Class and Liaison Counsel in this consolidated litigation from October 2010 until October 2019, when the Court preliminarily appointed SRK and CMST Co-Lead Class Counsel and appointed LCHB Liaison Class Counsel.  In these positions, we have had a primary role in devising the litigation and settlement strategies for the Class, and we have been actively and personally involved in prosecuting and resolving the litigation.

## OVERVIEW

3.     Prosecution of this complex litigation required an enormous amount of work, effort, and expense by SRK, CMST, and LCHB (collectively, "Class Counsel") over more than nine years.  Throughout this litigation and appeals, Class Counsel devoted whatever resources were necessary to see it through to a successful outcome.  The following table summarizes the total hours dedicated by Class Counsel to this action between May 2010 and October 31, 2019:

**Table 1**

| Summary of Time Incurred | | |
|---|---|---|
| **Law Firm** | **Total Hours** | **Total Lodestar** |
| SRK | 3,567 | $2,315,318.70 |
| CMST | 2,820 | $2,021,367.50 |
| LCHB | 1,696.2 | $1,132,344.00 |
| **Class Counsel Total** | **8,083.2** | **$5,469,030.20** |

4.      These figures are derived from our respective time records, which are prepared contemporaneously in the ordinary course of business. As noted above and described in detail herein, the lodestar resulting from those hours is $5,469,030.20.  Based solely on time expended by Class Counsel in this action, the lodestar multiplier resulting from Class Counsel's request for $3,250,000 in attorneys' fees is 0.59.

5.      These amounts do not include many hours of time that we have written off in the exercise of billing discretion upon review of our law firms' respective time records.  Only time and expenses that inured to the benefit of the Class and that advanced the claims resolved in the Class Action Settlement have been included in the time and costs presented in Class Counsel's fee motion.  These amounts also do not include more than 3,500 hours of time that other counsel, who represent individual plaintiffs in this consolidated action, reported to Class Counsel as having been expended in this matter.  Co-Lead Class Counsel will allocate appropriate compensation to the other law firms that spent time on behalf of the Class out of any fee that is awarded to Class Counsel.

## LITIGATION HISTORY

6.      As summarized chronologically below, investigating, litigating, and negotiating a resolution of this matter required substantial commitments of time and resources from Class Counsel. Throughout the litigation, all reasonable efforts were made to avoid duplication of efforts and to ensure the most efficient management and prosecution of this matter reasonably possible.

## I.      Case Investigation, Consolidation, and Master Complaint

7.      Class Counsel began work in this litigation in 2010, when consumers learned that Google used "Street View" vehicles, which capture panoramic photographs from roadways for Google Maps, to also capture information, including "payload data," being transmitted over unencrypted wireless networks from homes and businesses within range of the vehicles' antennas. Individuals who would later be named as Plaintiffs in this action filed cases against Google in jurisdictions throughout the United States.  On May 24, 2010, the United States District Court for the District of Oregon granted a motion by plaintiff Vicki van Valin for an injunction ordering

JOINT DECL. OF CLASS COUNSEL ISO MOTION FOR
ATTORNEYS' FEES AND FINAL APPROVAL
CASE NO.  3:10-MD-02184-CRB

1  Google to provide a copy of all data it had collected via Street View vehicles to the Court.[1]  By

2  August of 2010, eight putative class actions had been filed, in six jurisdictions, alleging that

3  Google's conduct was unlawful.  The United States Judicial Panel on Multidistrict Litigation

4  consolidated the actions before the Honorable James Ware of this District on August 17, 2010,

5  and transferred all subsequently-filed related actions to this District as tag-along actions.[2]

6      8.      On September 13, 2010, the Court conducted the first Case Management

7  Conference, and set a briefing schedule for the appointment of plaintiffs' Lead Counsel.  On

8  October 8, 2010, after reviewing competing proposals, the Court appointed SRK, CMST, and

9  LCHB based upon their extensive experience in managing national class actions, support from the

10  majority of plaintiffs' counsel, and their work already undertaken on behalf of the putative Class,

11  including:

12      a)  Conducting an extensive pre-filing investigation of Google's misconduct,

13          including multiple meetings with some of the leading nonprofit privacy

14          organizations;

15      b)  Filing comprehensive and detailed complaints;

16      c)  Successfully advocating to the Judicial Panel on Multidistrict Litigation for

17          centralization in this District; and

18      d)  Consulting with multiple experts, including technical experts and former FCC

19          officials to assist with the preparation of a Master Consolidated Complaint.[3]

20      9.      After the appointment, we immediately coordinated preparation of the

21  Consolidated Class Action Complaint ("CCAC") on behalf of twenty-two Named Plaintiffs,

22  which was filed on November 8, 2010.  The CCAC alleges that Google intercepted the Named

23  Plaintiffs' private communications in violation of Title III of the Omnibus Crime Control and

24  Safe Streets Act of 1968 (the "Wiretap Act") as amended by the Electronic Communications

25  Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510, et seq., and in violation of numerous state

26

27  [1] *Vicki van Valin et al. v. Google, Inc.*, No. 10-cv-00557, Dkt. No. 11 (D. Or. 2010).

    [2] Dkt. No. 1 (August 17, 2010 Transfer Order from Judicial Panel on Multidistrict Litigation).

28  [3] Dkt. No. 47 (October 8, 2010 Order Appointing Co-Lead and Liaison Class Counsel).

wiretap statutes and the California Business and Professions Code §§ 17200, et seq. ("UCL"). The Named Plaintiffs sought damages and declaratory and injunctive relief.

10.     Preparing the CCAC required expert forensic analysis concerning the operation of the technology in question, as well as extensive research into precedent under the Wiretap Act, California state consumer protection law, and the privacy laws of all fifty states.  Throughout this time, Class Counsel also coordinated with the Named Plaintiffs and their counsel to develop and confirm their factual allegations, to evaluate the strength of the Named Plaintiffs' claims and Google's defenses, and to ensure that potentially relevant evidence would be preserved.

## II.     Motions Practice, Ninth Circuit Appeal, and Petition for Writ of Certiorari

11.     On December 17, 2010, Google moved to dismiss the CCAC, arguing that its conduct was lawful under an exception to the ECPA for radio communications that are "readily accessible to the general public"; that Plaintiffs' claims under state wiretap laws and the UCL were preempted by the ECPA; and that Plaintiffs had failed to allege lost "money or property" as required under the UCL.[4]  Google filed a report in support of its motion entitled "Source Code Analysis of gstumbler" prepared by technical consulting firm Stroz Friedberg.[5]  In coordination with retained experts, Class Counsel analyzed and opposed Google's submission of the Stroz Friedberg report, and opposed Google's motion to dismiss.[6]  Following oral argument on March 21, 2011, at the Court's request, the parties submitted supplemental briefing on the statutory interpretation of the ECPA's exception for "radio communications" that are "readily accessible to the general public."[7]

12.     On June 29, 2011, the Court issued an Order Granting in Part and Denying in Part Google's Motion to Dismiss with Leave to Amend. The Court dismissed Plaintiffs' claims under

---

[4] Dkt. Nos. 60 and 67 (December 17, 2010 Motion to Dismiss; February 22, 2011 Reply in Support).

[5] Dkt. No. 61 Exhibit 4 (Stroz Friedberg Report).

[6] Dkt. No. 64 (January 25, 2011 Response to Motion to Dismiss); *see also* Dkt. No. 63 (Motion to Exclude Expert Report submitted in support of Dkt. No. 60).

[7] Dkt. No. 73 (March 21, 2011 Order Requesting Supplemental Briefing); Dkt. Nos. 78-80 (April 11, 2011 Supplemental Briefing by the parties and by Amicus Curiae Electronic Privacy Information Center in Support of Plaintiffs).

JOINT DECL. OF CLASS COUNSEL ISO MOTION FOR
ATTORNEYS' FEES AND FINAL APPROVAL
CASE NO.  3:10-MD-02184-CRB

state wiretap statutes, finding that those claims were preempted by federal law.  The Court

dismissed Plaintiffs' claims under the UCL with leave to amend upon finding that the interception

of data packets over a wireless network did not constitute "lost property" under the UCL.  The

Court denied Google's motion to dismiss Plaintiffs' claims under the ECPA, observing that the

question of ECPA liability in this context was a matter of first impression, and presented novel

questions of statutory interpretation. [8]

13.     On July 18, 2011, the Court granted an opposed Motion by Google to certify the

Court's June 29, 2011 order for immediate appeal and stayed these proceedings pending

resolution of the appeal.[9] The Ninth Circuit granted Google's Petition for Permission to Appeal

on October 17, 2011, and docketed the appeal at *Benjamin Joffe, et al. v. Google Inc.*, Ninth Cir.

Dkt. No. 11-17483.[10]

14.     Class Counsel engaged in settlement discussions with Google through the Ninth

Circuit court mediation and settlement program, and conducted telephone conferences with

Circuit Mediator Margaret A. Corrigan on November 18, 2011, December 14, 2011, and January

13, 2012.  However, these discussions did not resolve the litigation at that time.[11]

15.     Class Counsel briefed the issues before the Ninth Circuit on behalf of the Named

Plaintiffs.[12]  The appeal involved an issue of first impression and many technical aspects around

the nature of different forms of electronic communications.  Oral Argument was held on June 10,

2013.  On September 10, 2013, the Court of Appeals affirmed the District Court, then filed an

amended opinion on December 27, 2013, following an opposed petition by Google for rehearing

---

[8] Dkt. No. 82 (June 29, 2011 Order Granting in Part and Denying in Part Motion to Dismiss).

[9] Dkt. No. 90 (July 18, 2011 Order Granting Defendant's Motion for Certification under 28 U.S.C. § 1292(b)).

[10] Dkt. No. 91 (October 24, 2011 Notice of Docketing of Appeal No. 11-17483).

[11] Ninth Cir. Dkt. No. 15, 19, 22 (Orders re Ninth Circuit Mediation Program).

[12] Ninth Cir. Dkt. No. 23 (February 8, 2012 Brief of Appellant), 30 (March 23, 2012 Brief of Plaintiffs-Appellees), 36 (March 30, 2012 Motion for Leave to File Brief of Amicus Curiae Electronic Privacy Information Center), 40 (April 20, 2012 Reply Brief of Appellant).

1    *en banc*, also affirming the District Court.[13] *Joffe v. Google*, 746 F.3d 920 (9th Cir. 2013).

2    Mandate issued on January 7, 2014.[14]

3          16.      On March 27, 2014 Google filed a Petition for a Writ of Certiorari in the United

4    States Supreme Court. Class Counsel opposed Google's Petition, and it was denied on June 30,

5    2014.[15]

6    **III.**      **Discovery, Discovery Motion Practice, and Report of Special Master**

7          17.      Following the resolution of Google's appeals, on February 4, 2014, the District

8    Court held a Case Management Conference, where the Court lifted the stay on proceedings and

9    allowed limited discovery on the issue of standing.[16] Class Counsel served discovery on Google

10    on February 11, 2014, including Requests for Production of all Street View data that was alleged

11    to have been collected by Google, and a 30(b)(6) Deposition Notice. Google opposed Plaintiffs'

12    Requests as over-broad. The parties met and conferred about Plaintiffs' discovery requests but

13    were unable to resolve their dispute, which Google brought before the District Court, first by

14    administrative motion, and subsequently in letter briefing before Magistrate Judge Maria-Elena

15    James.[17] Google proposed to the Court that Google be permitted to search the Street View Data

16    on its own for information related to the Named Plaintiffs, or alternatively, that a Special Master

17    be appointed and conduct searches pursuant to a protocol proposed by Google.

18          18.      On August 13, 2014, Magistrate Judge James ruled on the discovery dispute,

19    recommending that the District Court appoint a Special Master to conduct a search of Google's

20    Street View Data, and further recommending that Google's second proposal be adopted for

21    selection of the Special Master and search protocol.[18] Plaintiffs objected to the Order, which was

22    amended on September 19, 2014 by the District Court to permit greater participation by Class

23

---

24    [13] Ninth Cir. Dkt. No. 53, 68 (September 10, 2013 Order and December 27, 2013 Amended Order).

25    [14] Dkt. No. 104 (January 7, 2014 Notice of Mandate filed January 10, 2014).

     [15] United States Supreme Court Dkt. No. 13-1181.

26    [16] Dkt. No. 108 (February 7, 2014 Civil Minutes).

27    [17] Dkt. No. 109-110 (March 7, 2014 Motion for Administrative Relief; March 13, 2014 Response by Plaintiffs); Dkt. No. 117 (August 8, 2014 Joint Letter to Magistrate Judge Maria-Elena James).

28    [18] Dkt. No. 119 (August 13, 2014 Report & Recommendation re: Joint Discovery Letter).

Counsel in the selection of the Special Master and in crafting searches of the Street View data.[19] The parties identified and conferred about appropriate candidates for Special Master, and jointly proposed Douglas A. Brush of Kraft & Kennedy, who was appointed by the Court on October 23, 2014.[20]

19.     The Special Master was provided with access to the Street View data. It took the Special Master approximately one year to retrieve, process and organize all the Street View data into a searchable database.  The database contains over 3 billion wireless packets (known as "frames"), including approximately 300 million data frames—the kind of packets that contain "payload" with the contents of communications.  Class Counsel monitored the Special Master's progress and suggested several search and review options.  It took approximately two more years for the Special Master to decide which searches to conduct and then to implement the chosen searches.  Between 2014 and 2017, the parties met regularly with the Special Master to coordinate a search protocol and multiple rounds of searches to determine whether any of the Named Plaintiffs' data was intercepted by Street View vehicles during the class period.[21]  Eighteen of the Named Plaintiffs produced personal information and forensic evidence of their wireless network equipment (including MAC addresses, email addresses, and SSIDs) to the Special Master to facilitate this targeted discovery.[22]  The Special Master's Report was completed in December 2017 and filed with the Court, under seal, on December 17, 2017.[23]

**IV.    Mediation and Settlement**

20.     On February 1, 2018, with the benefit of years of legal research and factual investigation, and the Special Master's findings, Class Counsel believed they had uncovered

---

[19] Dkt. No. 121 (September 19, 2014 Order Adopting in Part Report and Recommendation).

[20] Dkt. No. 123 (October 23, 2014 Order Appointing Special Master).

[21] Dkt. No. 124 (March 6, 2015 Joint Status Report); Dkt. No. 127 (May 8, 2017 Joint Status Report); Dkt. No. 130 (October 4, 2017 Joint Status Report); Dkt. No. 135 (November 9, 2017 Joint Status Report); Dkt. No. 139 (December 14, 2017 Joint Status Report).

[22] Named Plaintiffs Dean Bastilla, Rick Benitti, Matthew Berlage, David Binkley, James Blackwell, Stephanie Carter, Russell Carter, Jeffrey Colman, James Fairbanks, Wesley Hartline, Benjamin Joffe, Patrick Keyes, Aaron Linsky, Lilla Marigza, Eric Myhre, John Redstone, Karl Schulz and Vicki Van Valin participated in this jurisdictional discovery.

[23] Dkt. No. 138 (December 14, 2017 Joint Motion to Seal).

1   sufficient information to adequately assess the strengths and weaknesses of the case. The parties

2   engaged in a mediation session before the respected and skilled mediator Greg Lindstrom of

3   Phillips ADR Enterprises P.C.  The mediation resulted in the proposed Settlement Agreement,

4   which was executed by the Parties on June 11, 2018 and submitted under seal to the Court on

5   June 15, 2018.[24]

6          21.    Throughout the mediation and settlement process, Class Counsel vigorously

7   pursued the best interests of the putative Class. The settlement was negotiated with Google at

8   arms' length. At no point did Class Counsel seek to advance their own interests over those of the

9   Class.

10          22.    The Settlement Class definition was modified slightly from the Class proposed in

11   the CCAC, which proposed a class of "All persons in the United States whose electronic

12   communications sent or received on wireless internet connections were intercepted by

13   Defendant's Google Street View vehicles from May 25, 2007 through the present." The

14   Settlement Agreement modified the date range to more precisely reflect the time period of the

15   challenged conduct. A limitation to individuals whose "Payload Data" was acquired by Google

16   was added to the definition to tailor it more closely to the ECPA's language, which prohibits

17   "interception" of the "contents" of electronic "communications." *See* 18 U.S.C. §§ 2510, 2511.

18          23.    As the parties were finalizing the terms of the proposed Settlement, the United

19   States Supreme Court granted a Petition for Writ of Certiorari to review final approval of a

20   proposed *cy pres* settlement in *Frank v. Gaos* (Supreme Court Dkt. No. 17-961).  At the time, it

21   appeared that the Supreme Court's review could alter or clarify the factors the District Court

22   would have to consider in evaluating preliminary and final approval of the Settlement here.

23   Accordingly, on June 19, 2018, upon the parties' request, the Court stayed proceedings in this

24   action until after the United States Supreme Court issued an opinion in *Frank v. Gaos*.[25] The

25

26

---

27   [24] Dkt. No. 166-1 (Settlement Agreement); Dkt. No. 151 (June 15, 2018 Joint Motion to File Under Seal).

28   [25] Dkt. No. 155 (June 19, 2018 Order to Stay Proceedings).

1   Supreme Court's opinion issued on March 20, 2019, and a status conference was held on May 10,

2   2019, setting deadlines for preliminary approval of the settlement.[26]

3       24.    Class Counsel filed the Motion for Preliminary Approval of Settlement on July 19,

4   2019, including a description of the relief provided by the Settlement and detailed proposals from

5   each of the eight non-profit entities proposed as *Cy Pres* Recipients of the monetary relief.[27]

6   Class Counsel interviewed and analyzed numerous non-profit entities as potential *Cy Pres*

7   Recipients to make sure their work would be beneficial to the class and that each entity did not

8   have improper connections to Class Counsel, Google, or the Court.[28]  Google did not select

9   proposed *Cy Pres* Recipients; Class Counsel notified Google of its selections after making them,

10   pursuant to the terms of the Settlement Agreement, but made no changes to their selection in

11   response to Google's views.  Following a hearing on September 6, 2019, the Court granted

12   preliminary approval of the Settlement on October 9, 2019.[29]

13       25.    As part of Plaintiffs' Motion for Preliminary Approval, Class Counsel submitted a

14   notice plan prepared by A.B. Data, Ltd., an experienced provider of class action notice and claims

15   administration services. Because proposed Class members are not readily identifiable through

16   reasonable means, Class Counsel suggested (and the Court approved) a Notice campaign based

17   on electronic advertising. The goal of the campaign was to reach as many members of the

18   proposed Class as reasonably practicable.

19       26.    Should the Court approve the Settlement, Class Counsel will continue to

20   vigorously represent the interests of the Class throughout settlement administration.

21   **CHARACTERISTICS OF THE CLASS**

22       27.    As noted above, discovery revealed that Google had collected more than 3 *billion*

23   data frames in the United States from Wi-Fi connections as part of its Street View program,

24
25   [26] Dkt. No. 158 (March 29, 2019 Joint Request for Status Conference); Dkt. No. 161 (May 10, 2019 Minute Entry for Status Conference).

26   [27] Dkt. No. 166 (Motion for Preliminary Approval of Settlement).

27   [28] As disclosed in the Preliminary Approval Brief, CMST and LCHB have both litigated with proposed *Cy Pres* Recipient ACLU and/or its affiliates over the years.

28   [29] Dkt. No. 175 (September 6, 2019 Minute Entry for Proceedings); Dkt. No. 178 (October 9, 2019 Order Granting Preliminary Approval of Settlement).

including some 300 million "Payload Data" frames. Based on this information and other information uncovered in discovery, Class Counsel believe that the Class is composed of millions of members.[30]

## WORK PERFORMED BY CLASS COUNSEL

28.     Each of our law firms has categorized their time spent in this litigation according to the nature of the task.  **Exhibits A, B, and C** hereto are summaries for SRK, CMST, and LCHB, respectively, which describe the amount of time spent by each attorney and staff member whose time is included in Class Counsel's total lodestar, as divided among each of the following ten categories:

29.     The **Factual Research & Investigations** category includes all work and research required to develop knowledge of facts related to the claims alleged on behalf of the Class; research concerning the impact of Google's conduct on Plaintiffs and putative Class members; communications with the Named Plaintiffs regarding the allegations included in the initial complaints and the CCAC; and ongoing analysis of relevant technical and other developments throughout the course of the litigation.

30.     The **Discovery of Plaintiffs** category includes coordination and communication with the Named Plaintiffs and, where applicable, their counsel regarding the location of potentially relevant evidence and information, evidence preservation, and the provision of personal information and forensic evidence required to facilitate the work of the Special Master.

31.     The **Discovery of Defendants/Third Parties** category includes work to form a discovery plan; drafting of discovery; meeting and conferring on discovery requests; and communications and conferences regarding evidence and information provided by Google to Special Master.

---

[30] The Canadian government issued a report stating that "Google estimates that it collected over 6 million BSSIDs [network names] over the period its Street View cars drove throughout Canada." This indicates that about 6 million persons/entities in Canada had their data captured by Google. The U.S. population is nearly ten times Canada's, providing further evidence that the Class includes millions of members.  *See* Officer of the Privacy commissioner of Canada, *Preliminary Letter of Findings* (October 19, 2010), available at https://www.priv.gc.ca/en/opc-news/news-and-announcements/2010/let_101019/.

32.     The **Work with Experts** category includes time incurred to identify and retain consulting experts; consultations to assist with preparation of CCAC and to defend against Google's motion to dismiss and appeals; research and analysis to identify appropriate candidates to propose for Special Master; analysis and communications concerning the Special Master's technical work, preliminary findings and Report; and correspondence and communications with Special Master in response to technical requests.

33.     The **Pleadings, Briefs & Pre-Trial Motions** category includes legal research, conferences, drafting, review, and filing of all pleadings, briefs, and pre-trial motions in the District Court, including without limitation the CCAC, status reports and case management statements, the opposition to Google's motion to dismiss and supplemental briefing, and briefing on discovery disputes.

34.     The **Litigation Strategy, Analysis & Case Management** category includes conferences, communications, and other time spent developing and furthering a cohesive and comprehensive case strategy and goals; analysis of relevant developments in case law and other areas; management of the case file, including administrative work; the allocation of work to Co-Lead, Liaison, and other counsel, and all related oversight.

35.     The **Court Appearances & Preparation** category includes all conferences and other tasks undertaken to prepare for District Court appearances, case management conferences, status conferences, and telephonic conferences; the analysis and preparation of materials for use in court appearances, and necessary travel time for court appearances.

36.     The **Settlement** category includes strategy, analysis, correspondence, and conferences related to settlement negotiations; drafting of term sheet(s) mediation brief(s) and the Settlement Agreement; preparation and conduct of each mediation and settlement conference; research, drafting and filing of the settlement approval briefing and associated exhibits; evaluating and selecting a Notice Administrator; oversight of the scope and implementation of the Notice program; research and selection of proposed *Cy Pres* recipients; and communications with defense counsel, Named Plaintiffs, class members, and the Court regarding the settlement.

37.     The **Fee/Expense Proceedings** category includes preparation of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards and supporting materials; time incurred to review and exercise billing discretion over Class Counsel's time records; and related analysis and communications.

38.     The **Appeals** category includes all legal research, briefing, oral argument preparation and related work to represent the interests of the putative Class before the Ninth Circuit Court of Appeals and the United States Supreme Court; analysis, correspondence, and conferences concerning this appellate work, and related communications with Named Plaintiffs and their counsel, Class members, and defense counsel.

39.     We, and attorneys under our supervision, reviewed the time records kept by our respective law firms for purposes of this declaration and assigned each time entry to one of the ten categories described above, which were distributed by Co-Lead Class Counsel SRK to counsel in this litigation.  The total hours and lodestar incurred by Class Counsel for each of the ten categories are detailed in **Table 2** below.

### Table 2

| Lodestar and Rates by Category | | |
|---|---|---|
| **Category** | **Total Hours** | **Total Lodestar** |
| Factual Research & Investigations | 615.2 | $370,393.75 |
| Discovery of Plaintiffs | 3.60 | $1,789.00 |
| Discovery of Defendants/Third Parties | 970.55 | $643,852.25 |
| Work with Experts | 156.55 | $116,916.25 |
| Pleadings, Briefs & Pre-Trial Motions | 2,354.65 | $1,557,861.25 |
| Litigation Strategy, Analysis & Case Management | 916.55 | $645,868.25 |
| Court Appearances & Preparation | 453.55 | $382,583.45 |
| Settlement | 1,290.05 | $874,659.00 |
| Fee/Expense Proceedings | 19.20 | $9,188.00 |
| Appeals | 1303.30 | $865,919.00 |
| **Totals** | **8,083.2** | **$5,469,030.20** |

40.     The time that Class Counsel spent on this case has been completely contingent on the outcome.  Additional work will be required to obtain final approval of the Settlement; to protect the Settlement on appeal (if any appeals are lodged); to respond to inquiries from Class members about their rights and relief provided by the Settlement; to oversee and monitor Google's compliance with the injunctive relief provided by the Settlement; to oversee the distribution and allocation of any *Cy Pres* funding awarded by the Court; and to ensure and report on compliance by each *Cy Pres* recipient with the terms of the Settlement.

41.     Based on our experience with other class actions and complex cases, we believe that the time expended in connection with this matter was necessary to ensure the success of the action and reasonable in amount, particularly given the result achieved by the Settlement and the complexity of the litigation and appeals.

## CLASS COUNSEL'S HOURLY RATES

42.     This action involves novel issues predicated on claims involving application of the Wiretap Act to the interception of home Wi-Fi networks, questions of first impression in this Circuit and nationwide.  This case and the interlocutory appeal furthered the development of case law under the Wiretap Act in a positive direction for consumers and the protection of online privacy.  Moreover, these novel legal issues were disputed in a highly technical context that required our attorneys and consulting experts to develop and apply expertise in the functioning of wireless networks, the interception of data packets, and related technical concepts. These and other difficult issues implicated by these claims required us to research and devise litigation strategies to move the case through motions practice, appeals, and years of jurisdictional discovery towards trial, without the certainty of ever receiving compensation. The hourly rates utilized in the lodestar calculation include no risk multiplier.

43.     The rates sought for each law firm's attorneys and staff are the firm's current commercial billing rates, which have been approved by other Federal Courts and are supported by Class Counsel's extensive and specialized experience in these types of cases and recognized expertise, as described for each of SRK, CMST, and LCHB, respectively, below.

**V.      Spector, Roseman & Kodroff (by Jeffrey Kodroff only)**

44.      SRK is a leading U.S. class action law firm, and has served in leadership roles in important class action litigation for over 25 years.  SRK has recovered billions of dollars on behalf of investors, consumers and businesses in the areas of consumer protection, securities fraud and antitrust. More information on the SRK can be found at the firm's website, SRKattorneys.com, and a copy of SRK's firm resume is attached as **Exhibit D**.

45.      SRK's lodestar of $2,315,318.70 through October 31, 2019 reflects 3,567 hours of work by highly qualified attorneys and staff.  These figures do not include 152.5 hours of time and over $25,000 worth of lodestar that SRK has decided to remove in the exercise of billing discretion.

46.      This case was litigated by SRK partners Jeffrey Kodroff and John Macoretta, with substantial work conducted by associate (subsequently of counsel) Mary Ann Geppert and three of the firm's paralegals.

47.       **Jeffrey Kodroff** received his JD in 1989 from Temple University School of Law. He has almost 30 years of experience representing plaintiffs in class actions and other complex matters.  He has been appointed to leadership positions in many significant federal multidistrict and state court coordinated proceedings across a range of substantive areas, including securities law, antitrust law, privacy, consumer fraud, health care, telecommunications and employment.

48.      **John Macoretta** received his JD in 1990 from the University of Texas.  He has been advocating for clients in all forms of litigation for almost 30 years.  He has represented individuals, small businesses and health insurers in state and federal Courts across the United States, including serving in leadership roles in several important class-actions litigations.  Mr. Macoretta has been litigating class action cases with SRK since 2001.  He was recently honored as a "Champion" by the Philadelphia Volunteers for the Indigent Program, in recognition of his years of service as a pro bono attorney representing Philadelphians facing foreclosure and the loss of their homes.

49.      **Mary Ann Geppert** received her J.D. in 2003 from the Widener University School of Law, where she served as an Articles Editor for the Widener Law Symposium Journal.

1   Joining SRK in 2007, she has over 12 years of experience representing plaintiffs in consumer and

2   antitrust class actions.  Prior to joining SRK, Ms. Geppert practiced insurance defense litigation

3   for 3 years, where she successfully litigated and tried numerous lawsuits.  Since 2005, she has

4   served as an arbitrator for the Philadelphia Court of Common Pleas.  Ms. Geppert was named a

5   Pennsylvania Rising Star by Philadelphia Magazine in 2010 and 2013.

6         50.     SRK used its two most experienced paralegals and a junior paralegal to assist in

7   this litigation.  SRK's paralegals assisted in researching various governmental investigations of

8   Google, collecting the plaintiffs' information, and finalizing and electronically filing various

9   pleadings.  Gerri DeMarshall has been a paralegal with SRK since 2000.  Chuck Briglia is now

10  retired, but was a paralegal for over 25 years.  He has an undergraduate degree from the

11  University of Pennsylvania.  Nicole Noronha was a paralegal for three years before attending law

12  school at Temple University.  Her undergraduate degree is from West Chester University.

13        51.     SRK's customary hourly rates, which were used for purposes of calculating SRK's

14  lodestar reflected in Exhibit A, are consistent with prevailing rates in this District and repeatedly

15  have been approved by federal courts in this Circuit: See, e.g. *In re Transpacific Passenger Air*

16  *Transportation Antitrust Litig.*, No. C 07-05634, *In Re: Capacitors Antitrust Litigation*, No. 3:14-

17  cv-03264, (N.D. Cal. Sept. 9, 2018), and *In Re: TFT-LCD (Flat Panel) Antitrust Litigation*, No.

18  3:07-md-01827 (N.D. Cal. Dec. 27, 2011).

19  **VI.**    **Cohen Milstein Sellers & Toll (by Daniel Small only)**

20        52.     CMST is one of the premier firms in the United States handling major, complex

21  plaintiff-side litigation. A copy of CMST's firm resume is attached as **Exhibit E**.

22        53.     CMST's lodestar of $2,021,367.50 through October 31, 2019 reflects 2,820 hours

23  of work by highly qualified attorneys and staff.  These figures do not include 114.5 hours of time

24  and $63,418.75 of lodestar that CMST has decided to remove in the exercise of billing discretion.

25        54.     As reflected on Exhibit B, the primary CMST attorneys working on this case were

26  partners Daniel A. Small and Benjamin D. Brown, associates Robert Braun and Robert W. Cobbs,

27  and former partners David A. Young, George F. Farah, and Christopher J. Cormier.

28

55.     **Daniel A. Small** received his J.D. in 1986 from American University's Washington College of Law. Mr. Small has litigated plaintiffs-side complex class actions for 31 years, obtaining settlements and judgments totaling hundreds of millions of dollars. He has tried cases to verdict and argued in numerous appellate courts, including the U.S. Supreme Court. Among other recognitions of his work, Mr. Small was named a *Lawdragon 500* Leading Lawyer in 2018 and 2019 and was named to the *DC Super Lawyers* list in 2013-2020.

56.     **Benjamin D. Brown** received his J.D. in 1997 from Harvard Law School. Since joining CMST from the Department of Justice in 2005, Mr. Brown has represented plaintiffs in numerous complex class actions, including trials and appeals. Mr. Brown is also an adjunct professor at Georgetown Law School, where he teaches a course in Complex Litigation.

57.     **Christopher J. Cormier** received his J.D. in 2002 from American University's Washington College of Law. At CMST, Mr. Cormier represented plaintiffs in numerous complex class actions, including trial, obtaining settlements and judgments totaling more than $1 billion. Mr. Cormier was recognized as a *Super Lawyers* "Rising Star" in 2016 and 2017. Mr. Cormier is now a partner at Burns Charest LLP.

58.     **George F. Farah** received his J.D. in 2005 from Harvard Law School. At CMST, Mr. Farah represented plaintiffs as in numerous complex class actions on behalf of consumers and workers, obtaining millions of dollars in settlements. Mr. Farah was selected by *Super Lawyers* as a "Rising Star" from 2014-15 and a "Super Lawyer" from 2016-18. Mr. Farah is now a partner at Hadley Farah & Anderson.

59.     **David A. Young** received his J.D. in 2006 from Harvard Law School. At CMST, Mr. Young litigated several large class action suits, obtaining millions of dollars in settlements for consumers and businesses. Prior to joining CMST, Mr. Young practiced at two other national firms where he focused on complex litigations. Mr. Young now works in Business Development at Palantir Technologies.

60.     **Robert A. Braun** received his J.D. in 2011 from Yale Law School. Mr. Braun has litigated complex class actions on behalf of plaintiffs since 2014.

61.     **Robert W. Cobbs** received his J.D. in 2013 from Yale Law School. Mr. Cobbs has litigated complex class actions on behalf of plaintiffs since 2016.

62.     CMST has a team of paralegals that assist in the litigation of its cases, with the level of staffing depending on the size and needs of the particular case.  In this case, former CMST paralegals Ariel Wentworth and Brenda Peterson were the primary CMST paralegals assigned to this matter.  The paralegals' tasks in this litigation have included the following: conducting factual investigation; assisting with filings; preparing pleadings; and maintaining CMST's case file.

63.     CMST's customary rates, which were used for purposes of calculating CMST's lodestar reflected in Exhibit B, are consistent with prevailing rates in this District and repeatedly have been approved by federal courts in this Circuit. *See In re Lidoderm Antitrust Litig.*, 3:14-md-02521-WHO (N.D. Cal.), Order [as Modified] Granting End-Payor Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Service Awards, Dkt. No. 1055 at 3 (Sept. 20, 2018) (noting fees "are consistent with rates approved in recent antitrust class actions in this district); *Nitsch v. Dreamworks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding rates "fair and reasonable"); *In Re Broadcom Corp. Stockholder Litig.*, No. 15-cv-00979-JVS-PJW (C.D. Cal. Feb. 27, 2017), Order on Lead Counsel's Mot. for an Award of Attorneys' Fees and Expenses, Dkt. No. 119 at 1; *Bruce v. Suntech Power Holdings Co.*, No. 12-cv-04061-RS (N.D. Cal. Feb. 12, 2016), Dkt. No. 163 at 3-4.

## VII.     <u>Lieff, Cabraser, Heimann & Bernstein (by Michael Sobol only)</u>

64.     LCHB is one of the most respected and most successful class action firms in the country, and has recovered billions of dollars for class members. A copy of LCHB's current resume, which describes the firm's experience in class action and other complex litigation, can be found at https://www.lieffcabraser.com/pdf/Lieff_Cabraser_Firm_Resume.pdf.

65.     LCHB's lodestar of $1,132,344 through October 31, 2019 reflects 1,696.2 hours of work by highly qualified attorneys and staff.  These figures do not include 193.8 hours of time and $82,536 worth of lodestar that LCHB has decided to remove in the exercise of billing discretion.

66.     As reflected on Exhibit C, the primary LCHB attorneys working on this case were partners Elizabeth J. Cabraser, Michael W. Sobol, and Kathryn Barnett, and associates Kenneth Byrd, Michael Miarmi, Nicole Sugnet, and Melissa Gardner, each of whom became partners at the law firm while this litigation was pending.[31]

67.     **Elizabeth J. Cabraser** received her J.D. in 1978 from the University of California at Berkeley. She has more than 35 years of experience representing plaintiffs in class actions and other complex matters.  She has been appointed to leadership positions in over 80 federal multidistrict and state court coordinated proceedings, and has participated in the design, structure and conduct of numerous class action trials in state and federal courts. She has been recognized repeatedly for her work, including being named by the National Law Journal as one of its "100 Most Influential Lawyers in America" and one of its "Top Ten Women Litigators."

68.     **Michael W. Sobol** received his J.D. in 1989 from Boston University School of Law.  Mr. Sobol practiced law in Massachusetts from 1989 to 1997. From 1995 through 1997, he was a Lecturer in Law at Boston University School of Law. Since joining LCHB in 1997, Mr. Sobol has represented plaintiffs in numerous nationwide consumer protection, data privacy and other class actions and complex matters. He has been a partner with LCHB since 1999, and currently serves as Chair of LCHB's Cybersecurity and Data Privacy and Consumer Protection practice groups. Mr. Sobol is widely recognized for his expertise and substantial experience in the area of digital privacy and security, including most recently by the Daily Journal as a "Top Cyber/Artificial Intelligence Lawyer," 2018-2019; by Law360 as "MVP for Cybersecurity and Privacy" in 2017; and by the National Law Journal as "Cybersecurity & Data Privacy Trailblazer" in 2017.

69.     **Kathryn E. Barnett** received her J.D. in 1992 from Vanderbilt University School of Law.  She was a partner in LCHB's Nashville office until 2013, and was widely regarded as a

---

[31] There are two hourly rates reflected in Exhibit C for each of Mr. Byrd, Mr. Miarmi, Ms. Sugnet, and Ms. Gardner in light of the change in their professional status during the litigation. For time devoted to this case as an associate at LCHB, Exhibit C reflects each lawyer's rate during their final year as an associate. For time devoted to this case as a partner, Exhibit C reflects each lawyer's current billing rate, or (in the case of attorneys Jahan Sagafi, Nicole Sugnet and Katherine Barnett) their hourly rate at the time they left employment with LCHB.

skilled trial lawyer and litigator, having tried more than fifteen civil and criminal trials, including complex and class action cases.  During her tenure at LCHB, Ms. Barnett was selected for a list of "Nashville's Best Lawyers" 2010-2012; as a "Mid-South Super Lawyer," by Super Lawyers, 2006-2011; as a "Top 100 Tennessee Mid-South Super Lawyer," by Super Lawyers in 2011; as a "Top 50 Women Mid-South Super Lawyer," by Super Lawyers in 2011; for a list of "Nashville Lawyers In Charge," by the Nashville Post in 2010; and "Best of the Bar" by the Nashville Business Journal in 2003 and 2005-2010.

70.     **Kenneth Byrd** received his J.D. in 2004 from Boston College Law School. Mr. Byrd joined LCHB as an associate in 2010, and became a partner at the firm in 2014.  Mr. Byrd is recognized as an experienced trial attorney, having achieved several large jury trial verdicts over the past several years. He was selected for inclusion by peers in The Best Lawyers in America in the fields of Consumer Protection Law, Personal Injury Litigation-Plaintiffs, and Product Liability Litigation-Plaintiffs, 2018-2020, and received the Tennessee Association for Justice's 2015 Paladin Award for his successful litigation against cigarette manufacturers R.J. Reynolds Tobacco Company, Philip Morris USA Inc., and Lorillard Tobacco Company in Florida federal courts.

71.     **Michael Miarmi** received his J.D. in 2005 from Fordham University School of Law.  He joined LCHB as an associate in 2007 and became a partner at the firm in 2013.  Mr. Miarmi devotes his practice almost entirely to representing individual and institutional investors in direct or class cases asserting claims under the federal securities laws or state law.  He has been, and currently is, involved in significant securities cases before the United States Supreme Court, and has published numerous articles on salient issues in securities litigation. Mr. Miarmi was selected by Super Lawyers as a "New York Metro Rising Star" from 2013 through 2018.

72.     **Nicole Sugnet** received her J.D. in 2006 from the University of California, Hastings College of the Law.  Ms. Sugnet joined LCHB as an associate in 2012 and became a partner at the firm in 2015.  While at LCHB, until 2017, Ms. Sugnet focused her practice exclusively on consumer class action litigation.  She is the co-author of "Consumer Protection and Employment Cases after Concepcion," published in the ABA Section of Litigation, Class

1   Action & Derivative Suits Committee Newsletter (Summer 2011), as well as the California

2   Section of the ABA State Class Action Survey (2012). Ms. Sugnet was selected by Super

3   Lawyers as a "Rising Star for Northern California" each year from 2013-2016, and as a "Super

4   Lawyer" in 2017.

5       73.   **Melissa Gardner** received her J.D. in 2011 from Harvard Law School. Ms.

6   Gardner joined LCHB as an associate in 2012 and became a partner at the firm 2019. Ms.

7   Gardner focuses her practice on representing plaintiffs in consumer protection and digital privacy

8   class action litigation, and has significant experience with class action consumer privacy litigation

9   involving claims under the Wiretap Act.  Ms. Gardner has been selected by Super Lawyers as a

10  "Rising Star for Northern California" each year from 2017-2019.

11      74.   LCHB has a team of paralegals that assist in the litigation of its cases, with the

12  level of staffing depending on the size and needs of the particular case.  In this case, former

13  LCHB paralegals Brenda Parker (from 2010-2011) and Yun Swenson (from 2010-2017), and

14  current staff member Ariana Delucchi (from 2018-2019) were the primary LCHB paralegals

15  assigned to this matter.  Ms. Parker's resume reflects that she is a 1975 graduate of the University

16  of Akron and obtained her paralegal certificate from the Southeastern Paralegal Institute in

17  Nashville, Tennessee with Honors in 1994.  Ms. Swenson is a 2003 graduate of Cornell Law

18  School and a 1998 graduate of University of California, Berkeley.  Ms. Delucchi obtained her

19  Bachelor of Arts from the University of San Francisco in 2010 and her Paralegal Studies

20  Certificate from San Francisco State University in 2017.  The paralegals' tasks in this litigation

21  have included the following: conducting factual investigation; assisting with filings; maintaining

22  LCHB's case file; preparing materials for District Court hearings, Ninth Circuit argument,

23  meetings, and mediations; and communicating with the Named Plaintiffs and members of the

24  Class.

25      75.   LCHB's customary rates, which were used for purposes of calculating LCHB's

26  lodestar reflected in Exhibit C, are consistent with prevailing rates in this District and repeatedly

27  have been approved by federal courts in this Circuit: *See, e.g. In re Volkswagen "Clean Diesel"*

28  *Mktg., Sales Practices, & Prod. Liab. Litig.*, MDL 2672, Dkt. No. 3489 (N.D. Cal. July 21, 2017)

1    (approving in lodestar cross-check rates of Class Counsel, including LCHB, which ranged "from

2    $250 to $1,650 for partners, $185 to $850 for associates, and $65 to $390 for paralegals"); *In re*

3    *Intuit Data Litig.*, No. 15-1778, 2019 WL 2166236, at *2 (N.D. Cal. May 15, 2019) (awarding

4    requested attorneys' fees); *Campbell et al. v. Facebook, Inc.*, No. 13-05996, Dkt. No. 253 (N.D.

5    Cal. August 18, 2017) (approving LCHB rates); *Allagas v. BP Solar Int'l, Inc.*, No. 14-00560,

6    2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (approving LCHB rates as "in line with

7    prevailing rates in this District"); *Perkins v. LinkedIn Corp.,* No. 13-CV-04303, 2016 WL 613255,

8    at *15 (N.D. Cal. Feb. 16, 2016) (approving LCHB rates); *In re High-Tech Employee Antitrust*

9    *Litig.*, No. 11-02509, Dkt. No. 1112 (N.D. Cal. Sept. 2, 2015) (approving LCHB rates); *In re*

10   *TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1009 (N.D. Cal. 2015) (awarding

11   requested attorneys' fees); *Steinfeld v. Discover Financial Services*, No. 3:12-01118 (N.D. Cal.

12   Mar. 31, 2014) ("Class counsel have submitted declarations that show the hourly rates that they

13   have requested are reasonable and have provided the Court with information about other cases

14   that approved their rates."); *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales*

15   *Practices, and Products Liability Litig.*, No. 10-ml-02151, Dkt. No. 3933 (C.D. Cal. June 24,

16   2013) (awarding requested fees and finding that "[c]lass counsel's experience, reputation, and

17   skill, as well as the complexity of the case" justified billing rates).

18   **VIII.  Expenses Incurred By Class Counsel**

19   76.    Class Counsel seek reimbursement of $750,000 in litigation expenses.  Exhibits A,

20   B, and C hereto contain summaries of the expenses incurred solely in connection with this

21   litigation by each of SRK, CMST, and LCHB. Table 3, below provides an overview of those

22   costs broken down by expense category:

**Table 3**

| Costs by Expense Category | |
|---|---|
| **Category** | **Cumulative Expense** |
| Assessment Payment | $0.00 |
| Commercial Copies | $66.49 |
| Data Extraction | $0.00 |
| Internal Reproduction/Copies | $10,381.30 |

| Court Fees | $3,397.00 |
| Court Reports/Transcripts | $63.00 |
| Computer Research | $127,224.01 |
| Telephone/Fax/E-mail | $2,881.48 |
| Postage/Express/Delivery/Messenger | $1,802.47 |
| Professional Fees | $543,640.29 |
| Witness/Service Fees | $1,401.38 |
| Travel | $32,546.20 |
| Other | $313.61 |
| **Total** | **$723,717.23** |

77.    The expenses reflected in Exhibits A, B, and C include the cost of retaining the Special Master to conduct searches of the Street View data, the cost of the mediator, travel for mediation and court appearances, legal research, postage, and other customary litigation expenses. These expenses are reflected in our respective books and records as maintained in the ordinary course of business.  As detailed in Exhibits A, B, and C, to date SRK has incurred expenses totaling $255,157.03; CMST has incurred expenses totaling $326,524.21; and LCHB has incurred expenses totaling $142,035.93.  By far, the largest expense incurred in this action, totaling $487,476.05, was the cost to employ the Special Master to organize and search the Street View data, and prepare a formal Report.  Expenses of the three Class Counsel firms to date total $723,717.23.

**IX.    Expenses Incurred By Non-Lead Counsel (by Jeffrey Kodroff only)**

78.    In addition to the past and future expenses incurred by Class Counsel, SRK has received reports from fourteen additional law firms involved in this MDL stating that, collectively, they have incurred almost $80,000 in expenses in connection with this litigation, for filing fees, case-related travel, legal research, expert consultations, postage, and other customary litigation expenses.  While this amount combined with the $723,717.23 spent by Class Counsel totals more than $750,000, Class Counsel limit their request for reimbursement to $750,000 to comply with the Notice, which advised Class members that Class Counsel would seek reimbursement of expenses up to that amount.  Co-Lead Class Counsel will allocate appropriate reimbursement

1    among Class Counsel and among the other law firms that incurred expenses that inured to the

2    benefit of the Class from the requested $750,000.

3    **X.**    **Time and Effort by Plaintiffs**

4           79.    In addition to the time and expenses Class Counsel incurred in this action, the

5    Class Representatives have spent considerable time and effort in their pursuit of this litigation and

6    in seeking to advance the legal rights and interests of the Class, including time spent in lengthy

7    fact-finding interviews with Plaintiffs' counsel for the CCAC, discussing this litigation with

8    Plaintiffs' counsel over the course of many years, and communicating with Class Counsel about

9    the proposed settlement.  Eighteen of the Named Plaintiffs, listed in footnote 22, *supra*, also

10   participated in jurisdictional discovery, by submitting information, declarations, and other

11   evidence, including electronic devices for forensic imaging, as required to meet the needs of the

12   Special Master and the jurisdictional discovery conducted in this action.

13   **XI.**    **Exhibit**

14          80.    Attached as **Exhibit F** is document that we understand to be a true and correct

15   copy of the Assurance of Voluntary Compliance entered into by the Attorneys General of 38

16   states and the District of Columbia and Google, Inc. on March 8, 2013, which has been posted to

17   the Settlement Website since Notice was first disseminated to Class Members.

18                                              ***

19          81.    For the foregoing reasons, and those outlined in Plaintiffs' Motion for Final

20   Approval of Settlement and Motion for Attorneys' Fees, Expenses, and Plaintiff Service Awards,

21   Plaintiffs respectfully request that the Court grant Final Approval of the Settlement and award

22   Class Counsel $3,250,000 in fees and $750,000 in expenses pursuant to Federal Rule of Civil

23   Procedure 23(h), to be allocated by Co-Lead Class Counsel among SRK, CMST, and LCHB and

24   additional counsel that performed work inuring to the benefit of the Class, and Plaintiff Service

25   Awards in the total amount of $91,500.

26

27

28

1  I declare under penalty of perjury that the foregoing is true and correct as to all matters of

2  which I have personal knowledge.  Executed this 25th day of November, 2019 in Philadelphia,

3  Pennsylvania.

4
*/s/ Jeffrey L. Kodroff*
Jeffrey L. Kodroff

5

6  I declare under penalty of perjury that the foregoing is true and correct as to all matters of

7  which I have personal knowledge.  Executed this 25th day of November, 2019 in Washington,

8  D.C.

9
*/s/ Daniel A. Small*
Daniel A. Small

10

11

12  I declare under penalty of perjury that the foregoing is true and correct as to all matters of

13  which I have personal knowledge.  Executed this 25th day of November, 2019 in San Francisco,

14  California.

15
*/s/ Michael W. Sobol*
Michael W. Sobol

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, Michael W. Sobol, am the ECF user whose identification and password are being used to file this Joint Declaration. I hereby attest that Jeffrey Kodroff and Daniel Small have concurred in this filing.

*/s/ Michael W. Sobol*
Michael W. Sobol, Esq.

# EXHIBIT A

**Time Expense Report and Lodestar Summary**

| CASE NAME: In re Google LLC Street View Litigation |
| --- |
| Co-Lead Class Counsel |
| Spector Roseman & Kodroff, PC |

**REPORTING PERIOD:**

INCEPTION TO 10/31/19

\* Professional Status (use underlined initials to designate each timekeeper's status):  **P**artner   **O**f **C**ounsel   **A**ssociate   **L**aw **C**lerk   **P**ara**L**egal

| TIME REPORT — Timekeeper Name | Professional Status * | Hourly Rate | Factual Research & Investigations | Discovery of Plaintiffs | Discovery of Defendants/Third Parties | Work with Experts (incl retention, preparation & discovery) | Pleadings, Briefs & Pre-Trial Motions (incl legal research) | Litigation Strategy, Analysis & Case Management (incl attorney mtgs) | Court Appearances & Preparation | Settlement | Fee/Expense Proceedings | Appeals | Totals Hours | Totals Lodestar | Cumulative Hours | Cumulative Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JOHN MACORETTA | P | 775 | 58.0 | | 21.5 | 10.0 | 129.3 | 97.0 | | 127.5 | | 43.0 | 486.20 | 376,805.00 | 486.20 | 376,805.00 |
| JEFFREY KODROFF | P | 880 | 68.8 | | 226.3 | 15.0 | 163.5 | 161.5 | 38.5 | 106.0 | | 130.8 | 910.25 | 801,020.00 | 910.25 | 801,020.00 |
| JEFFREY SPECTOR | P | 525 | | | | | 50.0 | 3.8 | | | | | 53.75 | 28,218.75 | 53.75 | 28,218.75 |
| STEVE FITZGERALD | OC | 380 | | | 8.3 | | | | | | | | 8.30 | 3,154.00 | 8.30 | 3,154.00 |
| MARY ANN GEPPERT | A | 535 | 173.3 | | 282.3 | 1.3 | 495.3 | 301.8 | 2.3 | 298.0 | | 491.5 | 2,045.50 | 1,094,353.45 | 2,045.50 | 1,094,353.45 |
| CHARLES BRIGLIA | PL | 250 | | | 11.3 | | | | | | | | 11.25 | 2,812.50 | 11.25 | 2,812.50 |
| GERRI DE MARSHALL | PL | 260 | | | 14.3 | | | | | | | | 14.25 | 3,705.00 | 14.25 | 3,705.00 |
| NICOLE NORONHA | PL | 140 | | | 30.5 | | 7.0 | | | | | | 37.50 | 5,250.00 | 37.50 | 5,250.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTALS | | | 300.0 | 0.0 | 594.3 | 26.3 | 838.0 | 571.1 | 40.8 | 531.5 | 0.0 | 665.3 | 3,567.00 | 2,315,318.70 | 3,567.00 | 2,315,318.70 |

**Time Expense Report and Lodestar Summary**

## EXPENSE REPORT

| Category | Current Expense | Cumulative Expense |
|---|---:|---:|
| Assessment Payment | | 0.00 |
| Commercial Copies | | 0.00 |
| Data Extraction | | 0.00 |
| Internal Reproduction/Copies | 2,082.50 | 2,082.50 |
| Court Fees (filing fees, etc.) | 1,210.00 | 1,210.00 |
| Court Reports/Transcripts | 52.20 | 52.20 |
| Computer Research | 103,870.12 | 103,870.12 |
| Telephone/Fax/E-mail | 1,063.53 | 1,063.53 |
| Postage/Express/Delivery/Messenger | 389.90 | 389.90 |
| Professional Fees (expert, investigator, accountant, etc.) | 135,264.05 | 135,264.05 |
| Witness/Service Fees | | 0.00 |
| Travel (air/ground transportation, meals, lodging, etc.) | 11,224.79 | 11,224.79 |
| For any other expense, a detailed explanation must be included.  Use the lines below to enter the expense type/name; use the Notes area to the right to enter the detailed explanation of this expense. | | |
| Other: | | 0.00 |
| Other: | | 0.00 |
| Other: | | 0.00 |
| **TOTAL EXPENSES** | **255,157.09** | **255,157.09** |

### NOTES
Enter any additional pertinent information regarding your Time and/or Expense here:

## SNAPSHOT FOR CUMULATIVE  TOTALS

| | |
|---|---:|
| **TOTAL HOURS FOR ALL TIMEKEEPERS** | **3,567.00** |
| **TOTAL LODESTAR TO DATE** | **$2,315,318.70** |
| **TOTAL EXPENSE TO DATE** | **$255,157.09** |
| **TOTAL LODESTAR & EXPENSE TO DATE** | **$2,570,475.79** |

# EXHIBIT B

**Time Expense Report and Lodestar Summary**

| In re Google LLC Street View Litigation |
| Co-Lead Class Counsel |
| COHEN MILSTEIN SELLERS & TOLL PLLC |

**REPORTING PERIOD:** Inception to October 31, 2019

\* Professional Status (use underlined initials to designate each timekeeper's status):   **P**artner   **O**f **C**ounsel   **A**ssociate   **L**aw **C**lerk   **P**ara**L**egal

| TIME REPORT — Timekeeper Name | Professional Status * | Hourly Rate | Factual Research & Investigations | Discovery of Plaintiffs | Discovery of Defendants/Third Parties | Work with Experts (incl retention, preparation & discovery) | Pleadings, Briefs & Pre-Trial Motions (incl legal research) | Litigation Strategy, Analysis & Case Management (incl attorney mtgs) | Court Appearances & Preparation | Settlement | Fee/Expense Proceedings | Appeals | Totals Hours | Totals Lodestar | Cumulative Hours | Cumulative Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Small, Daniel | P | $940 | 14.50 | | 80.50 | 26.25 | 268.50 | 125.25 | 104.75 | 178.75 | 0.50 | 136.75 | 935.75 | 879,605.00 | 935.75 | 879,605.00 |
| Brown, Benjamin, D. | P | $810 | 14.25 | | | | 80.75 | 3.25 | | | | | 98.25 | 79,582.50 | 98.25 | 79,582.50 |
| Cormier, Christopher, J. | P | $710 | 1.00 | | | | 52.75 | 2.00 | | | | | 55.75 | 39,582.50 | 55.75 | 39,582.50 |
| Farah , George, F. | P | $675 | 61.50 | | | | 210.00 | 5.00 | | | | | 276.50 | 186,637.50 | 276.50 | 186,637.50 |
| Young, David, A. | P | $630 | 5.75 | | 269.75 | 81.25 | 295.75 | 15.50 | 13.00 | 198.75 | | 195.75 | 1,075.50 | 677,565.00 | 1,075.50 | 677,565.00 |
| Braun, Robert | A | $570 | 57.75 | | | | 6.25 | 6.75 | | 1.75 | | | 72.50 | 41,325.00 | 72.50 | 41,325.00 |
| Cobbs, Robert | A | $525 | | | | | | | 1.50 | 112.25 | | | 113.75 | 59,718.75 | 113.75 | 59,718.75 |
| Gutierrez, Alicia | SA | $525 | 9.75 | | | | | | | | | | 9.75 | 5,118.75 | 9.75 | 5,118.75 |
| Clarke, Suzanne | I | $490 | 6.50 | | | | | | | | | | 6.50 | 3,185.00 | 6.50 | 3,185.00 |
| Cacace, Robert | A | $370 | 18.50 | | 10.00 | | | 0.50 | | | | | 29.00 | 10,730.00 | 29.00 | 10,730.00 |
| Abetti, Jonathan | PL | $300 | | | | | 2.00 | | | | | | 2.00 | 600.00 | 2.00 | 600.00 |
| Noronha, Alex | PL | $300 | 5.25 | | | | | | | | | | 5.25 | 1,575.00 | 5.25 | 1,575.00 |
| Peterson, Brenda | PL | $290 | 1.00 | | | | 42.50 | | | | | | 43.50 | 12,615.00 | 43.50 | 12,615.00 |
| Cooke, William | PL | $250 | 1.50 | | | | | | | | | | 1.50 | 375.00 | 1.50 | 375.00 |
| Wentworth, Ariel | PL | $245 | 38.75 | | | | 53.25 | 1.00 | 1.50 | | | | 94.50 | 23,152.50 | 94.50 | 23,152.50 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| **TOTALS** | | | **236.00** | **-** | **360.25** | **107.50** | **1,011.75** | **159.25** | **120.75** | **491.50** | **0.50** | **332.50** | **2,820.00** | **2,021,367.50** | **2,820.00** | **2,021,367.50** |

**Time Expense Report and Lodestar Summary**

## EXPENSE REPORT

| Category | Current Expense | Cumulative Expense |
|---|---|---|
| Assessment Payment | | 0.00 |
| Commercial Copies | | 0.00 |
| Data Extraction | | 0.00 |
| Internal Reproduction/Copies | 797.20 | 797.20 |
| Court Fees (filing fees, etc.) | 565.00 | 565.00 |
| Court Reports/Transcripts | | 0.00 |
| Computer Research | 5,174.44 | 5,174.44 |
| Telephone/Fax/E-mail | 916.57 | 916.57 |
| Postage/Express/Delivery/Messenger | 563.67 | 563.67 |
| Professional Fees (expert, investigator, accountant, etc.) | 300,985.08 | 300,985.08 |
| Witness/Service Fees | 1,117.36 | 1,117.36 |
| Travel (air/ground transportation, meals, lodging, etc.) | 16,157.80 | 16,157.80 |
| For any other expense, a detailed explanation must be included.  Use the lines below to enter the expense type/name; use the Notes area to the right to enter the detailed explanation of this expense. | | |
| Other: Publications | 20.09 | 20.09 |
| Other: Clerical Overtime | 146.41 | 146.41 |
| Other: Overtime Meals and Transportation | 80.59 | 80.59 |
| **TOTAL EXPENSES** | **326,524.21** | **326,524.21** |

### NOTES

Enter any additional pertinent information regarding your Time and/or Expense here:

## SNAPSHOT FOR CUMULATIVE  TOTALS

| | |
|---|---|
| **TOTAL HOURS FOR ALL TIMEKEEPERS** | **2,820.00** |
| **TOTAL LODESTAR TO DATE** | **$2,021,367.50** |
| **TOTAL EXPENSE TO DATE** | **$326,524.21** |
| **TOTAL LODESTAR & EXPENSE TO DATE** | **$2,347,891.71** |

# EXHIBIT C

**Time Expense Report and Lodestar Summary**

| | | | |
|---|---|---|---|
| **CASE NAME: In re Google LLC Street View Litigation** | | **REPORTING PERIOD:** | |
| **Liaison Class Counsel** | | | |
| **Lieff, Cabraser, Heimann & Bernstein LLP** | | Inception - October 31, 2019 | |

\* Professional Status (use underlined initials to designate each timekeeper's status):   **P**artner   **O**f **C**ounsel   **A**ssociate   **L**aw **C**lerk   **Para**Legal

| TIME REPORT / Timekeeper Name | Professional Status * | Hourly Rate | Factual Research & Investigations | Discovery of Plaintiffs | Discovery of Defendants/Third Parties | Work with Experts (incl retention, preparation & discovery) | Pleadings, Briefs & Pre-Trial Motions (incl legal research) | Litigation Strategy, Analysis & Case Management (incl attorney mtgs) | Court Appearances & Preparation | Settlement | Fee/Expense Proceedings | Appeals | Totals Hours | Totals Lodestar | Cumulative Hours | Cumulative Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BARNETT, KATHRYN | P | 750 | 15.3 | | | 1.5 | 133.4 | 28.9 | 65.7 | 0.9 | | 13.1 | 258.80 | 194,100.00 | 258.80 | 194,100.00 |
| BYRD, KENNETH | P | 640 | | | | | | | | 1.2 | | | 1.20 | 768.00 | 1.20 | 768.00 |
| BYRD, KENNETH | A | 490 | 20.0 | | | | 241.4 | 5.6 | 8.7 | | | 0.5 | 276.20 | 135,338.00 | 276.20 | 135,338.00 |
| CABRASER, ELIZABETH | P | 1,075 | 3.0 | | | | 33.9 | 23.9 | 116.9 | 2.4 | | 65.0 | 245.10 | 263,482.50 | 245.10 | 263,482.50 |
| DELUCCHI, ARIANA | PL | 370 | | | | | | 6.1 | 2.1 | 14.2 | 8.3 | | 30.70 | 11,359.00 | 30.70 | 11,359.00 |
| GARDNER, MELISSA | P | 535 | | | | | 2.2 | 1.9 | 3.5 | 101.2 | 10.2 | | 119.00 | 63,665.00 | 119.00 | 63,665.00 |
| GARDNER, MELISSA | A | 510 | 3.5 | | | 0.1 | 33.4 | 22.4 | 6.4 | 76.0 | | | 141.80 | 72,318.00 | 141.80 | 72,318.00 |
| MIARMI, MICHAEL | P | 650 | | | | | | 0.3 | | | | | 0.30 | 195.00 | 0.30 | 195.00 |
| MIARMI, MICHAEL | A | 460 | | | | | | | | | | 100.0 | 100.00 | 46,000.00 | 100.00 | 46,000.00 |
| PARKER, BRENDA | PL | 305 | 20.8 | | | | 12.7 | 9.6 | 5.9 | | | 0.1 | 49.10 | 14,975.50 | 49.10 | 14,975.50 |
| SAGAFI, JAHAN | P | 550 | 1.2 | | | | 0.5 | 1.4 | 13.5 | | | 64.9 | 81.50 | 44,825.00 | 81.50 | 44,825.00 |
| SOBOL, MICHAEL | P | 950 | 4.3 | 0.2 | 13.3 | 17.3 | 25.7 | 41.4 | 34.6 | 71.4 | 0.2 | 31.3 | 239.70 | 227,715.00 | 239.70 | 227,715.00 |
| SUGNET, NICOLE DIANE | P | 510 | | 1.6 | 0.3 | 1.7 | | 1.1 | | | | | 4.70 | 2,397.00 | 4.70 | 2,397.00 |
| SUGNET, NICOLE DIANE | A | 435 | 0.9 | 1.8 | 2.4 | 2.2 | 5.1 | 8.9 | | | | 3.9 | 25.20 | 10,962.00 | 25.20 | 10,962.00 |
| SWENSON, YUN | PL | 360 | 10.2 | | | | 16.6 | 34.7 | 34.7 | | | 26.7 | 122.90 | 44,244.00 | 122.90 | 44,244.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTALS | | | 79.2 | 3.6 | 16.0 | 22.8 | 504.9 | 186.2 | 292.0 | 267.3 | 18.7 | 305.5 | 1,696.20 | 1,132,344.00 | 1,696.20 | 1,132,344.00 |

**Time Expense Report and Lodestar Summary**

## EXPENSE REPORT

| Category | Current Expense | Cumulative Expense |
|---|---|---|
| Assessment Payment | | 0.00 |
| Commercial Copies | 66.49 | 66.49 |
| Data Extraction | | 0.00 |
| Internal Reproduction/Copies | 7,501.60 | 7,501.60 |
| Court Fees (filing fees, etc.) | 1,622.00 | 1,622.00 |
| Court Reports/Transcripts | 10.80 | 10.80 |
| Computer Research | 18,179.45 | 18,179.45 |
| Telephone/Fax/E-mail | 901.38 | 901.38 |
| Postage/Express/Delivery/Messenger | 915.42 | 915.42 |
| Professional Fees (expert, investigator, accountant, etc.) | 107,391.16 | 107,391.16 |
| Witness/Service Fees | 284.02 | 284.02 |
| Travel (air/ground transportation, meals, lodging, etc.) | 5,163.61 | 5,163.61 |
| For any other expense, a detailed explanation must be included.  Use the lines below to enter the expense type/name; use the Notes area to the right to enter the detailed explanation of this expense. | | |
| Other: | | 0.00 |
| Other: | | 0.00 |
| Other: | | 0.00 |
| **TOTAL EXPENSES** | **142,035.93** | **142,035.93** |

### NOTES
Enter any additional pertinent information regarding your Time and/or Expense here:

## SNAPSHOT FOR CUMULATIVE  TOTALS

| TOTAL HOURS FOR ALL TIMEKEEPERS | 1,696.20 |
|---|---|
| **TOTAL LODESTAR TO DATE** | **$1,132,344.00** |
| **TOTAL EXPENSE TO DATE** | **$142,035.93** |
| **TOTAL LODESTAR & EXPENSE TO DATE** | **$1,274,379.93** |

# EXHIBIT D

# SPECTOR ROSEMAN & KODROFF

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
2001 MARKET STREET, SUITE 3420
PHILADELPHIA, PENNSYLVANIA 19103
215.496.0300
FAX 215.496.6611
http://www.srkattorneys.com
email: classaction@srkattorneys.com

## FIRM BIOGRAPHY

Spector Roseman & Kodroff, P.C. is a highly successful law firm with a nationwide practice that focuses on class actions and complex litigation, including securities, antitrust, consumer protection, and commercial claims.   The firm is active in major litigation in state and federal courts throughout the country and internationally.   The firm's reputation for excellence has been recognized by numerous courts which have appointed the firm as lead counsel in prominent class actions.   As a result of the firm's efforts, defrauded consumers and shareholders have recovered billions of dollars in damages and implemented important corporate governance reforms.   The firm is rated "AV" by Martindale-Hubbell, its highest rating for competence and integrity.

Judges throughout the country have recognized the Firm's contributions in class action cases:

- "Lead class counsel - Jeffrey Corrigan and the other lawyers from Spector Roseman & Kodroff, P.C. - performed brilliantly in this exceptionally difficult case."   *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (PSD) (E.D. Pa. Dec. 9, 2008)

- "The lawyering in this case was nothing short of superb. … I thought it was just excellent and that makes my job so much easier…"   *In re Blood Reagents Antitrust Litigation*, MDL No. 2081 (E.D. Pa.) (approval hearing October 24, 2018)

- "I think in very brief summary form, you know, that counsel for plaintiffs – for direct action plaintiffs have done an outstanding job here with representing the class, and I though your briefing was always very on point. I thought the presentation of very contentious issues on the class action motion was very well done, it was very well briefed, it was well argued."   *In re Domestic Drywall Antitrust Litigation*, MDL No. 2437 (E.D. Pa.) (approval hearing June 28, 2018)

- "Certainly the Court relies on the recommendation and work of experienced counsel, and I have indicated this before that I think [] [co-lead] counsel is – has handled this case extremely well, and I do rely on their arm's length negotiations, which I believe has gone on here."   *In re Automotive Parts Antitrust Litigation*, MDL No. 2311 (E.D. Mi.) (approval hearing February 28, 2018)

- "[Class counsel] did a wonderful job here for the class and were in all respects totally professional and totally prepared.   I wish I had counsel this good in front of

-2-

me in every case."   *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.) (approval hearing March 2, 2009)

- "I think perhaps the most important for the class is the recovery, and I think the recovery has been significant and very favorable to the class given my understanding of the risks in the litigation. And so perhaps that's always the starting point for judging and assessing the quality of representation.   The class I think was well represented, in that it got a very significant recovery in the circumstances". *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) (formerly known as Converium Holdings)

- "[O]utstanding work [of counsel] … was done under awful time constraints" and the "efforts here were exemplary…under lousy time constraints."   *In re Atheros Communications, Inc. Shareholder Litigation*, C.A. No. 6124-VCN (Del. Ch.)

- "Plaintiffs' counsel have been excellent in this complex, hard-fought litigation and innovative in its notice program and efforts to find class members."   *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, C.A. 05-11148 (D. Mass. Aug. 3, 2009)

- "Here, Plaintiffs' counsel are highly experienced in complex antitrust litigation, as evidenced by the attorney biographies filed with the Court. . . .   They have obtained a significant settlement for the Class despite the complexity and difficulties of this case."   *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, C.A. No. 03-4578 (E.D. Pa. May 19, 2005)

- "Counsel are among the most experienced lawyers the national bar has to offer in the prosecution and defense of significant class actions."   *In re Lupron Marketing and Sales Practices Litigation*, 345 F. Supp. 2d 135, 137-38 (D. Mass. 2004)

- "[T]he class attorneys in this case have worked with enthusiasm and have been creative in their attempt to compensate as many members of the consumer class as possible. . . .   This Court has consistently noted the exceptional efforts of class counsel."   *In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 80 (D. Mass. 2005)

**Antitrust Litigation**

SRK's antitrust practice group regularly oversees important antitrust cases.   Among the Firm's most significant cases are:

- *In re Automotive Parts Antitrust Litigation, MDL 12-2311 (E.D. Mich.).* SRK has been appointed Interim Co-Lead Counsel for Direct Purchaser Plaintiffs for all product cases filed (currently comprised of more than 25 different cases). These massive price-fixing class actions are being brought on behalf of direct purchasers who were overcharged for various kinds of automotive parts, including wire

-3-

harness products, heater control panels, instrument panel clusters, fuel senders, occupant safety restraint system products, bearings, air conditioning systems, starters, windshield wiper systems, windshield washer systems, spark plugs, oxygen sensors, fuel injection systems, alternators, ignition coils, and power window motors. All cases are pending before Judge Marianne Battani in the United States District Court for the Eastern District of Michigan in Detroit. SRK and its Interim Co-Lead Counsel have to date secured more than $300 million in settlements for the various classes.

- *In re Domestic Drywall Antitrust Litigation,* MDL 12-2437 (E.D. Pa.). SRK was appointed as Co-Lead Counsel for direct purchaser plaintiffs in this nation-wide price fixing class action, which resulted in combined settlements of over $190 million for the class.

- *In re Blood Reagents Antitrust Litigation*, MDL 09-2081 (E.D. Pa.). SRK was appointed sole Lead Counsel in this nation-wide, price-fixing class action. The case settled in May 2018, on the eve of trial, resulting in combined settlements of $41.5 million for the class, which was comprised of hospitals, blood banks, laboratories and the American Red Cross.

- *McDonough, et al., v. Toys R Us, et al.* (E.D. Pa.) (Brody, J.). SRK is Co-Lead Counsel for six sub-classes of Babies "R" Us' customers, a rare case involving resale price maintenance in which a purchaser class was certified. A settlement of $35.5 million was achieved on behalf of the sub-classes.

- *In re Linerboard Antitrust Litigation*, MDL No. 1261 (E.D. Pa.). SRK was appointed co-lead counsel for plaintiffs in this price-fixing antitrust action which settled for total of $202 million, the largest antitrust settlement ever in Third Circuit.

- *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (PSD) (E.D. Pa.). SRK was lead counsel for a nationwide class of direct purchasers, which settled for $120 million.

- *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.). SRK was co-lead counsel for plaintiffs in this price fixing/market allocation antitrust action which settled for $120 million.

- *In re DRAM Antitrust Litigation*, MDL No. 1486 (N.D. Cal.). SRK was a member of the executive committee in this action against all major manufacturers of "dynamic random access memory" ("DRAM"), alleging that defendants conspired to fix the prices they charged for DRAM in the United States and throughout the world. The case settled with all defendants for more than $300 million.

- *In re Vitamins Antitrust Litigation*, Misc. No. 99-0197 (D. D.C.). SRK was a member of the executive committee and co-chair of the discovery committee for

-4-

plaintiffs in this price-fixing antitrust action which settled for $300 million.

## Securities/Corporate Governance Litigation

SRK's securities practice group has actively managed important class actions involving securities fraud, winning not only significant damages but also important corporate governance reforms.   Some of the Firm's most notable cases include:

- *In re Abbott Labs-Depakote Shareholder Derivative Litigation*, Case No.: 1:11-cv-08114 (VMK) (N.D.Ill.).   As the lead counsel, SRK negotiated cutting-edge corporate reforms including new legal and regulatory compliance responsibilities at both the board and management levels, a clawback policy which goes well beyond the requirements under the Dodd-Frank Act of 2010, a change of the "tone at the top" to foster a culture of legal and regulatory compliance, "flow of information" protocols, and other significant reforms designed to address oversight deficiencies that resulted in Abbott having to pay $1.6 billion in criminal and civil penalties due to the illegal marketing and sale of its Depakote drug (the second largest penalties ever paid for off-label marketing at that time).

- *In re Lehman Brothers Holdings, Inc. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.).   SRK was one of the firms prosecuting the U.S. action against Lehman Brothers arising from a massive fraud pertaining to the credit market meltdown.   In this securities class action, SRK represents one of the lead plaintiffs, the Northern Ireland Local Government Officers' Superannuation Committee ("NILGOSC").   The case settled for over $600 million.

- *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.).   SRK was one of the co-lead counsel for the lead plaintiffs, who are European institutional bond holders, in this widely-known case, often called the "Enron of Europe."   This is a massive worldwide securities fraud action involving the collapse of an international dairy conglomerate, in which major financial institutions and accounting firms created schemes to materially overstate Parmalat's revenue, income, and assets, and understate its considerable and expanding debt.   The case has been heavily litigated for five years, resulting in settlements of $98 million.

  In addition, settlements with certain accounting firms provided that these defendants confirm their endorsement of specific corporate governance principles of behavior designed to advance investor protection and to minimize the likelihood of future deceptive transactions.   This is the first time in a Section 10(b) case that shareholders were able to negotiate corporate governance measures from a defendant other than the issuer.

- *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) (formerly known as Converium Holdings).   In the *Converium* U.S. class action, SRK was one of the co-lead counsel representing a European

-5-

institutional investor which served as one of the lead plaintiffs in that action.   The Firm negotiated a $145 million recovery for a global class of investors, which involved settling the action on two continents – *the first trans-Atlantic resolution to a securities class action*.   Part of the settlement, on behalf of foreign investors, was approved in the Netherlands under the then newly enacted Act on Collective Statement of Mass Claims.   What is particularly noteworthy about the *Converium* litigation is that the Amsterdam Court of Appeal, in a landmark decision, ruled that it had jurisdiction to declare the two international settlements of that action binding.   What makes the *Converium* decision groundbreaking is that, in addition to showing its willingness to provide an effective forum for European and other investors to settle their claims on a pan-European or even global basis, the Amsterdam Court of Appeal substantially broadened its jurisdictional reach – to the benefit of investors in this case and in future actions.   The Dutch Court secured jurisdiction even though the claims were not brought under Dutch law, the alleged wrongdoing took place outside the Netherlands, and none of the potentially liable parties and only a limited number of the potential claimants are domiciled in the Netherlands.   The decision means that European Union Member States, as well as Switzerland, Iceland and Norway, must recognize it, under the Brussels I Regulation and the Lugano Convention.   Without the approval of the settlements by the Amsterdam Court of Appeal, common stock holders of Converium, who were excluded from the U.S. action, would not have been able to recover a portion of their losses.

- *Utah Retirement Systems v. Strauss*, No. 09-cv-3221 (E.D.N.Y.).   SRK served as counsel in an individual (opt-out) action brought on behalf of the Utah Retirement Systems relating to the scandal at American Home Mortgage – one of the companies involved in the subprime market meltdown.   This action alleged violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934, as well as various state laws.   Although the monetary terms of the settlement are confidential, SRK was able to negotiate an amount that was nearly four times more than what the Utah Retirement Systems would have received had it participated in the class action.

- *In re Laidlaw, Inc. Bondholders Securities Litigation*, No. 3-00-2518-17 (D.S.C.).   SRK was a member of the Executive Committee in this complex accounting case which resulted in a settlement of $42,875,000.

- *In re Abbott Laboratories, Inc. Derivative Shareholder Litigation*, C.A. No. 99-C 07246 (N.D. Ill.) (Abbott I).   SRK was co-lead counsel for plaintiffs.   The case was dismissed twice but reversed on appeal, and settled in 2004 for substantial corporate governance reforms funded by $27 million from directors.   The ABA's *Securities Litigation Journal* called the Seventh Circuit's opinion the second most important decision in 2003.

- *Felzen v. Andreas (Archer Daniels Midland Co. Derivative Litigation)*, C.A. No. 95-2279 (C.D. Ill.).   As co-lead counsel, SRK negotiated broad corporate

-6-

governance changes in the company's board structure including strengthening the independence of the board of directors, creating corporate governance and regulatory oversight committees, requiring that the audit committee be composed of a majority of outside directors, and establishing a $8 million fund for educational seminars for directors and the retention of independent outside counsel for the oversight committees.

The Firm is in the forefront of advising and representing foreign institutional investors in U.S. class actions and in group actions in Europe, Australia and Japan.   During the past 14 years, SRK has been working with and representing various European investors and conducting educational seminars on securities class actions, as well as speaking at international shareholder and corporate governance conferences.   The Firm is currently counsel to numerous large European entities.

**Pharmaceutical Marketing Litigation**

Since 2001, the Firm has been at the vanguard of identifying and pursuing healthcare reforms.   It has developed an extensive practice in representing consumers and third-party payors in class actions against pharmaceutical companies over the unlawfully high pricing of prescription drugs.   These cases have proceeded in state and federal courts on a variety of legal theories, including state and federal antitrust law, state consumer protection statutes, common law claims of unjust enrichment, and the federal RICO statute.

As part of their work in this area, the Firm's attorneys have formally and informally consulted with the Attorneys General of a number of states who have been actively involved in drug and health care litigation.   The Attorney General of Connecticut chose SRK in a competitive bidding process to help lead the state's pharmaceutical litigation involving use of the Average Wholesale Price.   The Firm's clients also include large employee benefit plans as well as individual consumers.

Some of the Firm's important pharmaceutical cases include the following:

- SRK, as co-lead counsel, devised the legal theory for claims against most major pharmaceutical companies for using the Average Wholesale Price to inflate the price paid by consumers and third-party payors for prescription and doctor-administered drugs.   The larger AWP case, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.), was tried in part to the court in November-December 2006.   On June 21, 2007, the judge issued a 183-page opinion largely finding for plaintiffs, and requesting additional evidence on damages.   Moreover, plaintiffs have reached settlements in amounts exceeding $230 million.   SRK was co-lead counsel for the class.

- *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.). SRK, as co-lead counsel, negotiated a settlement of $150 million for purchasers of the cancer drug Lupron.

-7-

- *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, C.A. 05-11148 (D. Mass.) and *District 37 Health and Securities Fund v. Medi-Span*, C.A. No. 07-10988 (D. Mass.).   SRK was co-lead counsel for a group of third-party payors who pay for prescription drugs at prices based on the AWP.   The complaints allege that First DataBank and Medispan, two of the largest publishers of AWP, fraudulently published inflated AWP prices for thousands of drugs.   The claims against McKesson settled for $350 million. In addition, the settlement requires First DataBank and Medispan to lower the AWP price they publish for hundreds of drugs (by reducing the formulaic ratio they use to calculate AWP); and to eventually cease publishing AWP prices.   Plaintiffs' experts conservatively estimate that the savings from this settlement will be in the hundreds of millions of dollars.

- *Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.* C.A. 03-4578 (E.D. Pa.).   SRK was co-lead counsel on behalf of direct purchasers of the drug Paxil. The complaint alleged that the drug company misled the U.S. Patent and Trademark Office in obtaining the patents protecting Paxil and then used the patents to prevent lower-cost, generic versions of the drug from coming to market.   A settlement of $100 million was approved by the court.

- *In re TriCor Indirect Purchaser Antitrust Litigation*, C.A. No. 05-360 (D. Del.). SRK was co-lead counsel for indirect purchasers in prosecuting state antitrust and consumer protection claims against Abbott Laboratories and Labatoires Fournier for suppressing competition from generic versions of TriCor.   The indirect purchaser case settled for $65.7 million to the class plus a substantial settlement for opt-out insurers.

- *In re Relafen Antitrust Litigation*, C.A. No. 01-12239 (D. Mass.).   SRK was co-lead counsel for indirect purchasers in prosecuting state antitrust and consumer protection claims against GlaxoSmithKline for suppressing competition from generic versions of its drug Relafen by fraudulently obtaining a patent on the compound.   The indirect purchaser settlement for $75 million was approved by the court (the overall settlement for all plaintiffs exceeded $400 million).

- *Vista Healthplan, Inc. v. Cephalon, Inc.*, CA No. 06-1833 (E.D. Pa.) and *In re Effexor XR Antitrust Litigation*, CA No. 11-5479 (D.N.J.).   SRK is serving as co-lead counsel in on-going litigation over pay-for-delay settlements involving the drugs Provigil and Effexor XR.   The firm represented end -payors (consumers and healthplans) who were denied the chance to buy cheaper generic alternatives because of manipulation of the patent challenge and generic drug approval system by the brand name companies and some generic manufacturers.

- *In re Niaspan Antitrust Litigation* MDL No. 2460 (E.D. Pa) and *In re Suboxone Antitrust Litigation* MDL No. 2445 (E.D. Pa).   SRK was appointed to serve as

-8-

Liaison Counsel for a purported class of end payors for the drugs Niaspan and
Suboxone. In each case, the complaint alleges that the end payors were
overcharged by defendants' illegal efforts to keep generic versions off the market
which caused the class to pay supra competitive monopolistic prices.

**Privacy Litigation**

SRK is also litigation numerous cases relating to privacy.

- *In re Google Inc. Street View Electronic Communications Litigation* (N.D. Cal.).
  SRK was appointed Co-Lead Counsel for plaintiffs in this action. Google used its
  "Street View" vehicles to access wireless internet networks located in the United
  States and more than thirty countries around the world. Google's Street View
  vehicles traveled through cities and towns and collected data sent and
  received over the wireless networks they encountered, including all or part of e-
  mails, passwords, videos, audio files, and documents, as well as network names and
  router information. This data was captured and stored without the knowledge or
  authorization of class members. Plaintiffs allege that Google's conduct violated
  Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended
  by the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2511, *et seq*,
  also known as the Wiretap Act. The District Court denied Google's motion to
  dismiss and Court of Appeals for the Ninth Circuit affirmed the denial of Google's
  motion to dismiss. The panel held that Google's data collection could be a
  violation of the Wiretap Act because Wi-Fi communications are "electronic
  communications" that are not "readily accessible to the general public." The Court
  rejected Google's argument that Wi-Fi communications are "radio communication"
  and its contention that this permitted Google to freely intercept them so long as they
  are not encrypted. Google is seeking Supreme Court review.

- *In Re: Heartland Payment Systems Inc. Customer Data Security Breach* MDL No.
  2046 (S.D. TX). SRK represents banks in a class action after Heartland disclosed
  on January 20, 2009 that it had been the victim of a security breach within its
  processing system in 2008. The data stolen included the digital information
  encoded onto the magnetic stripe built into the backs of credit and debit cards; with
  that data, thieves can fashion counterfeit credit cards by imprinting the same stolen
  information onto fabricated cards.

- *In re: Target Corporation Customer Data Breach* MDL No. 14-2522 (D. Minn).
  SRK represents banks in a class-action lawsuit against Target claiming the retail
  giant ignored warnings from as early as 2007 that the company's point-of-sale
  (POS) system was vulnerable to attack, a move that put more than 40 million credit
  and debit card records at risk and compromised the personal information of up to
  an additional 70 million customers after Target's systems were penetrated by
  attackers from on or about November 27, 2013 through December 15, 2013.

<u>**PARTNERS**</u>

**EUGENE A. SPECTOR**, founding partner, has extensive experience in complex litigation, and has represented both plaintiffs and defendants in antitrust and securities. Mr. Spector has handled many high profile cases, including such antitrust class actions as *In re Linerboard Antitrust Litigation*, MDL No. 1261 (E.D. Pa.), in which he was co-lead counsel and which settled for more than $200 million, the largest antitrust case settlement ever in the Eastern District of Pennsylvania, where Judge Dubois stated: "The Court has repeatedly stated that the lawyering in this case at every stage was superb ...." 2004 WL 1221350, *6 (E.D. Pa. June 2, 2004). Mr. Spector was also co-lead counsel in *In re Relafen Antitrust Litigation*, No. 01-12239 (D. Mass.), in which a settlement of $75 million was obtained for the class, which Judge Young described as "the result of a great deal of very fine lawyering." Mr. Spector has been involved in securities class action litigation including *Rosenthal v. Dean Witter*, which resulted in a landmark decision by the Colorado Supreme Court that recognized, for the first time, that securities fraud could be proved without reliance being alleged. This precedent-setting case was important because under state securities law the reliance element sometimes proved difficult, especially when large numbers of people were involved in a class action suit.

Mr. Spector is currently serving as sole lead counsel in *In Re Blood Reagents Antitrust Litigation*, MDL No. 02081 (E.D. Pa.); as co-lead counsel in such antitrust cases as *In re Domestic Drywall Antitrust Litigation*, MDL No. 2437 (E.D. Pa.); *In Re Automotive Parts Antitrust Litigation*, MDL No. 2311 (E.D. Mich.); *McDonough, et al. v. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.*,2:06-cv-00242-AB (E.D. Pa.); *Elliott, et al. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.*,2:09-cv-06151-AB (E.D. Pa.); as a member of the direct purchaser Plaintiff's Executive Committee in *In Re Fresh and Process Potatoes Antitrust Litigation*, MDL No. 2186 (D.Id.), *as a member of the Steering Committee for all Plaintiffs in In re Online DVD Rental Antitrust Litigation,* MDL No. 2029 (N.D. Cal.), and as a member of the trial team in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL No. 1869 (D.D.C.).

Mr. Spector has served as lead or co-lead counsel for plaintiffs in numerous cases with successful results, such as:

- *In re Linerboard Antitrust Litigation*, MDL No. 1261 (E.D. Pa.) (settled for $202 million, the largest antitrust settlement ever in the Third Circuit)

- *In re Relafen Antitrust Litigation*, C.A. No. 01-12239 (D. Mass.) (a drug marketing case that settled for $75 million for indirect purchasers)

- *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.) (a price-fixing/market allocation antitrust action that settled for $120 million)

- *In re Mercedes Benz Antitrust Litigation, No. 99-4311* (D.N.J.) ( a price-fixing class action against Mercedes-Benz U.S.A. and its New York tri-state area dealers in which a $17.5 million settlement was obtained for the class)

-10-

- *Cohen v. MacAndrews & Forbes Group, Inc.*, No. 7390 (Del. Ch.) (a class action on behalf of shareholders challenging a going-private transaction under Delaware corporate law in which a benefit in excess of $11 million was obtained for the class)

Mr. Spector has also served as lead counsel or co-lead counsel in a number of other securities fraud class action cases and shareholder derivative actions: *Shanno v. Magee Industrial Enterprises, Inc.*, No. 79-2038 (E.D. Pa.) (trial counsel for defendants); *In re U.S. Healthcare Securities Litigation*, No. 88-559 (E.D. Pa.) (trial counsel); *PNB Mortgage and Realty Trust by Richardson v. Philadelphia National Bank*, No. 82-5023 (E.D. Pa.); *Swanick v. Felton*, No. 91-1350 (E.D. Pa.); *In re Surgical Laser Technologies, Inc. Securities Litigation*, No. 91-CV-2478 (E.D. Pa.); *Tolan v. Adler*, No. C-90-20710-WAI (PVT) (N.D. Cal.); *Rosenthal v. Dean Witter, Reynolds, Inc.*, No. 91-F-591 (D. Colo.); *Soenen v. American Dental Laser, Inc.*, No. 92 CV 71917 DT (E.D. Mich.); *In re Sunrise Technologies Securities Litigation*, Master File No. C-92-0948-THE (N.D. Cal.); *The Berwyn Fund v. Kline*, No. 4671-S-1991 (Dauphin Cty. C.C.P.); *In re Pacific Enterprises Securities Litigation*, Master File No. CV-92-0841-JSL (C.D. Cal.); *In re New America High Income Fund Securities Litigation*, Master File No. 90-10782-MA (D. Mass.); and *In re RasterOps Corp. Securities Litigation*, No. C-92-20349-RMW (EAI) (N.D. Cal. 1992).

Further, Mr. Spector has actively participated as plaintiffs' counsel in national class action antitrust cases, including *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, No. M-02-1486 PJH (N.D. Cal.) (executive committee); *In re Vitamins Antitrust Litigation*, Misc. No. 99-0197 (TFH) (D.D.C.) (Chair of the discovery committee); *In re Neurontin Antitrust Litigation*, MDL No. 1479 (D. N.J.) (executive committee); *Ryan-House v. GlaxoSmithKline, plc*, No. 02-CV-442 (ED Va.) (co-chair class certification committee); *In re Bulk [Extruded] Graphite Products Antitrust Litigation*, Master File No. 02-CV-06030 (D. N.J.) (chair of experts committee); *In re Publication Paper Antitrust Litigation*, No 04-MD-1631 (D. Conn.); *In re Polyester Staple Antitrust Litigation*, No. 03-CV-1576 (W.D.N.C.); *Chlorine & Caustic Soda Antitrust Litigation*, No. 86-5428 (E.D. Pa.); *In re Brand Name Prescription Drug Antitrust Litigation*, MDL No. 997 (N.D. Ill.); *Polypropylene Carpet Antitrust Litigation*, MDL No. 1075 (N.D. Ga.); *NASDAQ Market Markers Antitrust Litigation*, MDL No. 1023 (S.D.N.Y.); *Potash Antitrust Litigation*, MDL No. 981 (D. Minn.); *Commercial Tissue Products Antitrust Litigation*, MDL No. 1189 (N.D. Fla.); *High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087 (C.D. Ill.).

In 2002, Mr. Spector obtained a jury verdict of $4.5 million in *Heiser v. SEPTA*, No. 3167 July Term 1999 (Phila. C.C.P.), an employment class action.

Mr. Spector is admitted to practice in the Commonwealth of Pennsylvania; the United States Supreme Court; the United States Courts of Appeals for the First, Third, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits; and the United States District Court for the Eastern District of Pennsylvania and the Eastern District of Michigan.   He is a graduate of Temple University (B.A. 1965) and an honors graduate of Temple University School of Law (J.D. 1970), where he was an editor of the *Temple Law Quarterly*.   He served as law clerk to the Honorable Herbert B. Cohen and the Honorable Alexander F. Barbieri, Justices of the Pennsylvania Supreme Court (1970-71).

-11-

Mr. Spector has written a number of articles over the years which appeared in the *National Law Journal*, the *Legal Intelligencer*, and other trade and legal publications; and he has appeared on CNBC to discuss securities fraud.  He is a member of the American, Federal, Pennsylvania and Philadelphia Bar Associations; the American Bar Association's Antitrust and Litigation Sections and the Securities Law Sub-Committee of the Litigation Section; and the Federal Courts Committee of the Philadelphia Bar Association.  Mr. Spector has been appointed to the Advisory Board of the American Antitrust Institute and has been named as a leading U.S. plaintiffs' antitrust lawyer by Who's Who Legal Competition 2014, published by the Global Competition Review. Mr. Spector also has been appointed to serve on the Board of Visitors of the James E. Beasley School of Law of Temple University.  He is A-V rated by Martindale-Hubbell and has been named by Law & Politics to its list of Pennsylvania "Superlawyers."

**ROBERT M. ROSEMAN,** founding partner of SRK, chairs the Firm's international and domestic securities practice.  His practice focuses on investor protection issues, including the enforcement of the federal securities laws and state laws involving fiduciary duties of directors and officers, and under the laws in the various jurisdictions in Europe where group actions can be brought. An important component of his practice involves protecting U.S. and European investors in European proceedings. In that role, he works with U.S. and European institutional investors on investor protection and corporate governance matters.

Most notable example of Mr. Roseman's role is Co-Lead Counsel is in the *Converium/SCOR* action, where he prosecuted the first US securities class action settled on two continents (for a collective $145 million). The European portion of this settlement is being adjudicated before the Court of Appeal in Amsterdam using the Dutch Act on the Collective Settlements of Mass Damage Claims.   Importantly, Mr. Roseman's international expertise helped secure a key decision from the Dutch Court of Appeal in this case that will likely make it easier in the future for U.S. and European investors to claim monies recovered from actions brought in the Netherlands.

Mr. Roseman represented European institutions and was co-lead counsel in the landmark *In re Parmalat Securities Litigation* action, the largest fraud in European corporate history that is frequently referred to as Europe's Enron, which settled for $96.5 million. There, Mr. Roseman devised a unique legal theory against the bankrupt Parmalat which used Italian bankruptcy law to secure funds not normally available to investors. He also extracted corporate governance endorsements from defendants other than the issuer - a first in a US-based investor action.

Among other notable cases, Mr. Roseman represented Brussels-based KBC Asset Management in *In re Royal Dutch/Shell Securities Litigation* and Brussels-based Fortis Investments in *In re Chicago Bridge and Iron Securities Litigation.*   He represented the Northern Ireland Local Government Officers' Superannuation Committee, a UK institution, that is one of the lead plaintiffs in the US investor action involving Lehman Brothers and was co-lead counsel *In re Atheros Communications Shareholder Litigation*, in which he obtained a preliminary injunction of a merger where inadequate information about the transaction had been disclosed to shareholders.

-12-

Mr. Roseman has been at the vanguard of using securities class actions and derivative suits to implement corporate governance changes at U.S. and European companies to help them operate more effectively and reduce the likelihood that wrongdoing will occur in the future.   He litigated as lead counsel against the directors of Abbott Labs (involving off label marketing of Depakote) in which the company agreed for a four year period to implement cutting-edge, bespoke reforms addressing allegations of illegal conduct which are designed to prevent it from occurring in the future.   As co-lead counsel Mr. Roseman litigated against the directors of Archer Daniels Midland Company in which the corporation agreed to implement significant reforms which, at that time, were "state of the art" corporate governance measures designed to strengthen the independence of the board of directors.   Mr. Roseman also litigated against the directors of Abbott Laboratories (*Abbott I*) and settled the case for numerous corporate governance changes governing the way in which the board of directors addresses regulatory matters. The Seventh Circuit's landmark decision in this case was named second among the top ten securities law decisions of 2003 by the American Bar Association's *Securities Litigation Journal*.

Mr. Roseman has written extensively on securities and investor protection issues, including Global Markets, Global Fraud: What We Can Learn from Europe's Enron', *Investment and Pensions Europe* (May 2006 supp.); Cost-Effective Monitoring of Corporate Fraud: Reducing the Time Necessary to Stay Informed, *Investment and Pensions Europe* (June 2006 supp.); and A Trans-Atlantic Trend, *Professional Investor* (May 2005).   He also appeared in a roundtable discussion in *Global Pensions* (October 2006 supp.).

Mr. Roseman has been a frequent speaker at numerous U.S. and international conferences on the issues of investor protection through litigation and engagement and the importance of using corporate governance measures as part of settlements to ensure that Board of Directors act in the best interest of the Company and its shareholders. In addition to speaking at numerous conferences in the U.S., Mr. Roseman appeared as an invited speaker at institutional investor conferences held in London, Paris, Munich, Milan, Barcelona, Brussels, Paris, Frankfurt and Dublin and the Annual Conference of the International Corporate Governance Network in Amsterdam in 2004 and Paris in 2011.

Mr. Roseman obtained his J.D. in 1982 from Temple University School of Law and earned his B.S. *cum laude* in political science from the State University of New York in 1978.   He is admitted to practice in Pennsylvania and New York, as well as the United States District Courts for the Eastern District of Pennsylvania and Central District of Illinois, the U.S. Courts of Appeals for the Third and Seventh Circuits, United States Court of Federal Claims, and United States Supreme Court.   He is a member of the Philadelphia, Pennsylvania, New York State and Federal Bar Associations.

Mr. Roseman recently served or is currently serving as lead or co-lead counsel in numerous major cases, including:

- *Pension Trust Fund for Operating Engineers v. DeVry Education Group*, No. 16-cv-05198 (N.D.Ill.)

-13-

- *In re The Bancorp, Inc. Securities Litigation,* No. 14 Civ. 0952 (GMS) (D. Del.)

- *In re Abbott-Depakote Shareholder Derivative Litigation,* Case No. 1:11-cv-08114 (N.D. Ill.)

- *In re Lehman Brothers Holdings, Inc. Equity/Debt Securities Litigation*, 1:09-mdl-0217-LAK-GWG (S.D.N.Y.)

- *In re Life Partners Holdings, Inc. Derivative Litigation*, C.A. No. 2:11-CV-00043-AM (W.D. Tex.)

- *In re Atheros Communications, Inc. Shareholder Litigation*, Consolidated C.A. No. 6124-CVN (Del. Ch. Ct)

- *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) (settled for $145 million)

- *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.) (settled for $98 million)

- *In re PSINet, Inc. Securities Litigation*, Civ. No. 00-1850-A (E.D. Va.) (settled for $17,833,000 on the eve of trial)

- *Welmon v. Chicago Bridge & Iron Co. N.V.*, No. 06 Civ. 1283 (S.D.N.Y.)

Mr. Roseman is admitted to practice in the Commonwealth of Pennsylvania and the State of New York; the United States Supreme Court; the United States Court of Federal Claims; the United States Court of Appeals for the Third and Seventh Circuits; and the United States District Courts for the Eastern District of Pennsylvania and the Central District of Illinois.   He is also a member of the Philadelphia, Pennsylvania, New York State, and Federal Bar Associations.   He has lectured extensively throughout Europe on the role of private litigation in enforcing U.S. securities laws.   He earned a B.S. degree with honors in political science from the State University of New York in 1978, and a J.D. degree in 1982 from Temple University School of Law.   He is AV-rated by Martindale-Hubbell and has been named by Law & Politics to its list of Pennsylvania "Superlawyers."

**JEFFREY L. KODROFF** concentrates his practice in healthcare antitrust, securities and consumer litigation.   He was among the first attorneys to represent clients in class action litigation against national health maintenance organizations. (*Tulino v. U.S. Healthcare, Inc.*, No. 95-CV-4176 (E.D. Pa.)).   He also filed the first class action complaint against the manufacturers of the cancer drug Lupron relating to the illegal marketing practices and use of the published Average Wholesale Price.   Mr. Kodroff was co-lead counsel in *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.), which settled for $150 million.   Mr. Kodroff was also co-lead counsel in a consolidated national class action against many of the largest pharmaceutical companies in the world, including GlaxoSmithKline, BMS, J&J, Schering-Plough and

-14-

AstraZeneca, for their illegal marketing and use of a false Average Wholesale Price.  See *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.) (settlement over $300 million.)

He has also served as lead or co-lead counsel in other substantial pharmaceutical marketing cases, including *New England Carpenters Health Benefits Fund v. First Databank, Inc. and McKesson Corp.*, C.A. 05-11148 (D. Mass.); and *District 37 Health and Securities Fund v. Medi-Span*, C.A. No. 07-10988 (D. Mass. 2007).  This litigation massive class action was against pharmaceutical wholesaling giant McKesson Corporation ("McKesson") and pharmaceutical pricing publishers First DataBank, Inc. ("FDB") and Medi-Span. The case addressed an unlawful 5% mark-up in the Average Wholesale Prices ("AWPs") of various drugs, causing consumers and third party payors to overpay for pharmaceuticals. The case settled for $350 million plus an agreement to roll back AWPs by 5% thereby saving the Class and others hundreds of millions of dollars.

Mr. Kodroff has also been very active in litigation against brand named pharmaceutical companies in their attempts to keep generic drugs from entering the market.

Mr. Kodroff has served or is serving as co-lead counsel in numerous major cases, including:

- *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (E.D. Pa., Judge Paul S. Diamond) (settled for $120 million)

- *Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.* C.A. 03-4578 (E.D. Pa., Judge Padova) (settled for $150 million)

- *In re Express Scripts, Inc., PBM Litigation*, Master Case No. 05-md-01672-SNL (E.D. Mo.)

- *In re Lovenox Antitrust Litigation*, Case No. CV05-5598 (C.D. Cal.)

- *In re DDAVP Indirect Purchaser Antitrust Litigation,* Case No. 05 Civ. 2237 (S.D.N.Y.)

- *Man-U Service Contract Trust, et al. v. Wyeth, Inc. (Effexor Antitrust Litigation)* Civil Action No. 3:11-cv-05661 (D.N.J.)

- *In re: Merck Mumps Vaccine Antitrust Litigation,* Master File No. 2:12-cv-03555 (E.D. Pa., Judge C. Darnell Jones, II)

- *Vista Healthplan Inc. v. Cephalon, Inc., et al.,* Case No. 2:06-cv-1833 (E.D. Pa., Judge Mitchell S. Goldberg) (Provigil)

Mr. Kodroff has served as lead or co-lead counsel in many class action securities fraud

-15-

cases, including *In re Unisys Corporation Securities Litigation*, No. 99-CV-5333 (E.D. Pa.); *In re Dreyfus Aggressive Growth Mutual Fund Litigation*, No. 98 Civ. 4318 (HB) (S.D.N.Y.); *Kalodner v. Michaels Stores, Inc.*, No. 3:95-CV-1903-R (N.D. Tex.); *In re Valuevision International, Inc. Securities Litigation*, Master File No. 94-CV-2838 (E.D. Pa.); *In re GTECH Holdings Corp. Securities Litigation*, Master File No. 94-0294 (D.R.I.); *In re Surgical Laser Technologies, Inc. Securities Litigation*, No. 91-CV-2478 (E.D. Pa.); and *The Berwyn Fund v. Kline*, No. 4671-S-1991 (Dauphin Cty. C.C.P.).

He has also served as lead or co-lead counsel in many consumer class actions including the current case *In re Google Inc. Street View Electronic Communications Litigation,* Case No. C 10-md-02184 JW (N.D. Cal.), which arise out of Google's interception of electronic communications by its Street View vehicles.  Other consumer class actions in which Mr. Kodroff has served as lead or co-lead counsel include: *Kaufman v. Comcast Cablevision of Phila., Inc.*, No. 9712-3756 (Phila. C.C.P.); *LaChance v. Harrington*, No. 94-CV-4383 (E.D. Pa.); *Smith v. Recordex*, No. 5152, June Term 1991 (Phila. Cty. C.C.P.); *Guerrier v. Advest Inc.*, C.A. No. 90-709 (D. N.J.); and *Pache v. Wallace*, C.A. No. 93-5164 (E.D. Pa.).

Mr. Kodroff has served as a Continuing Legal Education presenter on class actions and health care issues as well as making presentations at conferences including the NCPERS Health Care Symposium and the Pennsylvania Public Employees Retirement System Conference.

He also serves on the advisory board for the Bureau of National Affairs Class Action Litigation Report. Mr. Kodroff also appeared with one of his clients before the U.S. House of Representatives, Subcommittee on Housing and Community Opportunity, Committee on Banking and Financial Services on the issue of predatory lending.

Mr. Kodroff is admitted to practice in the Commonwealth of Pennsylvania and the United States District Courts for the Middle and Eastern Districts of Pennsylvania. He is a member of the Pennsylvania, Philadelphia and American Bar Associations. A graduate of LaSalle University, where he earned his undergraduate degree in finance (magna cum laude, 1986), Mr. Kodroff received his law degree from Temple University School of Law (1989). He is a resident of Dresher, Pennsylvania.   Mr. Kodroff is AV-rated by Martindale-Hubbell.

**JEFFREY J. CORRIGAN** joined SRK in 2000 as a partner to help direct the Firm's complex antitrust litigation.  From 1990 until 2000, he was a Trial Attorney with the U.S. Department of Justice in the New York office of the Antitrust Division.

Mr. Corrigan has extensive experience investigating and prosecuting complex antitrust and other white collar criminal cases.  He was lead counsel on numerous federal grand jury investigations and has significant federal trial experience as well.  His cases include *United States v. Tobacco Valley Sanitation*, Cr. H-90-4 (D. Conn. 1991); and *United States v. Singleton*, Crim. No. 94-10066 (D. Mass. 1995). He was nominated by the Antitrust Division in 1999 for the Attorney General's Distinguished Service Award for his lead role on a major case involving bid-rigging at state courthouses in Queens and Brooklyn in New York City, which resulted in 49 guilty pleas.   *United States v. Abrishamian*, No. 98 CR 826 (E.D.N.Y. 1998).   Mr. Corrigan also played

-16-

a major part in *United States v. Canstar Sports USA, Inc.*, C.A. No. 93-7 (D. Vt. 1993), a complex civil antitrust case.

Mr. Corrigan is currently serving as sole Liaison and Interim Lead Class Counsel in *In re Blood Reagents Antitrust Litigation*, MDL 09-2081 (E.D. Pa.), a nation-wide, price-fixing class action into the market for blood reagents, which are used for testing blood. Mr. Corrigan is also currently serving as Interim Co-Lead Counsel for direct purchaser plaintiffs in *In re Domestic Drywall Antitrust Litigation*, MDL 12-2437 (E.D. Pa.), a nation-wide price fixing class action.

He has been co-lead counsel in *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (PSD) (E.D. Pa.), where a nationwide class of direct purchasers settled for $120 million; and *In re Mercedes-Benz Antitrust Litigation*, Master File No. 99-4311 (D. N.J.) (settled for $17.5 million). He was also active in *In re Linerboard Antitrust Litigation*, C.A. No. 98-5055 (E.D. Pa.), which settled for $202 million; *In re Buspirone Antitrust Litigation*, MDL Docket No.1413 (S.D.N.Y.) which in 2003 settled for $670 million for all plaintiff groups; and *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.), which settled for $120 million.

Mr. Corrigan is a 1985 graduate of The State University of New York at Stony Brook, where he earned his B.A. in economics. He received his J.D. in 1990 from Fordham University School of Law, where he was a member of the Moot Court Board. Mr. Corrigan is admitted to practice in the states of New York and New Jersey, and in the United States Court of Appeals for the Third Circuit and the D.C. Circuit; and the United States District Courts for the District of New Jersey, Southern District of New York and the Eastern District of New York.

**JOHN MACORETTA** represents both individuals and businesses in a wide variety of litigation and, occasionally, transactional matters. He currently represents consumers and healthcare payors in several cases alleging that brand name pharmaceutical companies illegally kept generic drug competitors off the market. Mr. Macoretta is also involved in electronic privacy litigation, including the *In re Google Streetview Electronic Communications Litigation*, No. 10-md-02184 (N.D. Cal.) where he is a co-lead counsel representing consumers whose private wi-fi communications were intercepted. Mr. Macoretta also represents investors in stock-broker arbitration and class-action securities fraud litigation.

He has been involved in a number of significant cases, including *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.) (where he acted as one of the trial counsel); *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.); *In re Unisys Corporation Securities Litigation*, No. 99-CV-5333 (E.D. Pa.); *Masters v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (S.D.N.Y.); *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, C.A. No. M-02-1486 PJH (N.D. Cal.).

Mr. Macoretta graduated with honors from the University of Texas Law School in 1990 and received his undergraduate degree *cum laude* from LaSalle University in 1986. He is admitted to practice in the Commonwealth of Pennsylvania and the State of New Jersey; the United States Court of Appeals for the First, Third and Ninth Circuits; and the United States District Courts in the District of New Jersey, the Eastern District of Michigan and the Middle and Eastern

Districts of Pennsylvania.  In addition to being a member of the Philadelphia Bar Association, Mr. Macoretta also serves as an arbitrator in the Philadelphia Court of Common Pleas and the US District Court.  Mr. Macoretta also serves as a *pro bono* attorney representing Philadelphia residents whose homes are facing foreclosure.

**WILLIAM G. CALDES** is a partner in the Antitrust Practice Group. He has a national practice representing plaintiffs in antitrust class actions for over twenty years.   He has represented both individual and corporate clients in class actions across the United States.  Mr. Caldes has been involved in some of the largest Antitrust cases ever litigated, including *In Re NASDAQ Market-Makers Antitrust Litigation,* MDL No. 1023 (S.D.N.Y.) which was the first antitrust case to have settlements in excess of one billion dollars to most recently being co-lead counsel in *In re Automotive Parts Antitrust Litigation,* MDL No. 2311 (E.D. Mich.), regarded as one of the largest antitrust cases to be litigated to date.

Mr. Caldes also represents several unions and their members in litigation against the pharmaceutical industry for various types of antitrust and consumer violations on behalf of the union's pension funds.   He is currently involved in *In Re Niaspan Antitrust Litigation* MDL No. 2460 (E.D.Pa.); *In re Loestrin 24 FE Antitrust Litigation*, MDL No. 2472 (D.R.I.); *In Re Lidoderm Antitrust Litigation*, MDL No. 2521 (N.D.Ca.); and *In re Aggrenox Antitrust Litigation*, MDL No. 2516 (D.Conn.).   Among other cases in which Mr. Caldes has participated are *McDonough, et al. v. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.,* No. 2:06-cv-00242-AB (E.D. Pa.); *Elliott, et al. v. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.,* No. 2:09-cv-06151-AB (E.D. Pa.); *In re Online DVD Rental Antitrust Litigation,* MDL No. 2029 (N.D. Cal.); *In re Processed Eggs Antitrust Litigation,* MDL No. 2002 (E.D. Pa.); *In re Air Cargo Shipping Services Antitrust Litigation,* MDL No. 1775 (E.D.N.Y.); *In Re: Municipal Derivatives Antitrust Litigation,* No. 1:08-md-01950-VM (S.D.N.Y.); *In Re Optical Disk Drive Products Antitrust Litigation,* No. 3:10-ms-02143-RS (N.D. Cal.); *In Re Aftermarket Filters Antitrust Litigation,* No. 1:08-cv-04883 (N.D. Ill.); *In re McKesson HBOC, Inc. Securities Litigation,* Master File No. 99-CV-20743 (N.D. Cal.); *In re K-Dur Antitrust Litigation,* MDL No. 1419 (D.N.J.); *In re Relafen Antitrust Litigation,* C.A. No. 01-12222 (D. Mass); *In re Buspirone Antitrust Litigation,* MDL No. 1413 (S.D.N.Y.); *In re Linerboard Antitrust Litigation,* C.A. No.98-5055 (E.D. Pa.); *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* No.M-02-1486 PJH (N.D. Cal.); *In re Baycol Products Litigation,* No. 1431 (D. Minn.); and *In re Vitamins Antitrust Litigation,* Misc. No. 99-0197(TFH) (D.D.C.).

Mr. Caldes is a 1986 graduate of the University of Delaware, where he earned a B.A. with a double major in Economics and Political Science.  He received his J.D. in 1994 from Rutgers School of Law at Camden, and then served as law clerk to the Honorable Rushton H. Ridgway of the New Jersey Superior Court, Cumberland County.  Mr. Caldes is admitted to practice in the Commonwealth of Pennsylvania, the State of New Jersey, the United States District Court for the District of New Jersey, the United States District Court for Eastern District of Pennsylvania and the United States Court of Appeals for the 3rd Circuit.

**JEFFREY L. SPECTOR** graduated from the Wharton School of the University of Pennsylvania in 2000 with a B.S. in Economics and concentrations in Marketing and Legal Studies.  He received his J.D. degree from Temple University in 2007.  Prior to attending law

-18-

school, Mr. Spector worked for the William Morris Agency in New York as a part of its prestigious Agent Training Program.

Mr. Spector is a partner in the Antitrust Practice Group, currently participating in *In Re Blood Reagents Antitrust Litigation*, No. 2:09-md-02081-JD (E.D. Pa.); *In re Domestic Drywall Antitrust Litigation*, No. 13-md-2437 (E.D. Pa.); *McDonough, et al. v. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.*, No. 2:06-cv-00242-AB (E.D. Pa.); *Elliott, et al. v. Toys "R" Us, Inc. d/b/a Babies "R" Us, et al.*, No. 2:09-cv-06151-AB (E.D. Pa.); and *In Re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311 (E.D. Mich.).

Mr. Spector is admitted to practice law in Pennsylvania, New Jersey, and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey, and the United States Court of Appeals for the 3rd Circuit.   He is currently a member of the American and Philadelphia Bar Associations.

### ASSOCIATES

**DIANA J. ZINSER** focuses her practice on consumer protection and healthcare litigation. She is involved in a number of cases including *In re Merck Mumps Vaccine Antitrust Litigation*, No 2:12-cv-03555 (E.D. Pa.); *In re Niaspan Antitrust Litigation*, No. 2:13-md-2460 (E.D. Pa.); *In re Suboxone Antitrust Litigation*, (E.D. Pa.), and *Vista Healthplan, Inc. v. Cephalon, Inc. et al.*, C.A. No. 2:06-cv-01833 (E.D. Pa.).   Prior to joining SRK, Ms. Zinser was an attorney with the law firm Kessler Topaz Meltzer & Check, LLC, where she was involved with antitrust and complex consumer litigation.

Ms. Zinser graduated *cum laude* from Saint Joseph's University in 2003 with a B.A. in Political Science and a minor in Economics, where she was a member of the Phi Beta Kappa, Pi Sigma Alpha, and Omicron Delta Epsilon Honor Societies.   She earned her J.D. from Temple University Beasley School of Law in 2006.   While attending law school, she received a summer fellowship from the Peggy Browning Fund and worked as a legal intern for Sheet Metal Workers Local Union No. 19.   Ms. Zinser is admitted to practice law in Pennsylvania and the United States District Court for the Eastern District of Pennsylvania.

### OF COUNSEL

**THEODORE M. LIEVERMAN** is Of Counsel to the Firm.   During his 30 years of practice, he has concentrated on civil litigation and appeals involving complex issues of federal law, including claims under the Labor Management Relations Act, the Racketeer Influenced and Corrupt Organizations Act (RICO), federal civil rights statutes, constitutional law, the Employee Retirement Income Security Act (ERISA), the Labor-Management Reporting and Disclosure Act (LMRDA), and antitrust statutes.   He has tried numerous cases to judges, juries, and administrative judges.

Mr. Lieverman was co-lead counsel in *In re TriCor Antitrust Litigation*, C.A. No. 05-360 (D. Del.) (settled for $65.7 million to end-payor class, plus settlement for opt-out health insurers);

-19-

*In re Relafen Antitrust Litigation*, C.A. No. 01-12239 (D. Mass.) (settled for $75 million to end-payors); *Cement Masons Local 699 Health & Welfare Fund v. Mylan Laboratories*, Docket No. MER-L-000431-99 (N.J. Super. L.) (part of a $147 million nationwide settlement); and lead counsel in *Penn Federation BMWE v. Norfolk Southern Corp.*, C.A. No. 02-9049 (E.D. Pa.) (settled for changes in the 401(k) plan and $1 million to plan participants).   In 2001, he was asked to file an amicus brief on behalf of a number of distinguished historians in the important copyright case of *New York Times Co. v. Tasini*, 533 U.S. 483 (2001).   He also litigated one of the leading case on the use of labor-management cooperation programs in unionized workplaces.   *E.I. duPont deNemours & Co.*, 311 NLRB No. 88 (1993).

He is admitted to practice in Pennsylvania, New Jersey and Massachusetts; the United States Supreme Court; United States Courts of Appeals for the Second, Third, Eleventh, D.C. and Federal Circuits; and the United States District Courts for the Eastern and Middle Districts of Pennsylvania, the District of New Jersey, the Eastern District of Michigan and the Southern District of New York.   He earned a B.A. with general and departmental honors in History from Vassar College and a J.D. degree from Northeastern University Law School.

Mr. Lieverman has lectured on various legal issues to lawyers and union officials and has been an adjunct professor of law at Rutgers Law School-Camden.   In 2011, he participated in the Fulbright Specialists Program by lecturing on electoral reform and U.S. constitutional law at the Faculty of Law, University of Belgrade, Serbia.   He also served as an adjunct Professor at the Faculty of Law, Vytautas Magnus University, Kaunas, Lithuania.

**MARY ANN GEPPERT** graduated *cum laude* from St. Joseph's University in 2000, with a B.S. degree in Finance.   She received her Juris Doctor degree from the Widener University School of Law in 2003, where she served as the Articles Editor of the Widener Law Symposium Journal.   She also was a legal intern for the Honorable James J. Fitzgerald of the Philadelphia Court of Common Pleas.

Among the cases in which Ms. Geppert has participated are *In re Google Inc. Street View Electronic Communications Litigation*, C.A. No. 5:10-md-02184 (N.D. Cal.); *Vista Healthplan, Inc. v. Cephalon, Inc. et al.*, C.A. No. 2:06-cv-01833 (E.D. Pa.); and *In re Merck Mumps Vaccine Antitrust Litigation*, C.A. No. 2:12-cv-03555 (E.D. Pa.).

Ms. Geppert is currently admitted to practice law in Pennsylvania, New Jersey, the United States District Court for the Eastern District of Pennsylvania, and the United States District Court for the District of New Jersey.   Ms. Geppert was named as a Pennsylvania Rising Star by *Philadelphia Magazine* in 2010 and 2013.

**RACHEL E. KOPP** focuses her practice in antitrust litigation.   She is involved in a number of significant cases, including *In re Domestic Drywall Antitrust Litigation*, No. 13-md-2437 (E.D. Pa.); *In Re Automotive Parts Antitrust Litigation*, No. 2:12-md-02311 (E.D. Mich.); *In Re Blood Reagents Antitrust Litigation*, No. 2:09-md-02081-JD (E.D. Pa.); *In Re: American Express Anti-Steering Rules Antitrust Litigation*, MDL 2221 (E.D.N.Y.); and *In Re Municipal Derivatives Antitrust Litigation*, MDL No. 1950 (S.D.N.Y.). She has also previously been heavily

-20-

involved in the following securities cases: *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.); *In Re Converium Holding AG Securities Litigation*, No. 04 Civ. 7897 (DLC) (S.D.N.Y.); *Welmon v. Chicago Bridge & Iron Co. N.V.*, No. 06 Civ. 01283 (JES) (S.D.N.Y.); and *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (D. Mass.).

Ms. Kopp has also been actively involved in the Philadelphia and American Philadelphia Bar Associations.  Most recently, Ms. Kopp finished serving a three-year term on the Philadelphia Bar Association Board of Governors.  Ms. Kopp has also served as the American Bar Association Young Lawyers Division (ABA YLD) liaison to the ABA Standing Committee on Membership; the Membership Director of the ABA YLD, which is comprised of approximately 150,000 young lawyers worldwide; and the ABA YLD's Administrative Director. In recognition of her service to the ABA YLD, Ms. Kopp has received Star of the Year awards at several ABA Annual Meetings.

Ms. Kopp earned her Juris Doctor degree from Villanova University Law School, where she received a Public Interest Summer Fellowship, to serve as a legal intern at New York Volunteer Lawyers for the Arts and VH1 *Save The Music*. She received a B.A. in Government and Politics from the University of Maryland, where she concentrated in languages and studied abroad in Florence, Italy.  Ms. Kopp is admitted to practice in Pennsylvania and New Jersey, as well as in the U.S. Court of Appeals for the Third Circuit and the U.S. District Court for the Eastern District of Pennsylvania.

# EXHIBIT E

COHENMILSTEIN

www.cohenmilstein.com
2606460 v1

# COHEN  MILSTEIN  SELLERS  & TOLL PLLC

For decades, Cohen Milstein Sellers & Toll PLLC has represented individuals, small businesses, institutional investors, and employees in many of the major class action cases litigated in the United States for violations of the antitrust, securities, consumer protection, civil rights/discrimination, ERISA, employment, and human rights laws. Cohen Milstein is also at the forefront of numerous innovative legal actions that are expanding the quality and availability of legal recourse for aggrieved individuals and businesses both domestic and international.  Over its history, Cohen Milstein has obtained many landmark judgments and settlements for individuals and businesses in the United States and abroad. The firm's most significant successes include:

- New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group PLC et al. No. 1:08-cv-05310-DAB-HBP (S.D.N.Y.): On March 8, 2019, the Honorable Deborah A. Batts granted final approval to a $165 million all-cash settlement, bringing this lawsuit, the last of 11 MBS class actions Cohen Milstein successfully handled, to conclusion. Cohen Milstein was lead counsel in this certified MBS class action.

- In re Lidoderm Antitrust Litigation No. 3:14-md-02521 (N.D. Cal.): Plaintiffs allege that Endo and Teikoku, manufacturers of the Lidoderm patch, paid Watson Pharmaceuticals to delay its generic launch. The case settled on the eve of trial and on September 20, 2018, plaintiffs obtained final approval of a $104.75 million settlement – more than 40% of plaintiffs' best-case damages estimate. This case was ranked by Law360 as "The Biggest Competition Cases Of 2017 So Far" (July 7, 2017).

- In re Domestic Drywall Antitrust Litigation No. 2:13-md-02437 (E.D. Pa.): Cohen Milstein served as co-lead counsel for a class of direct purchasers of drywall against drywall manufacturers for price-fixing. The court approved settlements that total more than $190 million. The court commented that it had sided with plaintiffs because of counsel's "outstanding work," and that plaintiffs' counsel had a "sophisticated and highly professional approach." It complemented the attorneys as "highly skilled" and noted that their performance on class action issues was "imaginative." It also stated, "Few cases with no government action, or investigation, result in class settlements as large as this one."

- In re Anthem Data Breach Litigation No. 15-MD-02617-LHK (N.D. Cal.): On August 16, 2018, the Honorable Lucy H. Koh in the U.S. District Court for the Northern District of California granted final approval to a $115 million settlement – the largest data breach settlement in U.S. history – ending claims that Anthem Inc., one of the nation's largest for-profit managed health care companies, put 78.8 million customers' personal information, including social security numbers and health date, at risk in a 2015 data breach. Cohen Milstein was co-lead counsel.

- Moody's Litigation: Represented the co-lead state Mississippi and represented New Jersey in the $864 million consumer fraud settlement achieved in January 2017 by 22 states and the U.S. Department of Justice with Moody's Corporation, Moody's Investors Service, Inc., and Moody's Analytics, Inc. Together with the S&P settlement, these cases against the nation's two largest credit rating agencies produced key industry reforms that provide greater transparency for consumers and that divested the credit rating agencies of more than $2.2 billion for their conduct contributing to the national housing crisis and the Great Recession.

- S&P Litigation: Represented co-lead state Mississippi in the $1.375 billion-dollar consumer fraud settlement achieved in 2015 by 20 states and the U.S. Department of Justice with Standard & Poor's.  Together with the Moody's settlement, these cases against the nation's two largest credit rating agencies produced key industry

reforms that provide greater transparency for consumers and that divested the credit rating agencies of more than $2.2 billion for their conduct contributing to the national housing crisis and the Great Recession.

- In re BP Securities Litigation No. 4:10-MD-02185 (S.D. Tex.): Cohen Milstein represented the New York State Common Retirement Fund as co-lead plaintiff in a securities class action filed in 2010, alleging that BP injured investors by intentionally downplaying the severity of the Deepwater Horizon oil spill and preventing investors from learning the magnitude of the disaster. After successfully arguing for class certification to the district court, Cohen Milstein presented plaintiffs' defense of that court's decision to the U.S. Court of Appeals for the Fifth Circuit, which affirmed the class. The case settled for $175 million a few weeks before trial was set to begin.

- In re Animation Workers Litigation No. 5:14-cv-04062 (N.D. Cal.): Cohen Milstein served as co-lead counsel representing a class of animation and visual effects workers who allege that Pixar, Lucasfilm, DreamWorks and other studios conspired to suppress their pay. The court granted final approval of $168.5 million in settlements. To our knowledge, this is the most successful no-poach case ever filed in U.S. history, achieving an average recovery per class member of nearly $14,000.

- HEMT MBS Litigation No. 1:08-cv-05653 (S.D.N.Y.): On May 10, 2016, U.S. District Judge Paul A. Crotty finally approved a $110 million settlement in the mortgage-backed securities class action brought by investors against Credit Suisse AG and its affiliates. This settlement ends claims brought by the New Jersey Carpenters Health Fund and other investors who claimed that the offering documents for the mortgage-backed securities at issue violated the Securities Act as they contained false and misleading misstatements concerning compliance with underwriting standards.

- In re Urethane Antitrust Litigation (Polyether Polyol Cases) MDL No: 1616 (D. Kan.): Cohen Milstein served as co-lead counsel on behalf of a class of direct purchasers of chemicals used to make many everyday products, from mattress foam to carpet cushion, who were overcharged as a result of a nationwide price-fixing conspiracy. On February 25, 2016, Cohen Milstein reached an agreement with The Dow Chemical Company to settle the case against Dow for $835 million. Combined with earlier settlements obtained from Bayer, Huntsman, and BASF, the Dow settlement pushed the total settlements in the case to $974 million. The settlement was approved on July 29, 2016.

- RALI MBS Litigation No. 08-8781 (S.D.N.Y.): On July 31, 2015, Judge Katherine Failla gave final approval to a $235 million settlement with underwriters Citigroup Global Markets Inc., Goldman Sachs & Co., and UBS Securities LLC. She also approved a plan for distribution to investors of those funds as well as the previously approved $100 million settlement with RALI, its affiliates, and the individual Defendants that was reached in in 2013. This global settlement marks an end to a long and complicated class action over MBS offerings that RALI and certain of its affiliates issued and sold to the New Jersey Carpenters Health Fund and other investors from 2006 through 2007. The case took seven years of intense litigation to resolve.

- In re: Bear Stearns Mortgage Pass-Through Certificates Litigation No. 08-08093 (S.D.N.Y.): On May 27, 2015, U.S. District Judge Laura Taylor Swain finally approved a class action settlement with JPMorgan Chase & Co., which agreed to pay $500 million and up to an additional $5 million in litigation-related expenses to resolve claims arising from the sale of $27.2 billion of mortgage-backed securities issued by Bear Stearns & Co. during 2006 and 2007 in 22 separate public offerings.

- Harborview MBS Litigation No. 08-5093 (S.D.N.Y.): In February 2014, Cohen Milstein reached a settlement with the Royal Bank of Scotland (RBS) in the Harborview MBS Litigation, resolving claims that RBS duped investors into buying securities backed by shoddy home loans.  The $275 million settlement is the fifth largest class action settlement in a federal MBS case.  This case is one of eight significant MBS actions that Cohen Milstein has been

named lead or co-lead counsel by courts and one of three that were nearly thrown out by the court, only to be revived in 2012.

- <u>In Re Electronic Books Antitrust Litigation</u> No. 11-md-02293 (S.D.N.Y.): In August 2014, a New York federal judge approved a $400 million antitrust settlement in the hotly contested ebooks price-fixing suit against Apple Inc. Combined with $166 million in previous settlements with five defendant publishing companies, the final settlement totaled more than $560 million. The settlement resolves damages claims brought by a class of ebook purchasers and attorneys general from 33 U.S. states and territories.

- <u>Countrywide MBS Litigation</u> No. 2:10-cv-00302 (C.D. Cal.): In April 2013, plaintiffs in the landmark mortgage-backed securities (MBS) class action litigation against Countrywide Financial Corporation and others, led by Lead Plaintiff, the Iowa Public Employees' Retirement System (IPERS), agreed to a $500 million settlement. It is the nation's largest MBS-federal securities class action settlement.  The settlement was approved in December 2013 and brings to a close the consolidated class action lawsuit brought in 2010 by multiple retirement funds against Countrywide and other defendants for securities violations involving the packaging and sale of MBS. The settlement is also one of the largest (top 20) class action securities settlements of all time.

- <u>In re Beacon Associates Litigation</u> No. 09-cv-0777 (S.D.N.Y): Class action settlement of $219 million for trustees and participants in ERISA-covered employee benefit plans whose assets were lost through investments made on their behalf by Beacon Associates LLC I & II in the investment schemes of Bernard Madoff.

- <u>In re Plasma-Derivative Protein Therapies Antitrust Litigation</u>  No. 09 C 7666 (N.D Ill.): After four years of litigation, in October of 2013, CSL Limited, CSL Behring LLC, CSL Plasma, Inc. (collectively, "CSL"), and the Plasma Protein Therapeutics Association ("PPTA") agreed to pay $64 million dollars to settle a lawsuit brought by the University of Utah Hospital and other health care providers alleging that CSL, the PPTA, and Baxter agreed between 2003-2009 to restrict the supply of immunoglobulin and albumin and thereby increase the prices of those therapies. Two months later, Baxter International Inc. and Baxter Healthcare Corp. (collectively "Baxter") agreed to pay an additional $64 million to settle these claims – bringing the total recovery to the class to $128 million.

- <u>Keepseagle v. Vilsack</u> Civil Action No. 1:99CV03119 (D.D.C.): A class of Native American farmers and ranchers allege that they have been systematically denied the same opportunities to obtain farm loans and loan servicing that have been routinely afforded white farmers by the USDA.  A class was certified in 2001 by Judge Emmet Sullivan, District Judge for the U.S. District Court for the District of Columbia, and the D.C. Circuit declined USDA's request to review that decision.  On October 19, 2010, the case reached a historic settlement, with the USDA agreeing to pay $680 million in damages to thousands of Native American farmers and ranchers and forgive up to $80 million worth of outstanding farm loan debt.

- <u>In re Parmalat Securities Litigation</u> No. 1:04-md-1653 (S.D.N.Y.): Cohen Milstein, as co-lead counsel, successfully negotiated several settlements totaling approximately $90 million, including two settlements with Parmalat's outside auditors.  Judge Lewis A. Kaplan remarked that plaintiffs' counsel "did a wonderful job here for the class and were in all respects totally professional and totally prepared.  I wish I had counsel this good in front of me in every case."  Parmalat's bankruptcy filing was the biggest corporate bankruptcy in Europe, and in December 2003, the U.S. Securities and Exchange Commission filed a suit charging Parmalat with "one of the largest and most brazen corporate financial frauds in history." During the litigation, the company subsequently emerged from bankruptcy, as a result we added "New Parmalat" as a defendant because of the egregious fraud committed by the now-bankrupt old Parmalat.  New Parmalat strenuously objected and Judge Kaplan of the Southern District of New York ruled in the class plaintiffs' favor, a ruling which was affirmed on appeal.  This

www.cohenmilstein.com
2606460 v1

innovative approach of adding New Parmalat enabled the class to obtain an important additional source of compensation, as we subsequently settled with New Parmalat for shares worth approximately $26 million.

- Dukes v. Wal-Mart Stores, Inc. No. C-01-2252 (N.D. Cal.): Cohen Milstein is co-lead counsel in this sex discrimination case.  In 2004, the U.S. District Court certified a nationwide class action lawsuit for all female employees of Wal-Mart who worked in U.S. stores anytime after December 26, 1998.  This was the largest civil rights class action ever certified against a private employer, including approximately 1.5 million current and former female employees.  That ruling was appealed, and while affirmed by the Ninth Circuit, was reversed by the Supreme Court in June 2011. Cohen Milstein argued the case for the plaintiffs-respondents in the Supreme Court.   Since then, the *Dukes* action has been amended to address only the Wal-Mart regions that include stores in California, and other regional class cases have been or are soon to be filed.  This litigation to resolve the merits of the claims – whether Wal-Mart discriminates against its female retail employees in pay and promotions – continues.

- Rubin v. MF Global, Ltd. No. 08-CV-02233 (S.D.N.Y.): Acting as co-lead counsel in this class action, the Firm represented the Central States, Southeast and Southwest Areas Pension Fund which was one of the co- lead plaintiffs in the case.   In September 2010, as a result of Plaintiffs' decision to appeal, the U.S. Second Circuit Court of Appeals vacated in part the lower court's dismissal of the case and remanded the case for further proceedings.  In overturning the District Court decision, the Second Circuit issued a decision which differentiated between a forecast or a forward looking statement accompanied by cautionary language -- which the Appellate Court said would be insulated from liability under the bespeaks caution doctrine -- from a factual statement, or non-forward-looking statement, for which liability may exist.  Importantly, the Second Circuit accepted Plaintiffs' position that where a statement is mixed, the court can sever the forward-looking aspect of the statement from the non-forward looking aspect. The Court further stated that statements or omissions as to existing operations (and present intentions as to future operations) are not protected by the bespeaks caution doctrine. Mediation followed this decision and resulted in a settlement comprised of $90 million in cash.

- Hughes v. Huron Consulting Group No. 09-CV-04734 (N.D. Ill.): Cohen Milstein represented lead plaintiffs the Public School Teachers' Pension & Retirement Fund of Chicago and the Arkansas Public Employees Retirement System ("APERS") in this case against Huron Consulting Group, founded by former Arthur Anderson personnel following its collapse in the wake of the Enron scandal.   In August 2010, the District Court for the Northern District of Illinois denied defendants' motions to dismiss in their entirety and upheld plaintiffs' allegations that defendants intentionally improperly accounted for acquisition- related payments, which allowed plaintiffs to move forward with discovery.  The case was settled for $40 million, comprised of $27 million in cash and 474,547 shares in Huron common stock, with an aggregate value at the time of final approval in 2011 of approximately $13 million.

- In re Lucent Technologies Securities Litigation No. 00-621 (D.N.J.):  A settlement in this massive securities fraud class action was reached in late March 2003.   The class portion of the settlement amounts to over $500 million in cash, stock and warrants and ranks as the second largest securities class action settlement ever completed. Cohen Milstein represented one of the co-lead plaintiffs in this action, a private mutual fund.

- Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al. No. 00-015 (Knox County Superior Court, Me.):  In 2004, a state court jury from Maine found three blueberry processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy that artificially lowered the prices    defendants    paid   to approximately 800 growers for wild blueberries.    The jury ordered defendants Cherryfield Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy.  After a mandatory trebling of this

damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million.  The Firm served as co-lead counsel.

- In re StarLink Corn Products, Liability Litigation MDL No. 1403 (N.D. Ill.):  Cohen Milstein successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds.  StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes, but never approved for human consumption.   However, StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply.  The Firm, as co-lead counsel, achieved a final settlement providing more than $110 million for U.S. corn farmers, which was approved by a federal district court in April 2003.  This settlement was the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

- Snyder v. Nationwide Mutual Insurance Company No. 97/0633 (Sup. Ct. N.Y. Onondaga Cty.).  Cohen Milstein served as one of plaintiffs' principal counsel in this case on behalf of persons who held life insurance policies issued by Nationwide through its captive agency force.   The action alleged consumer fraud and misrepresentations.  Plaintiffs obtained a settlement valued at more than $85 million.  The judge praised the efforts of Cohen Milstein and its co-counsel for having done "a very, very good job for all the people."  He complimented "not only the manner" in which the result was arrived at, but also the "time … in which it was done."

- Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al. No. 1:01CV02313 (D.D.C.): Cohen Milstein has been co-lead counsel in this case since its inception in 2001. Plaintiffs alleged that Bristol-Myers Squibb unlawfully monopolized the United States market for paclitaxel, a cancer drug discovered and developed by the United States government, which Bristol sells under the brand name Taxol. Bristol's scheme included a conspiracy with American BioScience, Inc., a generic manufacturer, to block generic competition. Cohen Milstein's investigation and prosecution of this litigation on behalf of direct purchasers of Taxol led to a settlement of $65,815,000 that was finally approved by U.S. District Judge Emmet G. Sullivan on August 14, 2003 and preceded numerous Taxol-related litigations brought by the Federal Trade Commission and State Attorneys General offices.

- Kruman v. Christie's International PLC, et al. No. 01-7309 (S.D.N.Y.): A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was approved in this action.  Cohen Milstein served as one of three leading counsel on behalf of foreign plaintiffs. The Court noted that approval of the settlement was particularly appropriate, given the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation.   The settlement marked the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have been resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

- Roberts v. Texaco, Inc. 94-Civ. 2015 (S.D.N.Y.):   Cohen Milstein represented a class of African-American employees in this landmark litigation that resulted in the then-largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief).  The Court hailed the work of class counsel for, *inter alia,* "framing an imaginative settlement, that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole …".

- Trotter v. Perdue Farms, Inc. No. 99-893 (D. Del.):  This suit on behalf of hourly workers at Perdue's chicken processing facilities – which employ approximately 15,000 people – forced Perdue to pay employees for time spent "donning and doffing," that is, obtaining, putting on, sanitizing and removing protective equipment that they must use both for their own safety and to comply with USDA regulations for the safety of the food supply.

The suit alleged that Perdue's practice of not counting donning and doffing time as hours worked violated the Fair Labor Standards Act and state law. In a separate settlement with the Department of Labor, Perdue agreed to change its pay practices.  In addition, Perdue is required to issue retroactive credit under one of its retirement plans for "donning and doffing" work if the credit would improve employees' or former employees' eligibility for pension benefits.  Cohen Milstein was co-lead counsel.

## Awards & Recognition

- In 2019, Lawdragon named 15 Cohen Milstein lawyers to is 2019 **"500 Leading Plaintiff Financial Lawyers"** list.

- In 2019, Cohen Milstein's Carol V. Gilden was recognized as a **"Chicago Women of Influence"** by the *Chicago Business Journal.*

- In 2019, Law360 named Cohen Milstein's Mary Bortscheller a **"Rising Star."**

- In 2019, *The Best Lawyers in America* named 12 Cohen Milstein attorneys to its 2020 **"Best Lawyers in America"** list.

- In 2019, *The Best Lawyers in America* named Cohen Milstein's Karen L. Handorf as **"ERISA Litigation Lawyer of the Year – Washington, DC."**

- In 2019, *The Best Lawyers in America* named Cohen Milstein's Stephan A. LeClainche **"Medical Malpractice Lawyer of the Year – West Palm Beach, FL."**

- In 2019, Public Justice Foundation named Cohen Milstein one of five finalists for the **"Trial Lawyer of the Year Award."**

- In 2019, Cohen Milstein's Environmental Toxic Tort practice was named a winner of The National Law Journal's **"Elite Trial Lawyers" Award,** and Cohen Milstein's Agnieszka Fryszman and Sharon Robertson were named winners of *The National Law Journal's* **"Elite Women of the Plaintiffs Bar" Award.**

- In 2019, six of Cohen Milstein lawyers were named among the **"Lawdragon 500 Leading Plaintiff Consumer Lawyers."**

- In 2019, Cohen Milstein's Carol V. Gilden received Lawyer Monthly Magazine's **"Women in Law Award."**

- In 2019, four of Cohen Milstein partners were named to Benchmark Litigation's **"40 & Under Hot List."**

- In 2019, Cohen Milstein's Christine E. Webber received the Washington Lawyers' Committee for Civil Rights and Urban Affairs' **"Roderic V.O. Boggs Award."**

- In 2019, Cohen Milstein's Nicholas C. Johnson and Poorad Razavi were named to Florida Trend's **"Legal Elite."**

- In 2019, Cohen Milstein's Nicholas C. Johnson was appointed to serve on the **AAJ Board of Governors.**

- In 2019, *The National Law Journal* named Cohen Milstein an **"Elite Trial Lawyer"** finalist in five practice areas and named Agnieszka Fryszman and Sharon Robertson **"Elite Women of the Plaintiffs Bar."**

- In 2019, *Law360's* 2019 Glass Ceiling Report named Cohen Milstein among **"The Best Law Firms for Female Attorneys."**

- In 2019, *The Legal 500* recognized Cohen Milstein's Antitrust, Civil Rights & Employment, Products Liability, and Securities Litigation practices as **"Leading Practices,"** and named seven Cohen Milstein attorneys among their **"Leading Lawyers," "Next Generation Lawyers,"** and **"Rising Stars."**

- In 2019, Cohen Milstein was named to *The National Law Journal's* **"Pro Bono Hot List."**

- In 2019, 21 Cohen Milstein attorneys were recognized as **"Super Lawyers,"** and nine Cohen Milstein attorneys were recognized as **"Rising Stars."**

- In 2019, Cohen Milstein's Takisha D. Richardson was named a **Florida Bar Association's Wm. Reece Smith, Jr. Leadership Academy Fellow.**

- In 2019, six of Cohen Milstein's Civil Rights & Employment Litigation lawyers were named among the **"Lawdragon 500 Leading Plaintiff Employment Lawyers 2019."**

- In 2019, the *Daily Business Review* honored Cohen Milstein with three Professional Excellence Awards, including Theodore J. Leopold, **DBR's 2019 "Distinguished Leaders" award,** Nicolas C. Johnson, **DBR's 2019 "On the Rise" award,** and the firm's Sexual Abuse, Sex Trafficking, and Domestic Violence Litigation team, **DBR's 2019 "Innovative Practice Areas" award.**

- In 2019, four Cohen Milstein lawyers received **"The Burton Awards' Law360 Distinguished Legal Writing Award - Law Firm."**

- In 2019, nine Cohen Milstein lawyers were named among the **"Lawdragon 500 Leading Lawyers in America."**

- In 2018, *The National Law Journal* and *Trial Lawyer Magazine,* named Steven J. Toll and Betsy A. Miller among **"America's 50 Most Influential Trial Lawyers."**

- In 2018, *Law360* named Cohen Milstein **"Practice Group of the Year"** in two categories: Consumer Protection and Environmental.

- In 2018, *Law360* named three partners MVP in the respective practices, including: Theodore J. Leopold as *Law360's* **Environmental MVP,** Andrew N. Friedman as *Law360's* **Cybersecurity and Privacy MVP**, and Kalpana Kotagal as *Law360's* **Employment MVP.**

- In 2018, The *National Law Journal* named Cohen Milstein winner of **"Elite Trial Lawyer of the Year"** in four categories, including Consumer Protection, Counterterrorism, Immigration, and Financial Products, and finalist in five other categories, including Antitrust, Civil Rights, Disability Rights, Employment Rights, and Racial Discrimination.

- In 2018, *The National Law Journal* named Kalpana Kotagal, Betsy A. Miller, and G. Julie Reiser – **"Elite Women of the Plaintiffs Bar."**

- In 2018 the *Daily Business Review* named Stephan A. LeClainche and Diana L. Martin as one of its **"Most Effective Lawyers"** for Medical Malpractice and Pro Bono, respectively.

- In 2018, A Better Balance presented Kalpana Kotagal with **"A Better Balance: The Work & Family Legal Center's Distinguished Public Service Award."**

- In 2018, the American Antitrust Institute honored Sharon K. Robertson with its **"Outstanding Antitrust Litigation Achievement Award."**

- In 2018, the NAACP honored Cohen Milstein with its **"Foot Soldier in the Sand Award,"** in recognition of the firm's outstanding commitment to providing pro bono legal services.

- In 2018, *The Best Lawyers in America* recognized eleven Cohen Milstein attorneys as among the **Best Lawyers in America (2019),** in their respective areas of law.

- In 2018, *The Best Lawyers in America* singled out and named Joseph M. Sellers **"The Best Lawyers in America 2019, Labor Law Lawyer of the Year – Washington, D.C."**

- In 2018, *The Best Lawyers in America* singled out and named Milstein's Leslie M. Kroeger **"The Best Lawyers in America 2019, Mass Tort Litigation / Class Actions "Lawyer of the Year – West Palm Beach, FL."**

- In 2018, *Palm Beach Illustrated* named seven Cohen Milstein attorneys to its ""Top Lawyers" List."

- In 2018, *Benchmark Litigation* named four Cohen Milstein attorneys to its **"40 & Under Hot List."**

- In 2018, *Florida Trend* named five Cohen Milstein attorneys to its list of **"Florida's Legal Elite."**

- In 2018, Lawdragon 500 named five Cohen Milstein attorneys to **"Leading Plaintiff Employment Lawyers."**

- In 2018, *Crain's* named Carol V. Gilden one of Chicago's **"Notable Women Lawyers."**

- In 2018, Harvard Law School named Kalpana Kotagal a **"Wasserstein Fellow."**

- In 2018, *Chambers USA Women in Law* honored Kalpana Kotagal with its **"Outstanding Contribution to the Community in Advancing Diversity Award."**

- In 2018, the *New York Law Journal* named Sharon K. Robertson to its list of **"New York Rising Stars."**

- In 2018, *The Legal 500: Guide to the US Legal Profession* listed Cohen Milstein's **Antitrust**, **Employment Disputes**, and **Securities Litigation** practices among its **"Leading Practices."**

- In 2018, the *Daily Business Review* named Leslie M. Kroeger a **"Distinguished Leader."**

- In 2018, *Law360* named Steven J. Toll a 2018 **"Titan of the Plaintiffs Bar."**

- In 2018, Leslie M. Kroeger was sworn-in as President-Elect to the Florida Justice Association.
- In 2018, Lawdragon named seven Cohen Milstein attorneys to the 2018 **"Lawdragon 500,"** an annual list of the **500 Leading Lawyers in America**.
- In 2018, Theodore J. Leopold was recognized as an **"Energy and Environmental Trailblazer"** by *The National Law Journal.*
- In 2018, *Super Lawyers* recognized 20 Cohen Milstein attorneys as **"2018 Super Lawyers"** and 12 Cohen Milstein attorneys as **"Super Lawyer Rising Stars."**
- In 2017, *Law360* named Cohen Milstein a **"Practice Group of the Year: Privacy."**
- In 2017, Steven J. Toll was named a *Law360* **"MVP – Class Action."**
- In 2017, the *Daily Business Review* named Theodore J. Leopold a **"Most Effective Lawyer of 2017: Class Action**."
- In 2017, Joel Laitman, Christopher Lometti, Betsy Miller, and Victoria Nugent were named *The National Law Journal's* **"Plaintiffs' Lawyers Trailblazers**."
- In 2017, *The Best Lawyers in America* recognized seven Cohen Milstein partners as among the "**Best Lawyers in America"** for their respective practices of law.
- In 2017, *Law360* named Cohen Milstein partners, S. Douglas Bunch and Kalpana Kotagal as **"Rising Stars."**
- In 2017, *The Legal 500* named Cohen Milstein a **Leading Firm** in "Antitrust: Civil Litigation / Class Actions" and "Dispute Resolution: Securities Litigation – Plaintiff."
- In 2017, *The Legal 500* named Richard A. Koffman to its **"Legal 500 Hall of Fame."**
- In 2017, *Legal 500* named Sharon K. Robertson and Brent W. Johnson as **"Legal 500 Next Generation Lawyer"** in the area of Antitrust: Civil Litigation/Class Actions.
- In 2017, *Super Lawyers* named Brent W. Johnson as a **"Rising Star"** and a **"Top Rated Antitrust Litigation Attorney in Washington, DC."**
- In 2017, *Super Lawyers* named Leslie M. Kroeger, Stephan A. Le Clainche, and Theodore J. Leopold **"Florida Super Lawyers"** and Nicholas C. Johnson and Adam J. Langino **"Florida Rising Stars."**
- In 2017, the Coalition for Independent Living Options Inc. presented Michael Dolce a Special Acknowledgment Award for his **"Commitment to Ending Sex Crimes against People with Disabilities."**
- In 2017, Adam J. Langino was elected American Association for Justice's Newsletter Chair for the Product Liability Section.
- In 2017, *Florida Trend* named Manuel J. Dominguez a **"Legal Elite."**
- In 2017, Nicholas C. Johnson was elected President of the F. Malcolm Cunningham, Sr. Bar Association.
- In 2017, Leslie M. Kroeger was elected Treasurer to the Florida Justice Association.
- In 2017, *South Florida Legal Guide* named Theodore J. Leopold as a **"Top Lawyer,"** and Diana L. Martin and Adam Langino a **"Top Up and Comer."**
- In 2016, *Law360* selected Cohen Milstein as a **"Competition Practice Group of the Year"** and a **"Class Action Practice Group of the Year."**
- In 2016, Women in Wealth Awards selects Carol V. Gilden Selected as **"Best in Securities Litigation Law - Illinois & Excellence Award for Investor Protection Law."**
- In 2016, Richard A. Koffman was named a *Law360* **"MVP – Competition Law."**
- In 2016, Martha Geer was selected as a "**North Carolina Leaders in the Law Honoree."**
- In 2016, the Washington Lawyers' Committee for Civil Rights and Urban Affairs named Cohen Milstein a recipient of its **"Outstanding Achievement Award."**
- In 2016, for the eighth consecutive year, Cohen Milstein was recognized by *The Legal 500* as one of the leading plaintiff class action antitrust firms in the United States.

- In 2016, Agnieszka Fryszman, Joel Laitman, Chris Lometti, Kit Pierson, Joe Sellers and Steve Toll were named to the **2016 Lawdragon 500 Leading Lawyers in America.**
- In 2016, *Law360* named Julie Goldsmith Reiser one of the **"25 Most Influential Women in Securities Law."**
- In 2016, Cohen Milstein is named to *The National Law Journal's* **"Plaintiffs Hot List"** for the fifth time in six years.
- In 2016, *Law360* named Cohen Milstein as one of the top firms for female attorneys.
- In 2015, *Law360* named Cohen Milstein as the sole plaintiffs firm to be selected in two **"Practice Groups of the Year"** categories and one of only five class action firms recognized.
- In 2015, Cohen Milstein was named an **"Elite Trial Lawyer Firm"** by *The National Law Journal* for the second year in a row.
- In 2015, Steven J. Toll named a *Law360* **"MVP – Securities Law."**
- In 2015, Cohen Milstein was selected as a **"Most Feared Plaintiffs Firm"** by *Law360* for the third year in a row.
- In 2015, Richard Koffman was named, for the fifth consecutive year, in *The Legal 500* **"Leading Lawyers" in "Litigation - Mass Tort and Class Action: Plaintiff Representation – Antitrust."**
- In 2015, Theodore J. Leopold, Leslie M. Kroeger, and Stephan A. LeClainche were selected as **"Florida Super Lawyers"** and Adam J. Langino was selected as a **"Florida Rising Star."**
- In 2015, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll and Christine E. Webber were selected as **"Washington DC Super Lawyers."**
- In 2015, Laura Alexander, Monya Bunch, S. Douglas Bunch, Johanna Hickman, Kalpana Kotagal, and Emmy Levens were selected as "**Washington DC Rising Stars"** by *Super Lawyers.*
- In 2015, for the fourth time in five years, Cohen Milstein was selected to *The National Law Journal "***Plaintiffs' Hot List."**
- In 2015, Carol V. Gilden was selected as **"Pension Funds Litigation Attorney of the Year in Illinois"** for the second year in a row by the Corporate INTL Legal Awards.
- In 2014, Cohen Milstein's Antitrust Practice was selected as a "**Practice Group of the Year"** by *Law360.*
- In 2014, Cohen Milstein Partner Kit Pierson was selected as an **"Antitrust MVP"** by *Law360.*
- In 2014, Cohen Milstein was named a **"Most Feared Plaintiffs Firm"** by *Law360* for the second year in a row. In 2014, Cohen Milstein was selected as an **Elite Trial Lawyer** firm by *The National Law Journal.*
- Cohen Milstein Partners Steven J. Toll, Joseph M. Sellers, Kit A. Pierson, and Agnieszka M. Fryszman Selected to the **2014 Lawdragon 500**.
- Released in 2015, Joseph M. Sellers, Theodore J. Leopold, and Leslie M. Kroeger listed in "**Best Lawyers in America."**
- Released in 2014, the 2013 SCAS 50 Report on Total Securities Class Action Settlements ranked Cohen Milstein as a top firm.
- In 2014, Cohen Milstein's Theodore J. Leopold was named among the "**Top 100"** Florida Super Lawyers, Leslie M. Kroeger was named to the **"Florida Super Lawyers,"** and Diana L. Martin was named a "**Florida Rising Star."**
- In 2014, Cohen Milstein attorneys Leslie M. Kroeger and Adam J. Langino were recognized in **Florida Trend's "Florida Legal Elite**." Kroeger is recognized as Legal Elite and Langino is listed as an Up-and-Comer.
- In 2014, Cohen Milstein was selected to the selected to the **National Law Journal's Midsize Hot List**.
- In 2014, Cohen Milstein was recognized as a "**Highly Recommended Washington, DC Litigation Firm**" by
- Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.
- In 2014, Cohen Milstein was ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500** for the sixth year in a row.

- In 2014, Partner Richard Koffman was named, for the fourth consecutive year, in the Legal 500 United States "**Leading Lawyers**" list under the category of "Litigation - Mass Tort and Class Action: Plaintiff Representation - Antitrust".
- In 2014, Cohen Milstein attorneys Agnieszka Fryszman, Julie Goldsmith Reiser, Joseph Sellers, Daniel Sommers, and Steven Toll were recognized **as Local Litigation Stars** by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.
- In 2014, Cohen Milstein attorneys R. Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll and Christine E. Webber were selected as **Washington DC Super Lawyers**.
- In 2014, Cohen Milstein attorneys Laura Alexander, Monya Bunch, S. Douglas Bunch, Jeffrey Dubner, Johanna Hickman, Joshua Kolsky, Kalpana Kotagal, Emmy Levens, and Michelle Yau were selected as **Washington DC Rising Stars** by Super Lawyers.
- In 2014, Cohen Milstein Partner Carol V. Gilden was selected as the Illinois Pension Fund Attorney of the Year.
- In 2014, Best Lawyers named Cohen Milstein Partner Joseph Sellers D.C. Litigation - Labor & Employment Lawyer of the Year.
- In 2013, for the third-year in a row, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.
- In 2013, Cohen Milstein was named a "**Most Feared Plaintiffs Firm**" by Law360.
- In 2013, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fifth year in a row.
- In 2013, Cohen Milstein attorneys Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie G. Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll, and Christine E. Webber were selected as **Washington DC Super Lawyers**.
- In 2013, Cohen Milstein attorney Michelle Yau was selected as **Washington DC Rising Stars** by Super Lawyers. In 2013, Cohen Milstein Partner Carol V. Gilden was selected as a **2013 Illinois Super Lawyer**. She has been selected every year since 2005.
- In 2012, for the second-year in a row, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.
- In 2012, Cohen Milstein was the recipient of the Judith M. Conti Pro Bono Law Firm of the Year Award from the Employment Justice Center.
- In 2012, Cohen Milstein was recognized as a "Highly Recommended Washington, DC Litigation Firm" by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.
- In 2012, Cohen Milstein was ranked as a top firm by the 2011 SCAS Report on Total Securities Class Action Settlements.
- In 2012, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fourth year in a row.
- In 2012, Partner Joseph M. Sellers was selected as a **Washington DC Super Lawyer**.   Mr. Sellers was also selected for this prestigious award in 2007, 2008, 2009, 2010, and 2012.
- In 2012, Partner Steven J. Toll was selected as a **Washington DC Super Lawyer**.  Mr. Toll was also selected for this prestigious award in 2007, 2009, 2010, and 2011.
- In 2012, Partner Daniel S. Sommers was selected as a **Washington DC Super Lawyer**.  Mr. Sommers was also selected for this prestigious award in 2011.
- In 2012, Partner Christine E. Webber was selected as a **Washington DC Super Lawyer**.  Ms. Webber was also selected for this prestigious award in 2007.
- In 2012, Partner Agnieszka M. Fryszman was selected as a **Washington DC Super Lawyer**. In 2012, Partner Kit A. Pierson was selected as a **Washington DC Super Lawyer**.
- In 2012, Partner Carol V. Gilden was selected as an **Illinois Super Lawyer**.  Ms. Gilden was also selected for this prestigious award in 2005, 2006, 2007, 2008, 2009, 2010, and 2011.
- In 2011, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

- In 2011, Partner Joseph M. Sellers was selected as a **"Visionary"** by The *National Law Journal.*
- In 2011, Partner J. Douglas Richards, Of Counsel Joel Laitman, and Of Counsel Christoper Lometti were selected as **New York - Metro Super Lawyers**.
- In 2011, Partner Joseph M. Sellers and the *Keepseagle v. Vilsack* team were selected as a finalist for the **2011 Trial Lawyer of the Year Award** from the Public Justice Foundation.
- In 2011, **Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500 for the third year in a row.
- In 2011, Partners Steven Toll, Joseph Sellers, and Daniel Sommers were selected as **Washington DC Super Lawyers**.  Partner J. Douglas Richards, Of Counsel Joel Laitman and Christoper Lometti were selected as **New York - Metro Super Lawyers**. Partner Carol Gilden was selected as an **Illinois Super Lawyer**.
- In 2011, Cohen Milstein was a recipient of The *National Law Journal's* **Pro Bono Award**.  The Firm was named one of the "six firms that best reflect the pro bono tradition."
- In 2010, Partner Joseph M. Sellers was selected as one of "**The Decade's Most Influential Lawyers**" by *The National Law Journal*.
- In 2010, Partner Steven J. Toll was named one of Law360's "**Most Admired Attorneys**". In 2010, Partner Andrew N. Friedman was selected as a **Washington DC Super Lawyer**.
- In 2010, Partner Agnieszka M. Fryszman was selected as a finalist for the **Trial Lawyer of the Year Award** from the Public Justice Foundation.
- In 2010, Partners Joseph M. Sellers and Agnieszka M. Fryszman were both selected as one of the **Lawdragon 500 Leading Lawyers in America**.
- In 2010, Cohen Milstein was once again ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500.

# Attorney Profiles – Partners

**Daniel A. Small**

Daniel A. Small is a Partner at Cohen Milstein and the immediate past Co-Chair of the firm's Antitrust practice group, a role and honor which he has held on and off since 2008. He is also a member of the firm's Executive Committee.

Mr. Small is one of the most respected litigators in antitrust class actions. He was named a Lawdragon 500 Leading Lawyer in 2018 and 2019, and since 2009, Legal 500 has annually recognized Mr. Small and Cohen Milstein as a "Leading Plaintiffs Antitrust Class Action Lawyer/Firm." Benchmark Plaintiff has repeatedly awarded him with its "National Litigation Star – Antitrust," and in 2014, International Who's Who of Competition Lawyers & Economists named him "Leading Competition Lawyer."

Mr. Small is widely regarded for his intellectual energy, deeply studying the economic issues underpinning antitrust disputes and developing a sophisticated understanding of how conspiracies and monopolies operate in a range of complex markets – from animation and visual effects workers and computer software and hardware to wild blueberries and hospital nurses – and achieving just compensation for victims and promoting more open markets nationwide.

Mr. Small has represented plaintiff classes, and defended unions, as lead or co-lead counsel in numerous antitrust cases and obtained settlements and judgments totaling hundreds of millions of dollars. He has tried cases to verdict and argued in numerous appellate courts, including the U.S. Supreme Court.

Currently, Mr. Small is litigating the following notable matters:

- Sutter Health Antitrust Litigation (Sup. Crt., San Fran. Cty., Cal.): Cohen Milstein is part of a small team of firms representing a certified class of self-funded employers and union trust funds against Sutter Health, a large hospital chain in Northern California, for restraining hospital competition through anticompetitive provider agreements.
- Rotavirus Vaccines Antitrust Litigation (E.D. Pa.): Cohen Milstein developed and filed a proprietary case against Merck & Co., Inc. on behalf of a class of direct purchasers, alleging that Merck engaged in an anticompetitive bundled discount scheme to maintain its monopoly power in the rotavirus vaccines market after entry by GlasxoSmithKline plc.
- National Association of Realtors Litigation (N.D. Ill.): Cohen Milstein is representing home sellers in a class action against the National Association of Realtors and four of the largest national real estate broker franchisors for conspiring to require home sellers to pay the broker representing the buyer of their homes, and to pay at an inflated amount, in violation of federal antitrust law.

Past successes include:

- Animation Workers Litigation (N.D. Cal.): Cohen Milstein served as co-lead counsel representing a class of animation and visual effects workers who allege that Pixar, Lucasfilm, DreamWorks and other studios conspired to suppress their pay. The court granted final approval of $168.5 million in settlements.
- NYU Hospitals Center Litigation (S.D.N.Y.): Cohen Milstein served as co-lead counsel defending 1199SEIU United Healthcare Workers East against an antitrust claim by NYU Hospitals Center alleging that 1199SEIU conspired with a multi-employer bargaining association and others to increase NYU's required contributions to the Union's benefit fund. In June 2018, the court granted defendants' motion to dismiss the antitrust claim. All remaining claims were dismissed with prejudice in December 2018.
- Prime Healthcare Services Litigation (S.D. Cal.): Cohen Milstein defended the Service Employees International Union in an antitrust action brought by Prime Healthcare Services, a hospital chain in Southern California,

alleging that SEIU conspired with Kaiser Permanente to drive Prime and certain other hospitals out of the market. Cohen Milstein led the successful effort to dismiss the complaint and amended complaint in the Southern District of California and to defend the dismissal on appeal to the Ninth Circuit.

- Michigan Blue Cross Litigation (E.D. Mich.): Cohen Milstein served as co-lead counsel in this class action challenging Michigan Blue Cross's use of most favored nation provisions in its provider agreements with numerous hospitals in Michigan. The court granted final approval of a $30 million settlement.
- Hy-Ko Products Antitrust Litigation (N.D. Ohio): Cohen Milstein represented Hy-Ko Products Co., a manufacturer of keys and key duplication machines, in a monopolization case against its dominant competitors. The litigation settled on favorable terms.
- In re Buspirone Antitrust Litigation (S.D.N.Y.): Cohen Milstein served as co-lead counsel in a class action alleging that Bristol Myers-Squibb Co., the manufacturer of the prescription drug Buspar, conspired to keep generic versions of the drug out of the market.  The class of end-payors settled for $90 million.
- Pease v. Jasper Wyman & Son, et al. (Sup. Ct., Knox Cty., Me.): Cohen Milstein was lead counsel representing a class of wild blueberry growers in Maine who sued four blueberry processors for conspiring to depress blueberry prices. The case was tried before a jury in Maine state court, where Mr. Small was co-lead trial counsel. The jury found the processors liable for 100% of the damages estimated by plaintiffs' expert, resulting in a judgment of $56 million.

Mr. Small also maintains an active pro bono practice. Current notable cases include:

- Citizens for Responsibility and Ethics in Washington, et al. v. Trump, and District of Columbia et al. v. Trump: Cohen Milstein is representing restaurant and hotel plaintiffs and the Attorneys General of Maryland and the District of Columbia in lawsuits against President Trump, seeking to enjoin his ongoing receipt of emoluments in violation of the U.S. Constitution.
- Seeger, et al. v. United States Department of Defense (D.D.C.): Cohen Milstein is representing a group of civilian and military lawyers who represent a detainee in the military commission proceedings at the Guantánamo Bay naval station.  Represented by Cohen Milstein, this group of lawyers filed a lawsuit under the Administrative Procedure Act against the Department of Defense, the Navy, and the Convening Authority, claiming that military commission personnel have been forced to live and work for years in facilities that have been found to have dangerous levels of cancer-causing chemicals and other toxic substances, ranging from formaldehyde to heavy metals and mold.

In 2018, Mr. Small, Cohen Milstein, and the co-lead counsel team in Animation Workers Antitrust Litigation were nominated for Public Justice Foundation's Trial Lawyer of the Year, recognizing the legal teams that made the most outstanding contributions to the public interest through precedent-setting or otherwise extraordinary litigation concluded within the last year.

Mr. Small serves on the Advisory Board of the American Antitrust Institute (AAI), a pre-eminent thought-leadership organization devoted to promoting competition. He is also Chair of the selection committee for the Jerry S. Cohen Memorial Fund Writing Award, which annually recognizes top antitrust scholarship.

Mr. Small clerked for the Honorable Judge Roger Vinson, United States District Court for the Northern District of Florida, from 1986 to 1988.

Mr. Small attended Colgate University, where he graduated with a B.A., cum laude, in History. He earned his J.D. at American University's Washington College of Law.

**Benjamin D. Brown**

Benjamin D. Brown is a Partner at Cohen Milstein, and Co-Chair of the firm's Antitrust practice group. Mr. Brown, who previously served in the Antitrust Division of the United States Department of Justice, brings to his role extensive experience leading complex litigation, particularly antitrust class actions.

Mr. Brown has been appointed by federal courts to serve as co-lead counsel for plaintiffs in numerous important matters, such as In re Plasma-Derivative Protein Therapies Antitrust Litigation (N.D. Ill.); Carlin, et al. v. DairyAmerica, Inc. (E.D. Cal.); and Mixed Martial Arts (MMA) Antitrust Litigation (D. Nev.). He has led cases through trial and argued appeals and stands ready to take cases through to the finish line.

Mr. Brown is also an adjunct professor at Georgetown Law School, where he teaches Complex Litigation, a course that explores the policy and procedures implicated by aggregated, high stakes, multi-party litigation, especially class actions.

Mr. Brown is also a leader in the area of takings cases, claims that are brought under the Fifth Amendment of the U.S. Constitution for the unconstitutional taking of property without compensation. He also represents individuals or groups in litigations and confidential arbitrations involving complex commercial disputes, particularly those involving regulated markets.

Currently, Mr. Brown is litigating a number of large, complex antitrust and price manipulation lawsuits, where he plays a prominent role and leads all aspects of the litigation, from deciding on the claims to be brought, the strategy to be pursued and charting the course of the case. Notable matters include:

- Mixed Martial Arts (MMA) Antitrust Litigation (D. Nev.): Cohen Milstein is co-lead counsel in a class action on behalf of MMA fighters alleging that Zuffa LLC – commonly known as the Ultimate Fighting Championship or "UFC" – has unlawfully monopolized the markets for promoting live professional MMA bouts and for purchasing the services of professional MMA fighters.  The district court denied the defendant's motion to dismiss the case in September 2015 and discovery is ongoing.  Mr. Brown is co-lead in this class action.
- Allen, et al. v. Dairy Farmers of America, Inc. (D. Vt.): Cohen Milstein served co-lead counsel in a class action lawsuit on behalf of Northeast dairy farmers against Dairy Farmers of America (DFA) and Dean Foods Company charging a conspiracy to reduce competition for raw milk and that DFA monopolized the milk market in the Northeast, forcing dairy farmers to market their milk through DFA or its affiliate Dairy Marketing Services (DMS). Final, approved settlements total $80 million.
- DairyAmerica Litigation (E.D. Cal.): Cohen Milstein served as court-appointed lead counsel to a putative class of dairy farmers who alleged that defendants fraudulently misreported nonfat dry milk prices to the National Agricultural Statistics Service, resulting in artificially depressed raw milk prices and unfairly depriving American dairy farmers of tens-of-millions-of-dollars. In May 2019, the Court granted final approval of a $40 million settlement – 90% of what the USDA Inspector General's independents analysis estimated damages to be. Mr. Brown directed all aspect of this class action.

Mr. Brown is also currently litigating a number of takings lawsuits, including the following notable matters:

- Ideker Farms, et al. v. United States of America (Fed. Cl.): Cohen Milstein represents Ideker Farms and more than 400 other plaintiffs located in six states along the Missouri River in a landmark mass action lawsuit in the U.S. Court of Federal Claims alleging that the federal government took land and flooding easements over lands owned by farmers without any compensation in violation of the takings clause of the Fifth Amendment. Mr. Brown has helped lead the litigation team, including during a months-long liability trial in 2017, during which he directed and cross-examined numerous witnesses, including six experts.  In March 2018, the Court ruled largely

in favor of plaintiffs on liability and cause of flooding claims. Bellwether trials continue. The Court will next determine the extent of the losses due to the taking.

- Big Oak Farms, Inc., et al. v. United States of America (Fed. Cl.): Cohen Milstein represents over 100 farmers along the Mississippi River in a Fifth Amendment takings case alleging that the U.S. Army Corps of Engineers intentionally flooded plaintiffs' land without providing just compensation. Mr. Brown has been directing and leading all aspects of the litigation.

Mr. Brown joined Cohen Milstein in 2005, following four years as a trial attorney with the Antitrust Division of the United States Department of Justice.  At the Department of Justice, Mr. Brown led and assisted in numerous investigations, litigations and trials involving antitrust activity and mergers. Mr. Brown also served as a Special Assistant United States Attorney in the Eastern District of Virginia, where he prosecuted criminal cases.  Prior to serving in the U.S. Department of Justice, Mr. Brown was in private practice with one of Washington's most prestigious defense firms, where he counseled defendants in antitrust litigation matters. This experience has provided him with insights into defense strategies and has earned him the respect of defendants' counsel.

The Legal 500 has recognized Mr. Brown as one of the nation's leading class action antitrust attorneys. Mr. Brown is also recognized in Who's Who Legal: Thought Leaders – Competition, and he has been listed as one of Washington D.C.'s "Leading Star" Plaintiffs' Litigators by Benchmark Litigation, recognizing his writing, his depositions and his arguments in court. He is a frequent panelist at legal industry gatherings and is a recognized expert on antitrust litigation whose opinions on the newest developments and trends in antitrust litigation are often quoted in the media. Mr. Brown is a contributing author of the ABA's Antitrust Class Actions Handbook and served as a state editor for the ABA's Survey of State Class Action Law.  He authored several chapters on private antitrust recovery actions for the Global Competition Review's Antitrust Review of the Americas, and co-authored with fellow partner Douglas Richards, "Predominance of Common Questions – Common Mistakes in Applying the Class Action Standard," Rutgers Law Journal (Vol. 41).

Mr. Brown is currently serving on the Advisory Board of the Institute for Consumer Antitrust Studies at Loyola University Chicago's School of Law.

Mr. Brown attended the University of Wisconsin – Madison, where he graduated Phi Beta Kappa, majoring in Philosophy, and earned his J.D., from Harvard Law School, graduating cum laude. He served as Law Clerk to the Hon. Chief Judge Juan R. Torruella, U.S. Court of Appeals for the First Circuit. The United States District Court for the District of Columbia has honored Mr. Brown for his outstanding commitment to pro bono litigation.

## Attorney Profiles – Associates

### Robert A. Braun

Robert A. Braun is an Associate at Cohen Milstein and a member of the firm's Antitrust practice group.

Mr. Braun focuses on representing businesses and individuals in class actions and antitrust litigation. He is also experienced in international claims litigation, including representing the victims of state-sponsored terrorism in suits amounting to nearly $1 billion in judgments.

Currently, Mr. Braun is litigating the following notable matters:

- Resistors Antitrust Litigation: Cohen Milstein serves as Interim Co-Lead Counsel in a proposed direct purchaser class action accusing the world's largest manufacturers of resistors of fixing prices. Mr. Braun was a primary drafter of the class's briefs successfully opposing dismissal and has taken a leading role in deposition and document discovery.

- Iran Beirut Bombing Litigation: Cohen Milstein is representing the victims and family members of victims in the 1983 Beirut Marine Barracks bombing, the deadliest act of terrorism against Americans prior to September 11, 2001. Mr. Braun manages all aspects of this litigation, which has resulted in judgments amounting to more than $942 million against the government of Iran.
- LIBOR (Exchange-Traded Class): Cohen Milstein represents investors of Eurodollar futures injured by manipulation of LIBOR by the world's largest banks in a class action under the Commodity Exchange Act and antitrust laws.
- Cast Iron Soil Pipe & Fittings Antitrust Litigation: Cohen Milstein, as Co-Lead Counsel, represents a putative class of direct purchaser plaintiffs against the two largest soil pipe and fittings manufacturers in the country and the trade association they control in a lawsuit alleging that the defendants engaged in a nationwide price-fixing conspiracy. Following the completion of extensive fact discovery, Mr. Braun and his colleagues obtained a $30 million settlement, which was approved in 2017.
- Ductile Iron Pipe Fittings Antitrust Litigation: Cohen Milstein, as Co-Lead Counsel, represents a class of direct purchaser plaintiffs in a price-fixing case against the three largest manufacturers of ductile iron pipe fittings and a monopolization case against the largest (McWane) for excluding competition in the domestic ductile iron pipe fittings market. Settlements of greater than $17 million have been reached with all defendants.
- Iraq Hostage Spouses Litigation: Cohen Milstein is representing the spouses of 30 Americans held hostage by former Iraq President Saddam Hussein during the Gulf War in 1990. After toppling Saddam Hussein's regime, the United States settled the hostage spouses' legal claims with Iraq, but has refused to compensate the hostage spouses out of the resulting settlement fund. Cohen Milstein alleges that these actions by the United States are a taking without just compensation in violation of the Fifth Amendment of the U.S. Constitution.
- Inmate Calling Services Provider Litigation: Cohen Milstein is on the Executive Committee in several nationwide class action lawsuits alleging that the providers of inmate calling services have charged inmates and their families unjust and unreasonable rates in violation of the Federal Communications Act and various state laws.

Mr. Braun also maintains an active pro bono practice. He is currently a member of the legal teams in Citizens for Responsibility & Ethics in Washington v. Trump and District of Columbia v. Trump, which seek to enjoin President Trump's unconstitutional receipt of emoluments on behalf of restaurant and hotel plaintiffs and the Attorneys General of Maryland and the District of Columbia.

Prior to joining Cohen Milstein, Mr. Braun served as a law clerk for the Honorable Carolyn Dineen King of the U.S. Court of Appeals for the Fifth Circuit from 2013-2014, and for the Honorable Lee H. Rosenthal of the U.S. District Court for the Southern District of Texas. He was also an Arthur Liman Fellow at Southeast Louisiana Legal Services, where he worked on public interest housing litigation.

Mr. Braun earned his J.D. at Yale Law School and attended Princeton University, graduating summa cum laude. During law school, Mr. Braun was an editor of the Yale Journal of International Law and a member of the mock trial team.

**Robert W. Cobbs**

Robert W. Cobbs is an Associate at Cohen Milstein, and a member of the Antitrust practice group.

Currently, Mr. Cobbs is litigating the following notable matters:

- Interest Rate Swaps Antitrust Litigation: Cohen Milstein serves as co-lead counsel in a groundbreaking antitrust class action representing the Public School Teachers' Pension and Retirement Fund of Chicago and a proposed buy-side investor class against numerous Wall Street investment banks. The class alleges that the defendants conspired to prevent class members from trading IRS on modern electronic trading platforms and from trading with each other, all to protect the banks' trading profits from inflated bid/ask spreads.

- Stock Lending Antitrust Litigation:  Cohen Milstein serves as co-counsel in a groundbreaking antitrust class action alleging that major investment banks conspired to prevent the stock lending market from evolving by boycotting and interfering with various platforms and services designed to increase transparency and reduce costs in the stock lending market. On September 27, 2018, the court declined to grant Defendants' motion to dismiss and ruled that investors may proceed with their class action.

Prior to joining Cohen Milstein, Mr. Cobbs clerked for the Hon. Pierre N. Leval, United States Court of Appeals for the Second Circuit; and for the Hon. J. Rodney Gilstrap, United States District Court for the Eastern District of Texas.

Mr. Cobbs graduated from Amherst College with a B.A. in English and Russian, magna cum laude with distinction, and received his J.D. from Yale Law School. During law school, he served as a Notes Editor of the Yale Law Journal and as a Submissions Editor of the Yale Journal on Regulation.

www.cohenmilstein.com
2606460 v1

# EXHIBIT F

## ASSURANCE OF VOLUNTARY COMPLIANCE

This Assurance of Voluntary Compliance ("Assurance") is entered into by the Attorneys General of the States of Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia, and Washington (hereinafter "the Attorneys General")[1] and Google Inc. ("Google" or the "Company").

## I.    REPRESENTATIONS BY GOOGLE

1.    Google outfitted its Street View cars with commercially available antennae and freely available, open-source software called Kismet, between 2008 and May 2010, to drive down public streets and collect WiFi network identification information for use in offering "location aware" or geolocation services.

2.    In addition to the network identification information, Google also collected and stored Data Frames which were sent over unencrypted WiFi networks if the network was broadcasting as the Street View car drove by.

3.    By cycling through WiFi channels five times per second, the software limited any single data-acquisition event to two-tenths of one second.  The low bit rate for transmission of such Data Frames, as well as the variable speed and direction of the vehicles, further resulted in limited, episodic collection of Data Frames.

4.    Data Frames collected under the 802.11 standard consist of (1) a header, containing network identifying information (such as a MAC Address or SSID) and (2) a

---

[1] For ease of reference purposes, this entire group will be referred to collectively herein as the "Attorneys General" or individually as "Attorney General." Such designations, however, as they pertain to: Connecticut, shall refer to the Commissioner of Consumer Protection; and Hawaii, shall refer to the Executive Director of the State of Hawaii's Office of Consumer Protection.

body that may contain the content of communications being transmitted over the network (such content referred to as the "Payload Data").

5.      The Payload Data may include URLs of requested Web pages, partial or complete email communications, or any other information, including any confidential or private information being transmitted to or from the network user.

6.      Notwithstanding the variables affecting the collection of Data Frames, Google understands from investigations conducted by foreign regulators that in some cases, a full email, complete email address, URLs, or other private information was collected.

7.      The Payload Data collected was stored in binary, machine-readable form, and remained unparsed by Google.

8.      Google stored the Payload Data on hard drives in vehicles and its servers until May 2010, and thereafter Google undertook efforts to segregate and secure such Payload Data for safekeeping.

9.      The Payload Data was not and will not be used in any product or service, nor has the Payload Data collected in the United States been disclosed to any third party.

10.     The Payload Data collection occurred without the knowledge of Google executives.

11.     Upon discovery of the Payload Data collection, Google:

      a.      terminated the collection of the Payload Data;

      b.      segregated the Payload Data from Google File Servers to preservation disks;

      c.      undertook efforts to secure the Payload Data; and

      d.      disabled the equipment and software on the Street View vehicle that was used for collection of Payload Data and WiFi Network Information.

12.     Google retained an independent expert to confirm: 1) what data was collected and in what manner; 2) that the Payload Data had been segregated and secured; and 3) that the equipment and software on the Street View vehicles used to collect the Payload Data and WiFi Network Information had been removed or deleted.

13.     Google continued and updated training of its employees regarding Google's privacy principles and Code of Conduct.

14.     Google enhanced the core training for engineers with a particular focus on privacy and security of data, including a security awareness program.

15.     Google provided an expert report to the Executive Committee of the Multistate Working Group (the "MSEC") and otherwise responded to the Attorneys General inquiries.

16.     Google is implementing a privacy program (the "Privacy Program") that includes or will include within six months from the Effective Date of this Assurance unless a different timeframe is specifically noted herein:

    a.     the delivery of this Assurance to the Company's executive management within 30 days of the Effective Date of this Assurance;

    b.     the delivery of this Assurance to employees having supervisory responsibilities for implementation of the Privacy Program within 30 days of the Effective Date of this Assurance;

    c.     the delivery of this Assurance to the Company's product counsel and attorneys whose responsibilities include providing advice in regard to the privacy of consumer information within 30 days of the Effective Date of this Assurance;

    d.     the designation of an employee or employees to coordinate and be responsible for the Privacy Program;

    e.     regular employee training that is designed to:

(1) inform new employees about the importance of user privacy and their role in helping maintain it;

(2) offer further privacy education to Google employees with responsibilities materially relating to the privacy or confidentiality of user data;

(3) make privacy certification programs available to key employees, such as the Certified Information Privacy Professional Certification ("CIPP") or similar certifications demonstrating mastery of a widely recognized body of privacy knowledge; and

(4) provide in-house counsel privacy awareness refresher training for counsel advising product teams.

f.   holding an annual "Privacy Week" event, which will be promoted across Google offices and which will include various presentations by internal and external subject matter experts of varied backgrounds relating to privacy and information risk management;

g.   the provision of periodic updates, posted using applicable internal communications channels, by individuals responsible for the operation of the Privacy Program, describing key material developments in user privacy, including, for example, descriptions of key technical, legal, or policy developments relating to user privacy;

h.   taking reasonable steps designed to select and retain third-party service providers that are capable of appropriately protecting the privacy of Google users' personal information;

i.   regular assessments of the effectiveness of the Privacy Program's controls and the consideration of updates to such controls based on those assessments; and

j.   the development and maintenance of policies and procedures for responding to identified events involving the unauthorized collection, use or disclosure of user data.

## II.   PROHIBITIVE AND AFFIRMATIVE CONDUCT

Google and its successors and assigns:

1.   Shall not collect and store for use in any product or service Payload Data via Street View vehicles, except with notice and consent.

2.   Shall, for a period of ten years from the Effective Date of this Assurance, maintain the Privacy Program described in Paragraph 16 of Section I above.

3.   Shall provide the Attorneys General a copy of the initial and biennial public assessments and reports ("Assessments") conducted pursuant to Part IV of the Consent Decree with the Federal Trade Commission (Docket No. C-4336) (the "Buzz Consent Decree"), without regard to further amendments, and provided thereunder to the Federal Trade Commission.

4.   Shall delete or destroy, as soon as practicable and not inconsistent with any current, pending or future litigation holds, preservation orders, preservation letters, or preservation requests of any kind, all Payload Data it collected in the United States of which Google has possession or control (such deletion or destruction is referred to hereinafter as the "Payload Data Deletion").  The Payload Data Deletion shall not occur while any preservation order, preservation letter, or preservation request of any kind is pending, or a preservation obligation otherwise exists or is pending.  The Payload Data Deletion shall constitute either or both electronic deletion or physical destruction and be sufficient to ensure that the Payload Data are rendered reasonably unrecoverable and unreadable.  Within five (5) days after such Payload Data Deletion, Google shall provide the Attorneys General with a certification that the Payload Data Deletion is complete.

5.   Shall design and implement, after consultation with the MSEC, a Public Service Campaign (the "PSC") reasonably designed to educate consumers about steps they

can take to better secure their personal information while using wireless networks.  The PSC will begin no later than four (4) months after the Effective Date of this Assurance and at a minimum will include the following components:

- Develop and promote a video on YouTube that explains how users can encrypt their wireless networks (the "how-to-video").  This how-to-video shall remain on YouTube for at least two years from the date the PSC begins and at a minimum should demonstrate the configuration of wireless security modes: WEP (Wired Encryption Protocol), WPA-Personal (Wireless Protected Access), WPA2-Personal (Wireless Protected Access supporting AES), and WPA-Enterprise & WPA2-Enterprise (Wireless Protected Access supporting AES using RADIUS server authentication).

- Write a blog post for the Google Public Policy Blog explaining the value of encrypting a wireless network, directing users to links to how-to videos on YouTube.  This blog post shall remain on the Google Public Policy blog for at least two years from the date the blog post is first published.

- Run at least one half-page educational newspaper ad in a newspaper of national circulation and at least one half-page educational ad in the newspaper with the greatest circulation rate in each State.

- Incorporate a discussion on WiFi security in an educational pamphlet about online safety and privacy.  This pamphlet shall be made available to the public for at least two years from the date of its first dissemination or publication.

- Run daily online ads promoting the how-to video for at least two years from the date the campaign begins.

## III.    PAYMENT TO THE STATES

Google shall pay $7,000,000.00 (Seven Million Dollars) to be divided and paid by Google directly to each of the Attorneys General in an amount to be designated by and

in the sole discretion of the MSEC.  Each of the Attorneys General agrees that the MSEC has the authority to designate such amount to be paid by Google to each Attorney General and to provide Google with instructions for the payments to be distributed under this paragraph.  Payment shall be made no later than thirty (30) days after the Effective Date and receipt of payment instructions by Google from the MSEC except, where state law requires judicial or other approval of the Assurance, payment shall be made no later than thirty (30) days after notice from an Attorney General that such final approval for the Assurance has been secured.

Said payment shall be used by the Attorneys General for such purposes that may include, but are not limited to civil penalties, attorneys' fees and other costs of investigation and litigation, or to be placed in, or applied to, the consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, or for other uses permitted by state law, at the sole discretion of each Attorney General.

## IV.    RELEASE

By execution of this Assurance, and following a full and complete payment to an Attorney General, that Attorney General, on behalf of his or her State, releases and forever discharges Google and its affiliates, and their respective directors, officers, employees, agents, representatives, successors, predecessors, and assigns ("Released Parties"), from the following: all civil claims, causes of action, damages, restitution, fines, costs, and penalties that the Attorney General could have asserted against the Released Parties under the consumer protection statutes listed on Attachment A based on Google's collection of Payload Data through use of its Street View vehicles prior to the date of this Assurance, whether known or unknown, foreseen or unforeseen, as described in more detail in Section I of this Assurance (collectively, the "Released Claims").

Released Claims do not include claims for violation of this Assurance or claims pursuant to any other statute or regulation (including, without limitation, antitrust laws, environmental laws, tax laws, credit repair/service organization laws, buying club laws, and criminal statutes and codes), nor do they include actions or proceedings brought pursuant to State consumer protection laws or statutes alleging violations that are not addressed by the terms of this Assurance.

## V.    NO ADMISSIONS

This Assurance is for settlement purposes only, and to the fullest extent permitted by law neither the fact of, nor any provision contained in, this Assurance nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as any admission of the validity of any claim or any fact alleged in any other pending or subsequently filed action or of any wrongdoing, fault, violation of law, or liability of any kind on the part of the Released Parties or admission by any Released Parties of the validity or lack thereof of any claim, allegation, or defense asserted in any other action.

## VI.    GENERAL PROVISIONS

1.    Any failure of any State to exercise any right under this Assurance shall not constitute a waiver of any rights hereunder of that State or any other State.

2.    Counsel for Google, by and on behalf of Google, and the undersigned representatives of each of the Attorneys General, by and on behalf of each Attorney General, hereby represent that each is authorized to enter into and execute this Assurance.

3.    Google is and has been represented by legal counsel and has been advised by its legal counsel of the meaning and effect of this Assurance.

4.    Nothing in this Assurance shall be construed as relieving Google of its obligations to comply with all state and federal laws, regulations, and rules, or as

granting permission to engage in any acts or practices prohibited by such law, regulation, or rule.

5.      The Attorneys General have relied on all of the representations and warranties set forth in this Assurance and if any representation is proved false or misleading in any material respect, the Attorneys General have the right to seek any relief or remedy afforded by law or equity in their respective states.

6.      The Attorneys General have not approved any of Google's business practices, past, current or future, and nothing contained herein shall be interpreted to mean otherwise.

7.      This Assurance may be enforced only by the parties hereto. Nothing in this Assurance shall provide any rights or permit any person or entity not a party hereto, including any state or attorney general not a party hereto, to enforce any provision of this Assurance. No person or entity not a signatory hereto is a third party beneficiary of this Assurance.  Nothing in this Assurance shall be construed to affect, limit, alter or assist any private right of action that a consumer may hold against Google.

8.      This Assurance may be executed in counterparts and by different signatories on separate counterparts, each of which shall constitute an original counterpart hereof and all of which together shall constitute one and the same document.  One or more counterparts may be delivered by facsimile or electronic transmission or a copy thereof with the intent that it or they shall constitute an original counterpart hereof.

9.      The Attorney General of Connecticut, which for purposes of this paragraph shall mean both Commissioner of Consumer Protection and the Connecticut Attorney General, on behalf of the MSEC and the Attorneys General, is the designated representative to receive any report, notice or consultation required under paragraphs 3, 4 and 5 of Section II of this Assurance.  Google agrees that the Attorney General of Connecticut is authorized to share any materials received from Google with the Attorneys General.

10.    This Assurance shall become effective when all Attorneys General have delivered a counterpart signature page to Google (the "Effective Date").

WHEREFORE, the following signatures are affixed hereto:

**GOOGLE INC.**

KENT WALKER
Senior Vice President & General Counsel
Google Inc.

Date: _____3/ 8/13_____

**ATTACHMENT A**

| State | Consumer Protection Statute |
|---|---|
| Alaska | Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471 to 45.50.561 |
| Arizona | Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.* |
| Arkansas | Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.* |
| California | Cal. Bus & Prof. Code §§17200, *et seq.* |
| Colorado | Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, *et seq.* |
| Connecticut | Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.* |
| Delaware | Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2511 to 2527 |
| D.C. | District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq.* (2001) |
| Florida | Florida Deceptive and Unfair Trade Practices Act, Part II, Chapter 501, Fla. Stat. Ann §§ 501.201 *et seq.* |
| Hawaii | Haw. Rev. Stat. §§ 480-1, *et seq.*; Hawaii Unfair and Deceptive Trade Practices Act, Haw. Rev. Stat. §§ 481A-1, *et seq.* |
| Illinois | Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* |
| Iowa | Iowa Consumer Fraud Act, Iowa Code § 714.16 |
| Kansas | Kan. Stat. Ann. §§ 50-623, *et seq.* |
| Kentucky | Kentucky Consumer Protection Act, Ken. Rev. Stat. Ann § 367.170 |
| Louisiana | Louisiana Unfair Trade Practices and Consumer Protection Act, La. Rev. Stat. Ann. §§ 51:1401, *et seq.* |
| Maine | The Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, § 207 |

| State | Consumer Protection Statute |
|-------|------------------------------|
| Maryland | Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 through 13-501 (2005 Repl. Vol. and 2011 Supp.) |
| Massachusetts | Mass. Gen. Law ch. 93A |
| Michigan | Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, *et seq.* |
| Mississippi | Miss. Code Ann §§ 75-24-1, *et seq.* |
| Missouri | Mo. Rev. Stat. § 407.020 |
| Montana | Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §§ 30-14-101, *et. seq.* |
| Nebraska | Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq.* and Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301, *et seq.* |
| Nevada | Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.* |
| New Jersey | New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* |
| New Mexico | New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.* |
| New York | N.Y. Exec. Law § 63(12); N.Y. Gen. Bus. Law §§ 349 and 350 |
| North Carolina | North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.* |
| North Dakota | Unlawful Sales or Advertising Practices, N.D. Cent. Code §§ 51-15-01, *et seq.* |
| Ohio | Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.01, *et seq.* |
| Oklahoma | Oklahoma Consumer Protection Act, Ok. Stat. tit. 15, §§ 751, *et seq.* (2011) |
| Oregon | Oregon Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605, *et seq.* |
| Rhode Island | Deceptive Trade Practices Act, R.I. Gen. Laws Ann. §§ 6- |

| State | Consumer Protection Statute |
|---|---|
| | 13.1-1, *et seq.* |
| South Carolina | South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.* |
| Tennessee | Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, *et seq.* |
| Texas | Texas Deceptive Trade Practices--Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.* |
| Vermont | Vermont Consumer Protection Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.* |
| Virginia | Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, et seq. |
| Washington | Washington Consumer Protection Act, Wash. Rev. Code Ann. §§ 19.86, *et seq.* |