1  Theodore H. Frank (SBN 196332)
   HAMILTON LINCOLN LAW INSTITUTE
2  CENTER FOR CLASS ACTION FAIRNESS
   1629 K Street NW, Suite 300
3  Washington, DC 20006
   Voice: 703-203-3848
4  Email: ted.frank@hlli.org

5  *Attorneys for Objector David Lowery*

6

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9              SAN FRANCISCO DIVISION

10

   IN RE GOOGLE LLC STREET VIEW          Case No. 3:10-md-02184-CRB
11 ELECTRONIC COMMUNICATIONS
   LITIGATION                            **DECLARATION OF THEODORE FRANK**
12
                                         Time:       10:00 A.M.
13                                       Date:       February 28, 2020
   DAVID LOWERY,                         Judge:      Hon. Charles R. Breyer
14                                       Courtroom:  6, 17ᵗʰ Floor
              Objector.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JOHN

I, Theodore Frank, declare as follows:

1.     I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.     My full name is Theodore Harold Frank. My business address is Hamilton Lincoln Law Institute, Center for Class Action Fairness, 1629 K Street NW, Suite 300, Washington, DC 20006. My telephone number is 703-203-3848. My email address is ted.frank@hlli.org.

3.     I am Director of Litigation at the non-profit Hamilton Lincoln Law Institute ("HLLI"), and a Senior Attorney with its Center for Class Action Fairness ("CCAF"). I represent David Lowery in objecting to the proposed settlement, class certification, and fee request.

### Factual Basis for Lowery's Objection

4.     The specific grounds of my client's objection are identified in his contemporaneously-filed Objection.

5.     In the course of drafting Mr. Lowery's objection, I discovered evidence that Google is already donating to some of the proposed *cy pres* recipients.

6.     A true and accurate copy of the Public Knowledge webpage titled *Sources of Funding for Public Knowledge* webpage as of January 17, 2020, *available at* https://www.publicknowledge.org/sources-of-funding-for-public-knowledge, is attached as Exhibit A.

7.     A true and accurate copy of Google's biannually updated "list of politically-engaged trade associations, independent third-party organizations and other tax-exempt groups that receive the most substantial contributions from Google's U.S. Government Affairs and Public Policy team" as of January 17, 2020, *available at* https://services.google.com/fh/files/misc/trade_association_and_third_party_groups.pdf, is attached as Exhibit B. This list is accessible via a link from *U.S. Public Policy-Transparency* webpage, *available at* https://www.google.com/publicpolicy/transparency/. It includes World Privacy Forum as a recipient.

8.     Exhibits to plaintiffs' preliminary approval motion contain evidence that ACLU, World Privacy Forum, and Public Knowledge have all received contributions from Google. Dkt. 166-1 at 61, 76, 100.

9.     Plaintiffs have argued that "the class is receiving no monetary distribution because such a distribution would be impossible for many Class Members and too expensive to implement for the few who could be identified." Dkt. 184 at 16. They present no evidence in support of this proposition.

DECLARATION OF THEODORE FRANK

10.     Through my experience with CCAF, I have learned that it is economically feasible to distribute $13 million to multi-million member classes. I represented myself and another class member in objecting to the second settlement and fee request in *Fraley v. Facebook Inc.*, No. 11-cv-01726 RS (N.D. Cal.), a privacy class action brought on behalf of some 150 million Facebook users. There, class counsel originally proposed to distribute $10 million to cy pres beneficiaries in lieu of any payments to class members on the theory that the class was simply too large to get direct benefit to class members. However, after Judge Seeborg rejected that proposed agreement (*see Fraley v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012)), the settling parties returned with a second settlement proposal that would permit class members to make claims against the settlement fund for $10 each. Ultimately, class members submitted only 614,000 claims (a claims rate of 0.4%), thus undersubscribing the fund and allowing the Court room to augment claim values upwards to $15. *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013). Despite including a direct-notice component, administrative costs in Fraley only amounted to $900,000. *Fraley*, No. 11-cv-01726, Dkt. 336 at 3. *Fraley* demonstrates that administrative costs of a class claims process need not cannibalize the $13 million fund of this settlement.

11.     I am also aware of the cases listed in the following chart, each of which supports the feasibility of actual class member payments in this case through a claims process:

| Case Name | Size of Class | Gross Cash Settlement Amount[1] | Administrative Costs |
|---|---|---|---|
| *Fraley v. Facebook, Inc.*, No. 11-cv-1726 RS (N.D. Cal. 2013) | ~150 million | $20 million | ~$900,000 |
| *Koller v. Med Foods, Inc.*, No. 3:14-CV-2400-RS (N.D. Cal.) | Unknown (150 million bottles sold during class period) | $7 million | $432,700 |
| *In re Conagra Foods, Inc.*, No. 11-cv-5379-CJC (C.D. Cal. 2019) | > 31 million | Less than $8,500,000[2] | "no more than $660,000" |
| *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, 2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016) | ~30 million | $9 million | $655,500 |

[1] This figure includes payments to class members, fees and expenses to class counsel, and notice and administration costs payments to the administrator.

[2] Class counsel received $6.85 million of this total. A CCAF client objected to the disproportion and the appeal is pending.

| Case Name | Size of Class | Gross Cash Settlement Amount[1] | Administrative Costs |
|---|---|---|---|
| *Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK (N.D. Cal.) | ~20.8 million | $13 million | $716,750 |
| *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, No. 1:15-cv-05876 (N.D. Ill.) | ~12.9 million | $5 million | $439,222 |
| *In re LivingSocial Marketing and Sales Practices Litig.* No. 11-mc-00472, 298 F.R.D. 1 (D.D.C. 2013) | ~10.9 million | $7.58 million | ~$130,000 See Dkt. 40. (included direct notice) |
| *Zepeda v. PayPal*, No. 10-cv-02500-SBA, 2017 WL 1113293, 2017 U.S. Dist. LEXIS 43672 (N.D. Cal. Mar. 24, 2017) | ~10.5 million | $3.2 million | Capped at $400,000 (included direct notice) |
| *Thomas Iglesias v. Ferrara Candy Co.*, No. 3:17-cv-00849-VC (N.D. Cal.) | >10 million | $2.5 million | Capped at $522,000 |
| *In re Sony PS3 "Other OS" Litigation,* No. 10-cv-01811-YGR (N.D. Cal.) | 10 million | $3.75 million | $495,000 |
| *In re Google Plus Profile Litigation*, No. 18-cv-06164-EJD (N.D. Cal.) | ~10 million | $7.5 million | Estimated at $265,000 |
| *Chester v. The TJX Cos., Inc.*, No. 15-cv-0437, 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) | ~8 million | $8.5 million | Estimated at $500,000 (included direct notice) |
| *Kumar v. Salov North America Corp.*, 4:14-cv-02411-YGR (N.D. Cal.) | ~5.4 million | Less than $1.7 million | Preliminary cost est. $450,000 |
| *Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013) | ~5 million | $5.3 million | Class counsel represented administration costs as $170,000.  Settlement established administration fund of $300,000 |
| *Frohberg v. Cumberland Packing Corp.*, No. 14-cv-00748 (E.D.N.Y.), *terms available at* http://web.archive.org/web/20160528175123/https://www.steviaintherawsettlement.com/ | ~ 2 million | Up to $1.5 million | Capped at $210,000 |
| *Shestopal v. Follett Higher Education Group Inc.*, Case No. 15-cv-8980 (N.D. Ill) | ~1.9 million | $3.5 million | Capped at $499,000 (included direct notice) |

| Case Name | Size of Class | Gross Cash Settlement Amount[1] | Administrative Costs |
|---|---|---|---|
| *Aguiar v. Merisant Co.,* 14-cv-00670 (C.D. Cal.), *terms available at* http://web.archive.org/web/20160329153716/https://www.pureviasweetenersettlement.com/ | ~1.2-2.4 million | $1.65 million | Unknown (included direct notice to part of class) |
| *Dashnaw v. New Balance Ath., Inc.,* 2019 U.S. Dist. LEXIS 126183, 2019 WL 3413444 (S.D. Cal. Jul. 29, 2019) | ~1.1 million | $1.4 million | Capped at $200,000 |
| *In re Packaged Ice Antitrust Litig.,* 322 F.R.D. 276 (E.D. Mich. 2017) | >1 million | $2.7 million | $650,000 |
| *Bezdek v. Vibram USA, Inc,* No. 12-cv-10513 (D. Mass.), *terms available at* http://web.archive.org/web/20160503083715/https://www.fivefingerssettlement.com/ | Unknown, millions of products sold during class period | $3.75 million | Unknown, (included direct notice to ~300,000 class members) |
| *Stephenson v. Neutrogena Corp.,* No. C 12-00426 PJH (N.D. Cal.) | Unknown | $1.8 million | Capped at $500,000 |
| *In re LinkedIn User Privacy Litig.,* No. 12-cv-03088, 309 F.R.D. 573 (N.D. Cal.), *terms available at* http://web.archive.org/web/20150801221322/https://www.linkedinclassactionsettlement.com/Home.aspx | ~800,000 | $1.25 million | $140,000 (included direct notice) |
| *Lagarde v. Support.com, Inc.,* No. 12-cv-0609, 2013 U.S. Dist. LEXIS 42725 (N.D. Cal. Mar. 25, 2013) | ~759,000 | $8.595 million | Capped at $100,000 (included direct notice) |

12.     In many of the above cases, the identities of class members were unknown to the settling parties, yet a claims process was employed to allow absent class members to self-identify.

13.     In particular, after *Frank v. Gaos*, Google chose not to agree to a *cy pres*-only settlement in this district in *In re Google Plus Profile Litigation*, though it involves the same sort of ratios of settlement money to class size as the three *cy pres* settlements it is currently defending in court.

### Center for Class Action Fairness

14.     I founded CCAF, a 501(c)(3) non-profit public-interest law firm based out of Washington, DC, in 2009. In 2015, CCAF merged into the non-profit Competitive Enterprise Institute ("CEI") and became a division within their law and litigation unit. In January 2019, CCAF became part of HLLI, a new non-profit

public-interest law firm founded in 2018.

15.     CCAF's mission is to litigate on behalf of class members against unfair class action procedures and settlements. *See, e.g.,* *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (praising CCAF's work); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objections in ascertaining the fairness of a settlement") (rejecting settlement approval and certification.). CCAF has won over 200 million dollars for class members and received national acclaim for its work. *See, e.g.,* Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013 ("the leading critic of abusive class action settlements"); Roger Parloff, *Should Plaintiffs Lawyers Get 94% of a Class Action Settlement?*, FORTUNE, Dec. 15, 2015 ("the nation's most relentless warrior against class-action fee abuse"); The Editorial Board, *The Anthem Class-Action Con*, WALL ST. J., Feb. 11, 2018 (opining "[t]he U.S. could use more Ted Franks" while covering CCAF's role in exposing "legal looting" in the Anthem data breach MDL). Academics have recognized CCAF for developing "the expertise to spot problematic settlement provisions and attorneys' fees." Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47, 55-57 & n.37 (2018).

16.     CCAF has been successful, winning reversal or remand in over a dozen federal appeals decided to date. *E.g., Frank v. Gaos*, 139 S. Ct. 1041 (2019); *In re Lithium Ion Batteries Antitrust Litig.*, 777 Fed. Appx. 221 (9th Cir. 2019) (unpublished); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019); *In re EasySaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018); *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017); *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re EasySaver Rewards Litig.*, 599 Fed. Appx. 274 (9th Cir. 2015) (unpublished); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560 (9th Cir. 2014) (unpublished); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*,

687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). A number of these appeals centered around or otherwise challenged misuse of *cy pres*, similar to the objections Lowery raises in this case. *See Frank*; *Google Cookie*; *BankAmerica*; *Pearson*; *Baby Products*; *Nachshin*. While, like most experienced litigators, we have not won every appeal we have litigated, CCAF has won the majority of them.

17.     CCAF has won more than $200 million dollars for class members by driving the settling parties to reach an improved bargain or by reducing outsized fee awards. Andrea Estes, *Critics hit law firms' bills after classaction lawsuits*, BOSTON GLOBE (Dec. 17, 2016) (more than $100 million at time). In particular, we have won tens of millions of dollars for class members by successfully objecting to *cy pres* provisions. *E.g., McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted); *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (reducing fees, and thus increasing class recovery, by more than $26 million to account for a "significantly overstated lodestar"); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv- 05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) (parties nullify objection by eliminating $2.5 million of *cy pres* and augmenting the class fund by that amount).

## Preempting *Ad Hominem* Attacks

18.     In my experience, and as this court has previously seen, class counsel often responds to CCAF objections by making a variety of spurious *ad hominem* attacks. The vast majority of district court judges do not fall for such transparent and abusive tactics. My client's objections are not less valid because a court has criticized me in the past any more than the settlement becomes more unfair because a court is investigating abusive billing by liaison counsel, Lieff Cabraser. *Arkansas Teacher Retirement Sytstem v. State Street Bank & Trust Co.*, 232 F. Supp. 3d 189 (D. Mass. 2017).  In an effort to anticipate such attacks and to avoid collateral litigation over a right to file a reply, I discuss and refute the most common ones below. If the Court is inclined to disregard these irrelevant *ad hominem* attacks, it can avoid these collateral disputes entirely.

19.     Class counsel often try to tar CCAF as "professional objectors," and then cite court opinions criticizing for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of attorneys' fees. But this is not the non-profit CCAF's *modus operandi*, so the court opinions class counsel rely upon to tar CCAF are inapposite. *See* Edward Brunet, *Class Action Objectors: Extortionist Free Riders*

*or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n. 150 (2003) (public interest groups are not professional objectors); Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements, and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. For-profit "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. In contrast, a public-interest objector such as CCAF has to triage dozens of requests for *pro bono* representation and dozens of unfair class action settlements, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a "baseless objection." CCAF objects to only a small fraction of the number of unfair class action settlements and fee requests it sees.

20.     While one district court called me a "professional objector" in a broader sense, that court stated that it was not meant pejoratively, and awarded CCAF fees for a successful objection and appeal that improved the settlement for the class. *Dewey v. Volkswagen*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012). Similarly, the Seventh Circuit in *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017) referred to me non-pejoratively as a "professional objector" in an opinion agreeing with my objection and reversing a settlement approval and class certification.

21.     Indeed, CCAF feels strongly enough about the problem of bad-faith objectors profiting at the expense of the class through extortionate means that it has initiated litigation to require such objectors to disgorge their ill-gotten gains to the class. *See, e.g., Pearson v. Target Corp.*, 893 F.3d 980 (7th Cir. 2018); *see generally* Jacob Gershman, *Lawsuits Allege Objector Blackmail in Class Action Litigation*, WALL ST. J., Dec. 7, 2016.

22.     Before I joined CEI, I had a private practice unrelated to my CCAF work. One of my former clients, Christopher Bandas, is a professional objector who has settled objections and withdrawn appeals for cash payments. I withdrew from representation of Mr. Bandas in 2015 when he undertook steps that interfered with my non-profit work. Thereafter, Mr. Bandas was criticized by the Southern District of New York after I ceased to represent him, and class counsel in other cases often cites that language and attempts to attribute it to me. *See Garber v. Office of the Comm'r of Baseball,* 2017 WL 752183, 2017 U.S. Dist. LEXIS 27394, at *35 n.9 (S.D.N.Y. Feb. 27, 2017). Class counsel in multiple cases, using boilerplate language, has tried to make it seem

like my paid representation of Mr. Bandas was somehow scandalous, using language like "forced to disclose"

and "secret." The insinuations are false: my representation of Mr. Bandas was not secret, as I filed declarations

in my name on his behalf in multiple cases, noting under oath that I was being paid to perform legal work for

him; I filed notices of appearances in cases where he had previously appeared; and my declaration in the *Capital*

*One* case ending the relationship was filed voluntarily at great personal expense to myself, as I had been offered

and refused to take a substantial sum of money to accede to a Lieff Cabraser fee award of over $3400/hour. I

only worked for Mr. Bandas in cases where I believed there was a meritorious objection to be made, had no

role in any negotiations he made to settle appeals, and my pay was flat-rate or by the hour and not tied to his

ability to extract settlements. I argued two appeals for Mr. Bandas, and won both of them. There is nothing

scandalous about that, unless one believes it is scandalous for an attorney to be paid to perform successful

high-quality legal services for a client. CCAF has never had an attorney-client relationship with Mr. Bandas,

and Mr. Bandas never paid CCAF, other than for his share of printing expenses when he was an independent

co-appellant representing clients unrelated to CCAF.

23.     Firms whose fees we have objected to have previously cited to *City of Livonia Employees' Ret. Sys.*

*v. Wyeth*, No. 07 Civ 10329 (RJS), 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013), in efforts to tar CCAF. While

the *Wyeth* court did criticize our client's objection (after mischaracterizing the nature of that objection), it

ultimately agreed with our client that class counsel's fee request was too high, and reduced it by several million

dollars to the benefit of shareholder class members.

24.     Class counsel frequently cite a 2010 case, *Lonardo v. Travelers Indemnity C*o., 706 F. Supp. 2d 766,

804 (N.D. Ohio 2010), where the district court criticized a policy-based argument by CCAF as supposedly

"short on law"; however, CCAF ultimately was successful in this Circuit on that same argument. *See In re*

*Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) (agreeing that reversionary clauses are a

problematic sign of self-dealing); *see also Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) (same). Moreover,

the court in *Lonardo* stated its belief that "Mr. Frank's goals are policy-oriented as opposed to economic and

self-serving" and even awarded CCAF about $40,000 in attorneys' fees for increasing the class benefit by $2

million. *Lonardo*, 706 F. Supp. 2d at 813-17.

25.     Lieff Cabraser has in another case cited a January 2020 opinion from the *Equifax Data Breach*

*Litigation* MDL in the Northern District of Georgia accusing me in a conclusory sentence of making "false and

misleading" statements about a settlement in rejecting my objections. I had no notice that the court was considering making that finding, and no opportunity to respond to the accusations. I have no idea what the district court thinks I said in either my papers or publicly that is false or misleading, because the district court identifies no such false or misleading statements. The court appears to have conflated me with attorneys who use the objection process to engage in extortion. We plan to appeal the settlement approval in that case, and I personally have argued and won similar appeals on the same Rule 23(a)(4) objection we made in *Equifax*, including in the Ninth Circuit against Lieff Cabraser. *In re Lithium Ion Batteries Antitrust Litig.*, 777 Fed. Appx. 221 (9th Cir. 2019). Everything we filed and that I have said publicly about the *Equifax* case and about this case is true and correct, and I expect to be vindicated on appeal in *Equifax*.

26.     CCAF has no interest in pursuing "baseless objections," because every objection we bring on behalf of a class member has the opportunity cost of not having time to pursue a meritorious objection in another case. We are confronted with many more opportunities to object (or appeal erroneous settlement approvals) than we have resources to use, and make painful decisions several times a year picking and choosing which cases to pursue, and even which issues to pursue within the case. CCAF turns down the opportunity to represent class members wishing to object to settlements or fees when CCAF believes the underlying settlement or fee request is relatively fair.

27.     While I am often accused of being an "ideological objector," the ideology of CCAF's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members. Likewise, I have often seen class counsel assert that I oppose all class actions and am seeking to end them, not improve them. The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. I have been writing and speaking about class actions publicly for nearly a decade, including in testimony before state and federal legislative subcommittees, and I have never asked for an end to the class action device, just proposed reforms for ending the abuse of class actions and class-action settlements. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food. As a child, I admired Ralph Nader and consumer reporter Marvin Zindler (whose autographed photo was one of my prized childhood possessions), and read every issue of Consumer Reports from cover to cover. I have focused my practice on conflicts of interest in class actions because, among other reasons, I saw a need to protect consumers that no one else was filling, and as a way to fulfill my childhood

dream of being a consumer advocate. I have frequently confirmed my support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN and in my Supreme Court briefing in *Frank v. Gaos*. On multiple occasions, successful objections brought by CCAF have resulted in new class-action settlements where the defendants pay substantially more money to the plaintiff class without CCAF objecting to the revised settlement. And I was the putative class representative in a federal class action, represented by a prominent plaintiffs' firm. *Frank v. BMOCorp., Inc.*, No. 4:17-cv-870 (E.D. Mo.).

28.     On October 1, 2015, after consultation with its board of directors and its donors, CCAF merged with the much larger Competitive Enterprise Institute ("CEI"). Prior to its merger with CEI, CCAF never took or solicited money from corporate donors other than court-awarded attorneys' fees. CEI, which is much larger than CCAF, does take a percentage of its donations from corporate donors. As part of the merger agreement, I negotiated a commitment that CEI would not permit donors to interfere with CCAF's case selection or case management. In the event of a breach of this commitment, I was permitted to treat the breach as a constructive discharge entitling me to substantial severance pay. CCAF attorneys made several filings in several cases opposed by CEI donors.

29.     CEI was willing to merge with CCAF because it supported CCAF's pro-consumer mission and success in challenging abusive class-action settlements and fee requests. But it is a large organization affiliated with dozens of scholars who take a variety of controversial positions. Neither I nor CCAF's clients agree with all of those positions, and they should not be ascribed to me, my clients, or this objection, any more than my support for a Pigouvian carbon tax should be ascribed to CEI scholars who have publicly opposed that position.

30.     CCAF has since left CEI, and is now part of the Hamilton Lincoln Law Institute, which receives no corporate funding. We did not consult any of our donors about our objection in this case.

31.     Some class counsels have accused us of improper motivation because CCAF has on occasion sought attorneys' fees. While CCAF is funded entirely through charitable donations and court-awarded attorneys' fees, the possibility of a fee award never factors into CCAF's decision to accept a representation or object to an unfair class-action settlement or fee request.

32.     CCAF's history in requesting attorneys' fees reflects this approach. Despite having made

dozens of successful objections and having won over $200 million on behalf of class members, CCAF has not requested attorneys' fees in the majority of its cases or even in the majority of its appellate victories. CCAF regularly passes up the opportunity to seek fees to which it is legally entitled. In *Classmates*, for example, CCAF withdrew its fee request and instead asked the district court to award money to the class; the court subsequently found that an award of $100,000 "if anything" "would have undercompensated CCAF." *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 WL 3854501, at *11 (W.D. Wash. June 15, 2012). In other cases, CCAF has asked the court for a fraction of the fees to which it would be legally entitled based on the benefit CCAF achieved for the class and asked for any fee award over that fractional amount be returned to the class settlement fund. In *Petrobras*, despite winning tens of millions of dollars for the class, we requested less than $200,000 in fees. *See In re Petrobras Secs. Litig.*, 786 Fed. Appx. 274 (2d Cir. 2019).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 20, 2020, in Houston, Texas.

*/s/ Theodore H. Frank*
Theodore Frank

# Frank Decl.

# EXHIBIT A

• **Public** Knowledge

# Sources of Funding for Public Knowledge

Public Knowledge receives financial support for its mission from a wide array of sources, and ensures that its funding remains diversified and its mission independent. Funding sources include charitable foundation grants and general support contributions, including funds raised through Public Knowledge's annual IP3 Awards event.

Foundation support accounts for between half and two thirds of Public Knowledge's budget, and grantors include the Ford Foundation, Open Society Foundations, The William and Flora Hewlett Foundation, the Kahle-Austin Foundation, and the Media Democracy Fund/New Venture Fund.

The remainder of support comes from companies and individuals through donations or sponsorship of the IP3 Awards. Public Knowledge recognizes individual donors and companies if they wish through the IP3 Awards event materials. Public Knowledge limits contributions from any single corporation to five to ten percent of its budget to ensure that no funders can attempt to assert undue influence on Public Knowledge.

2015 IP3 or General Support Donations

**Platinum Level/$25,000+**
AT&T, Bloomberg, Charter Communications, Consumer Technology Association, DIRECTV, DISH Network, Earthlink, Google, iHeartMedia, Level 3, Microsoft, Netflix, One America News Network, Sprint, and T-Mobile USA

**Gold Level/$10,000+**

BGR Group, eBay, Glen Echo Group, Glover Park Group, Health
Forum, Neustar, Pandora, TiVo, Twitter, Viamedia, Windstream,
and Writer's Guild of America, West

**Silver Level/$5,000+**

American Cable Association, INCOMPAS, Mozilla, National
Cable & Telecommunications Association, and Uber

**Bronze/$2,500+ or Friends/$250+ Level**

More than two dozen companies and individuals contributed
at these levels.

Copyright ©2019 Public Knowledge

**Privacy Policy** | **Contact Us** | **Donate**

# Frank Decl.

# EXHIBIT B



Note: This document is updated biannually and includes a list of politically-engaged trade associations, independent third-party organizations and other tax-exempt groups that receive the most substantial contributions from Google's U.S. Government Affairs and Public Policy team.

**Trade Associations and Membership Organizations**

- Ad Council
- Advertising Research Foundation
- American Association of Advertising Agencies
- American Advertising Federation
- American Council On Renewable Energy
- Application Developers Alliance
- Association of National Advertisers
- Associated Industries of Massachusetts
- Bay Area Council
- Boulder Chamber of Commerce
- Brooklyn Chamber of Commerce
- Business Council for International Understanding
- Business Forward
- California Chambers of Commerce
- California Association of Competitive Telecommunications Companies
- Cambridge Chamber of Commerce
- Chicagoland Chamber of Commerce
- Coalition of Service Industries
- Colorado Technology Association
- Central Carolina Economic Development Alliance
- Center for Strategic and International Studies
- Coalition for Better Ads
- Chamber of Commerce Mountain View
- Consumer Technology Association
- Computer & Communications Industry Association
- Compete America
- Consortium for School Networking
- Data & Marketing Association
- Digital Advertising Alliance
- Digital Due Process Coalition
- Digital Media Association
- Direct Marketing Association
- Dynamic Spectrum Alliance
- Fiber Broadband Association, formerly Fiber to the Home Council

- Financial Innovation Now
- Food Marketing Institute
- Greater Austin Chamber of Commerce
- Greater Boston Chamber of Commerce
- Greater Durham Chamber of Commerce
- Greater Kirkland Chamber of Commerce
- Greater Raleigh Chamber of Commerce
- Greater Reston Chamber of Commerce
- Greater Seattle Business Association
- Greater Seattle Chamber of Commerce
- High Tech Inventors Alliance
- Illinois Manufacturers Association
- Internet Infrastructure Coalition
- Information Technology Industry Council
- Interactive Advertising Bureau
- International Advertising Association
- International Chamber of Commerce
- Internet Coalition
- Internet Commerce Coalition
- Irvine Chamber of Commerce
- Joint Venture Silicon Valley
- Los Angeles Area Chamber of Commerce
- Magazine Publishers Association
- Mobile Marketing Association
- Network Advertising Initiative
- National Foreign Trade Council
- National Cyber Security Alliance
- New York Technology Council
- Partnership for New York City
- Redwood City Chamber of Commerce
- Reform Government Surveillance Coalition
- Renewable Energy Buyers Alliance
- San Bruno Chamber of Commerce
- San Francisco Chamber of Commerce
- San Jose Silicon Valley Chamber of Commerce
- San Francisco Citizens Initiative for Technology & Innovation
- San Mateo County Economic Development Association
- Schools, Health and Libraries Broadband Coalition
- Search Engine Marketing Professionals Organization
- Silicon Valley Leadership Group
- Silicon Valley Organization
- Software & Information Industry Association
- State Privacy and Security Coalition
- Sunnyvale Silicon Valley Chamber of Commerce
- CompTIA
- TechNet
- Tech:NYC
- Texas Association of Business

- The Internet Association
- The New England Council
- U.S. Chamber of Commerce
- U.S. Council for International Business
- U.S. Global Leadership Coalition
- United States ITU Association
- United for Patent Reform
- Venice Chamber of Commerce
- Washington Technology Industry Alliance
- WiFi Forward
- World Business Organization
- Word of Mouth Marketing Association

**Third Party Organizations**

- 4th Amendment Advisory Committee
- Access Now
- African American Community Service Agency
- Alliance of North Carolina Black Elected Officials
- Alvin Ailey Dance Foundation
- American Action Forum
- American Antitrust Institute
- American Association of People with Disabilities
- American Conservative Union
- American Constitution Society
- American Council of the Blind
- American Council of Young Political Leaders
- American Enterprise Institute for Public Policy Research
- American Foundation for the Blind
- American Hotel Lodging Association
- American Library Association
- Americans for Tax Reform
- American Security Project
- American University
- Arbor Day Foundation
- Asian Americans Advancing Justice
- Asian Pacific American Institute for Congressional Studies
- Asian/Pacific Islander American Chamber of Commerce & Entrepreneurship
- Asian Pacific Islander Legislative Caucus Foundation
- Asian Trade Center
- Aspen Institute
- ASU Foundation
- Atlantic Council
- Austin Area Urban League
- Austin Community Foundation
- Austin Public Library Friends Foundation
- Autism Speaks

- Berkley Center for Law & Technology
- Breakthrough Greater Boston
- The Brookings Institution
- Business Leaders for Michigan
- Californians Dedicated to Education Foundation
- California State University Northridge Foundation
- Cambridge Forums
- Capital Factory
- Cato Institute
- Center for a New American Security
- Center for American Progress
- Center for Democracy and Technology
- Center for Employment Training
- Center for Global Policy Solutions
- Center for Strategic and International Studies
- Chicago Parks Foundation
- Citizens Committee for New York City
- Civic Nation
- Clinton Foundation
- Collective Impact
- Committee to Protect Journalists
- Community Change
- Community Initiatives
- Community Services Agency of Mountain View and Los Altos
- Competitive Enterprise Institute
- Computer History Museum
- Conference of Western Attorneys Generals
- Conference on Asian Pacific American Leadership
- Congressional Black Caucus Foundation
- Congressional Black Caucus Institute
- Congressional Hispanic Caucus Institute
- Congressional Hispanic Leadership Institute
- Congressional Institute
- ConnectSafely
- The Constitution Project
- Consumer Action
- Consumer Federation of America
- Copia Institute
- Council of Better Business Bureaus Inc.
- Council of Korean Americans
- Cross-Border Data Forum
- Dallas Children's Advocacy Center
- Democratic Attorneys General Association
- Democratic Governors Association
- Democratic Legislative Campaign Committee
- Digital 4th Coalition
- Digital Content Next
- Dolores Huerta Foundation

- Downtown Boulder Foundation
- Electronic Frontier Foundation
- Engine Advocacy
- Entrepreneurship for All
- Entrepreneurs Foundation of Central Texas
- Esperanza Education Fund
- Family Online Safety Institute
- Federal Communications Bar Association
- Federalist Society
- Foundation for American Science and Technology
- Freedom House
- Friends and Family of PS11
- Friends of Mountain View Library
- Future Founders Foundation
- Future of Music Coalition
- Future of Privacy Forum
- GLBT Historical Society
- Georgetown Center for Business and Public Policy
- Georgia Tech Foundation
- George Mason University Foundation
- George Mason University Law School Law and Economics Center
- German Marshall Fund of the United States
- Global Entrepreneurship Network
- Global Network Initiative
- Global Voices
- Greater Kansas City Chamber of Commerce
- Habitat for Humanity
- Harvard Kennedy School Belfer Center for Science and International Affairs
- Healthcare Coalition
- Heritage Action
- Heritage Foundation
- Hispanic Foundation of Silicon Valley
- Hispanic Heritage Foundation
- Howard University - Institute for Intellectual Property and Social Justice
- Human Rights Campaign
- Identity Theft Resource Center
- Independent Women's forum
- Information Technology and Innovation Foundation
- Inter-American Dialogue
- Inter-american Press Association
- International Center for Law and Economics
- International Centre for Missing and Exploited Children
- International Council on Disability
- International Republican Institute
- Internet Education Foundation
- iKeepSafe
- IT Caucus TX
- Jobs for the Future

- Johns Hopkins University - School of Advanced International Studies
- Joint Center for Political and Economic Studies
- Joint Venture Silicon Valley Network
- Key Tech Labs
- Kirkland Parks Foundation
- Lawyers Committee For Civil Rights Under Law
- The Latino Coalition
- LBGT Victory Institute
- Leadership Conference on Civil and Human Rights
- League of United Latin American Citizens
- Lincoln Network
- Llambda Legal
- Los Altos Community Foundation
- Mason Attorneys General Education Program
- Massachusetts Institute of Technology
- Mercatus Center
- Meridian International Center
- Mission Economic Development Agency
- Mission Housing Development Corporation
- Mothers Against Drunk Driving
- Mountain View-Los Altos High School Foundation
- Mountain View Chamber of Commerce
- National Action Network
- National Association of Attorneys General
- National Association of Chief Information Officers
- National Association for the Advancement of Colored People
- National Association of Latino Elected and Appointed Officials
- National Association of the Deaf
- National Association of State Boards of Education
- National Association of Telecommunications Officers and Advisors
- National Center for Missing & Exploited Children
- National Center for Transgender Equality
- National Conference for State Legislators Foundation
- National Consumers League
- National Congress of American Indians
- National Council for Independent Living
- National Cyber Security Alliance
- National Democratic Institute for International Affairs
- National Federation of the Blind
- National Governors Association
- National Hispanic Media Coalition
- National Hispanic Foundation for the Arts
- National Network for Youth
- National Network to End Domestic Violence
- National Organization of Black Elected Officials
- National Parent Teacher Association
- National Partnership for Women and Families
- National Review Institute

- National Speakers Conference
- National Taxpayers Union
- National Urban League
- Net Safety Collaborative
- Net Choice
- Netroots Nation
- New America Foundation
- New Deal
- New Leaders Council
- New Venture Fund
- Niskanen Center
- Non-profit Housing Association of Northern California
- North Carolina Center for Nonprofit Organizations
- North Carolina Metropolitan Mayors Coalition
- Organisation for Economic Co-operation and Development
- Partnership for a New American Economy
- PATH
- PEN America
- Polaris Project
- Privacy Law Salon
- Progressive Change Campaign Committee
- Progressive Policy Institute
- Public Knowledge
- Re:Create Coalition
- Religion Newswriters Foundation
- Reporters Committee for Freedom of the Press
- Republican Attorneys General Association
- Republican Governors Association
- Republican Legislative Campaign Committee
- Reporters Without Borders
- Ripon Society
- Roger Baldwin Foundation
- R Street Institute
- San Bruno Community Foundation
- San Francisco Chamber of Commerce
- San Francisco Citizens Initiative
- San Francisco Parks Alliance
- San Francisco Public Health Foundation
- San Jose Museum of Art
- Shoal Creek Conservancy
- Silicon Valley At Home
- Silicon Valley Community Foundation
- Silicon Valley Housing Trust
- Silicon Valley Leadership Group
- Silicon Flatirons - University of Colorado
- Small Business Majority
- State Government Affairs Council
- State Legislative Leadership Foundation

- Sunnyvale Education Foundation
- Sustainable Silicon Valley
- Technology Access Foundation
- TechFreedom
- Technology Policy Institute
- Telecommunications for the Deaf and Hard of Hearing
- Third Way
- Trustworthy Accountability Group
- UCLA Foundation
- UnidosUS
- United for Patent Reform
- United Nations Foundation
- United Church of Christ Inc.
- United We Dream Network
- The Urban Institute
- U.S. Black Chamber Inc.
- U.S. Conference of Mayors
- U.S. Hispanic Chamber of Commerce
- U.S. Telecom Training Institute
- USO of Metropolitan Washington - Baltimore
- Vital Voices
- Voto Latino
- Walkers Legacy
- Washington International Trade Association
- Washington Legal Foundation
- Washington Resource Council
- Women's High Tech Coalition
- World Affairs Council
- World Privacy Forum
- World Wide Web Foundation
- YMCA of Silicon Valley
- Young Transatlantic Leaders Initiative