IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BENJAMIN JOFFE, et al.,

    Plaintiffs,

v.

GOOGLE, LLC,

    Defendant.

Case No. 10-md-02184-CRB

**ARGUMENT ORDER RE FINAL APPROVAL HEARING**

The Court advises the parties to come to the motion hearing this afternoon prepared to answer the following questions:

1. Precisely how does the injunctive relief agreed to in this settlement add to the relief already provided in the Assurance of Voluntary Compliance ("AVC")? In addition to extending Google's internal privacy program for more than a year, does it apply to a wider geographical area?

2. How does the injunctive relief agreed to in this settlement benefit these class members? See Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017).

3. Class counsel estimates that there are 60 million class members. Reply (dkt. 198) at 2. Is there any reason to dispute that estimate?

4. The Ninth Circuit recognizes that some settlement funds are "non-distributable," explaining that "[f]or purposes of the cy pres doctrine, a class-action settlement fund is 'non-distributable' when 'the proof of individual claims would be burdensome or distribution of damages costly.'" Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012) (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, 1036 (9th Cir. 2011)). Given the 60 million person class size, the $13 million settlement fund, and the difficulty of identifying class members, Class counsel argues that this fund is non-distributable. See Mot. (dkt. 184) at 18–21. But Objector Lowery asserts that distribution of the Fund is feasible because class members can self-identify in order to claim settlement funds. See Lowery Obj. (dkt. 188) at 6–7, 8–9. A few questions on that:

A. Objector Lowery asserts that in order to assert their own standing, Plaintiffs do not rely on the Special Master's report at all but rely solely on the complaint's allegations. Id. at 8. He argues that "All absent class members who can, like Lowery, aver the same facts as the named plaintiffs should be permitted to self-identify and file a claim for a portion of the settlement fund on that basis." Id. at 9. But Class counsel argues that "The only way to identify prospective Class Members would involve combing through nearly 300 million frames of collected payload data and trying to associate it with individual Class Members." Mot. at 19. Indeed, Class counsel detailed—and the Court observed—the painstaking, 3-year long process in which the 18 named plaintiffs provided their personal information and forensic evidence of their Wi-Fi equipment, including MAC addresses, email addresses, and SSIDs, and in which the Special Master combed through what Class counsel asserts is three billion frames[1] of wireless raw data, all just to ascertain whether Google had acquired any of the named plaintiffs' data. Id. at 2–3. <u>So who is right: could individuals simply submit claim forms self-identifying as class members, or would individuals need to go through the process the named plaintiffs here went through</u>? How much money and how much time would each process take?

B. Assuming that a self-identifying claim form would be sufficient, there is still the problem of a class of 60 million and a Fund of $13 million (before deductions). In advocating for a claims-made system, Objector Lowery argues that "Because the percentage of class members that will submit claims in these types of settlements is invariably low, a claims-made settlement would not be economically infeasible." Lowery Obj. at 8 (citing survey showing a typical claims rate of "less than one percent" in settlements with no direct mail notice). Why is a settlement that benefits less than one percent of the class a good thing? Doesn't Class counsel have an obligation to the class as a whole? See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 968 (9th Cir. 2009) ("class counsel's fiduciary duty is to the class as a whole"). Isn't there something perverse in asking Class counsel to reach a settlement in which they hope for a small claims rate?

C. In Fraley v. Facebook, 966 F. Supp. 2d 939, 943 (N.D. Cal. 2013), in which Judge Seeborg initially rejected a cy pres-only settlement and later approved a settlement that distributed some funds directly to class members and sent the remainder to cy pres, "so few persons . . . filed claims" that each class member received $15, prompting Judge Seeborg to remark that "In a sense, adding a direct payment component to the settlement[] did very little to buttress its

---

[1] Is it 300 million or three billion?

2

overall fairness." Was paying $15 to less than one percent of the class members in that case really so much better?

    D. Does any controlling authority support the position that Objector Lowery takes (and that the amicus brief apparently agrees with, see AG Amicus Br. (dkt. 189-1) at 3) that paying monetary claims directly to a small number of class members is always preferable to a cy pres only award? Isn't Ninth Circuit authority approving of cy pres only settlements to the contrary? See, e.g., In re Google Referrer Header Privacy Litigation, 869 F.3d 737, 742 (9th Cir. 2017), vacated on other grounds by Frank v. Gaos, 139 S. Ct. 1041 (2019) ("Objectors . . . ask us to impose a mechanism that would permit a miniscule portion of the class to receive direct payments, eschewing a class settlement that benefits members through programs on privacy and data protection instituted by the cy pres recipients. . . . Objectors would have us jettison the teachings of Lane. Objectors would also have us ignore our prior endorsement of cy pres awards that go to uses consistent with the nature of the underlying action.").

    E. Has any court approved of the lottery system Objector Lowery proposes as an alternative to a claims-made system, see Lowery Br. at 10, let alone required it?

5. How is it significant that this is a Rule 23(b)(3) case? The AG's brief asserts that Rule 23(b)(3) cases are focused on "individualized money damages," while 23(b)(1) and 23(b)(2) cases begin from the proposition that "individual adjudications are impossible or unworkable." AG Amicus Br. at 9 n.4 (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 361–62 (2011)). Does that mean that a class action is not superior unless class members receive money damages?

6. How do the Attorneys General respond to Plaintiffs' Response (dkt. 199) at 3–4, which asserts that: (A) 3 of the 9 AGs who signed onto the amicus brief did not even enter into the AVC with Google; (B) the proposed settlement here is twice as large as what the AGs viewed as fair and reasonable in order to resolve the government action; (C) none of the AGs who entered into the AVC distributed any of the funds to class members in their states; and (D) the language in the AVC that "[t]he Payload Data collection occurred without the knowledge of Google executives" hamstrung Plaintiffs' chances of obtaining a larger settlement in this case?

**IT IS SO ORDERED.**

Dated: February 28, 2020

CHARLES R. BREYER
United States District Judge